# EXHIBIT A

# PACIFIC LIFE

**Pacific Life Insurance Company • 45 Enterprise • Aliso Viejo, CA 92656**

**www.PacificLife.com (800) 347-7787**

**READ YOUR POLICY CAREFULLY.** This is a legal contract between you, the Owner, and us, Pacific Life Insurance Company, a stock insurance company. We agree to pay the benefits of this Policy according to its provisions. The consideration for this Policy is the Application for it, a copy of which is attached, and payment of the initial and subsequent premiums.

**While policy values may be affected by an external index, the Indexed Account does not directly participate in any stock or equity investment.**

**The method for determining the Death Benefit is described in the Death Benefit section of this Policy. The amount of the Death Benefit may increase or decrease depending on the Death Benefit option elected.**

Premiums are flexible, subject to minimums required to keep the Policy In Force. Even if Planned Premiums are paid, it is possible that, due to changes in interest credited, and Policy Charges, the Policy may not continue In Force; that is, it may lapse before any death benefit is payable on the death of the Insured. The initial interest rate for the Fixed Account is guaranteed for the first Policy year. Additionally, loans, withdrawals, and Death Benefit Option changes can affect the length of time the Policy stays In Force.

Signed for Pacific Life Insurance Company,

James T. Morris
Chairman and Chief Executive Officer

Jane M. Guon
Secretary

## FLEXIBLE PREMIUM INDEXED ADJUSTABLE LIFE INSURANCE

- **Death Benefit Payable On The Death Of The Insured**
- **Net Cash Surrender Value Payable Upon Surrender**
- **Index-Linked Interest Option**
- **Adjustable Face Amount**
- **Non-Participating**

| | |
|---|---|
| Insured: | KYLE T BUSCH |
| Owner: | KYLE T BUSCH ILIT |
| Policy Number: | VF53260490 |
| Policy Date: | March 13, 2018 |
| Total Face Amount: | $28,300,000 |

**Free Look Right - You may cancel this Policy within 20 days after you receive it. To do so, deliver it or mail it to us or to the Producer/Representative who delivered it to you. This Policy will then be deemed void from the beginning and we will refund any premium paid.**

(This page intentionally left blank)

## POLICY SPECIFICATIONS

Base Policy: Flexible Premium Indexed Adjustable Life Insurance

| | |
|---|---|
| Policy Date: | March 13, 2018 |
| Insured: | KYLE T BUSCH |
| Owner: | KYLE T BUSCH ILIT |

North Carolina Department of Insurance: (855) 408-1212

### Premiums

| | |
|---|---|
| Planned Annual Premium: | $1,000,000.00 |
| 7-Pay Premium: | $1,115,055.38 |
| Premium Band: | $3,000,000.00 |
| Minimum* Premium Payment: | $50.00 |

*Unless a lower premium payment is required to keep the Policy In Force.

### Premium Type

| | |
|---|---|
| Basic Premium: | This is equal to all premium paid in a policy year, except for any Internal Premium. |
| Surplus Premium: | This is equal to Basic Premium paid in a policy year that exceeds the Premium Band. |
| Internal Premium: | This is equal to any premium that is received from a replacement or a conversion of an existing Pacific Life policy. |

### Premium Load Rate

| | |
|---|---|
| Maximum Basic Premium Load Rate: | 6.90% |
| Maximum Surplus Premium Load Rate: | 20.00% |
| Maximum Internal Premium Load Rate: | 6.90% |

### Face Amount Adjustments

| | |
|---|---|
| Maximum Fee per Evaluation of Insurability: | $100.00 |
| Minimum Basic Face Amount Following Requested Decrease: | $1,000.00 |

### Withdrawal Conditions

| | |
|---|---|
| Maximum Fee for Each Withdrawal: | $25.00 |
| Minimum Amount of Each Withdrawal: | $200.00 |
| Minimum Net Cash Surrender Value Remaining After Withdrawal: | $500.00 |
| Minimum Basic Face Amount After Withdrawal: | $1,000.00 |

### Monthly Deduction Factors

| | |
|---|---|
| Monthly Deduction End Date: | March 13, 2106 |
| Administrative Charge Per Month: | $7.50 |

## POLICY SPECIFICATIONS

### Accounts

| | |
|---|---|
| Account Addition Method: | Account Additions will be added to the Fixed Account Value on the date that they are credited. Account Additions are automatically transferred to the Indexed Segments according to the Payment Instructions on file. |
| Account Addition Factors: | Premium payments;<br>Loan Repayments;<br>Monthly Deductions, including any allocation of those charges, or other policy credits (excluding any interest credits) that increase the Accumulated Value under the policy; and<br>Credits under certain riders, if any, which increase the Accumulated Value under the policy. |
| Account Deduction Method: | Account Deductions will be taken first from the Fixed Account Value until it has been reduced to zero. Any remaining deductions will be taken proportionate to each Segment Value across all segments in the Indexed Accounts. |
| Account Deduction Factors: | Monthly Deductions that reduce the Accumulated Value under the policy;<br>Any Withdrawal from the policy, including any Withdrawal Fee;<br>Standard Policy Loans;<br>Any distribution in order to maintain tax qualification under Code Section 7702 (see Tax Qualification as Life Insurance) or to maintain the policy as a non-MEC under Code Section 7702A (see Modified Endowment Contract Tax Status);<br>Payments, charges and fees under certain riders, if any; and<br>Any charge, fee, or distribution that reduces the policy's Accumulated Value. |
| Indexed Account Transfer Dates:<br>(See Indexed Accounts Section For Additional Information) | The 15th Day of Each Calendar Month |
| Cut-Off Date: | 4:00 p.m. Eastern time of the Cut-Off Date, which is two Business Days prior to the Transfer Date. |

The Fixed Account is an Eligible Account under the 2% Interest Guarantee on Termination Rider

### Loan Account Value

| | |
|---|---|
| Minimum Loan Amount: | $200.00 |
| Guaranteed Annual Loan Account Credit Interest Rate: | 2.00% |
| Maximum Annual Loan Account Charge Interest Rate: | 2.25% |

The Loan Account is an Eligible Account under the 2% Interest Guarantee on Termination Rider

### Basis of Values Conditions

| | |
|---|---|
| Fixed Account Guaranteed Interest Rate: | 2.00% Annually |

## POLICY SPECIFICATIONS

| | |
|---|---|
| Basis of Value Mortality Table: | 2001 CSO, ultimate only, age nearest birthday, composite (not smoker distinct), sex distinct with 80% male and 20% female blend for unisex, capped at 0.0833333 per month. |

### Available Death Benefit Options

| | |
|---|---|
| Option A: | When elected, the Death Benefit equals the Total Face Amount. When this Death Benefit Option is In Effect, taking a withdrawal may decrease the Total Face Amount as described in the Withdrawals provision of the Policy. |
| Option B: | When elected, the Death Benefit equals the Total Face Amount plus the Accumulated Value. When this Death Benefit Option is In Effect, taking a Withdrawal does not reduce the Total Face Amount, but rather, reduces the Accumulated Value, which has the effect of reducing the Death Benefit that would be payable. |
| Option C: | When elected, the Death Benefit equals the Total Face Amount plus the sum of the premiums paid minus the sum of any withdrawals taken and any other distribution that reduces the Accumulated Value, provided that such result is limited to the amount shown as the “Option C Death Benefit Limit”. When this Death Benefit Option is In Effect, taking a withdrawal does not reduce the Total Face Amount, but rather increases the sum of the withdrawals, which has the effect of reducing the Death Benefit. For the purpose of Death Benefit Option C calculations, Accelerated Death Benefits are not considered distributions. Under this option, the Death Benefit may be less than the Total Face Amount. |

### Death Benefit Elements

| | |
|---|---|
| Net Amount At Risk Factor: | 1.0016516 |
| Death Benefit Option In Effect: | B |
| Permitted Death Benefit Option Change(s): | The Death Benefit Option may be changed to Option A or B. Changes to Option C from either Option A or B are not permitted. |
| Death Benefit Qualification Test: | Cash Value Accumulation Test |
| Death Benefit Proceeds Additional Interest Rate: | 10.00% |
| Minimum Annual Interest Rate for Funds Left on Deposit: | 2.00% |

### Surrender Charge Calculation

| | |
|---|---|
| Surrender Charge Calculation: | The Surrender Charge will not exceed the Maximum Surrender Charge. |

### Illustration Conditions

| | |
|---|---|
| Maximum Fee for Illustration Requests Per Policy Year: | $25.00 |

**POLICY SPECIFICATIONS**

**Distribution Program**

| | |
|---|---|
| Systematic Distribution Program: | This is a program of periodic distribution of Policy values that we designate as a Systematic Distribution Program. We reserve the right to discontinue such a program at any time. The program includes periodic distribution to you of a portion of the Policy's Accumulated Value through Policy loans and Withdrawals while the Insured is alive and the Policy is In Force. A Lockout Period (see Lockout Period) will not begin as a result of a Policy loan or Withdrawal that is distributed to you as a result of this program. Before entering into any such program, consult with your Producer/Representative and your tax advisor as distributions may have tax ramifications. |

## POLICY SPECIFICATIONS

### Summary of Coverages Effective on the Policy Date

| | | |
|---|---|---|
| P15IUL<br>S16PDX | Basic Life Coverage | |
| | Face Amount:<br>Insured:<br>Sex and Age:<br>Risk Class: | $28,300,000<br>KYLE T BUSCH<br>Male 33<br>Super Preferred Non-Smoker<br>RATED |
| R15IGT | 2% Interest Guarantee on Termination Rider | |
| R12TII | Accelerated Death Benefit Rider for Terminal Illness | |
| | Eligible Coverage: | Basic Life Coverage |
| R10ALR | Alternate Loan Rider | |
| | Designated Account(s): | 1 Year Indexed Account<br>1 Year Indexed Account 2<br>1 Year Indexed Account 3<br>1 Year Indexed Account 4<br>1 Year Indexed Account 5 |
| | Alternate Loan Availability Date: | March 13, 2021 |
| R13CON | Conversion Rider | |
| | Eligible Coverage:<br>Conversion Policy Year: | Basic Life Coverage<br>8 |
| R02NL5 | No-Lapse Guarantee Rider | |
| | Guarantee Period:<br>Initial Annual No Lapse Premium: | 20 Policy Years<br>$603,567.96 |
| | Monthly Interest Rate for Accumulation of the No Lapse Credit if the No Lapse Credit is Positive: | 0.327374% |

**POLICY SPECIFICATIONS**

Maximum Surrender Charge Effective at
Beginning of Coverage Year

Insured: KYLE T BUSCH

Maximum Surrender Charges are reduced by 1/12 of the Reduction Factor on each Monthly Payment Date.

| Coverage Year | Maximum Surrender Charge | Reduction Factor |
|---|---|---|
| 1 | $531,870.20 | $0.00 |
| 2 | $531,870.20 | $265,935.10 |
| 3 | $265,935.10 | $26,602.00 |
| 4 | $239,333.10 | $26,573.70 |
| 5 | $212,759.40 | $26,602.00 |
| 6 | $186,157.40 | $26,602.00 |
| 7 | $159,555.40 | $26,573.70 |
| 8 | $132,981.70 | $26,602.00 |
| 9 | $106,379.70 | $53,204.00 |
| 10 | $53,175.70 | $53,175.70 |
| 11+ | $0.00 | $0.00 |

**POLICY SPECIFICATIONS**

Table of Cost of Insurance (COI) Rates
for Basic Life Coverage

Insured: KYLE T BUSCH

Maximum Monthly Cost of Insurance Rates Per $1000.00 of Net Amount at Risk Applicable to this Coverage.

| Policy Year | COI Rate | Policy Year | COI Rate | Policy Year | COI Rate |
|---|---|---|---|---|---|
| 1 | 0.50590 | 31 | 1.14970 | 61 | 21.97380 |
| 2 | 0.50840 | 32 | 1.27900 | 62 | 23.81220 |
| 3 | 0.51090 | 33 | 1.41510 | 63 | 25.79270 |
| 4 | 0.51670 | 34 | 1.55240 | 64 | 27.64150 |
| 5 | 0.52170 | 35 | 1.68980 | 65 | 29.65380 |
| 6 | 0.53010 | 36 | 1.83930 | 66 | 31.85100 |
| 7 | 0.53840 | 37 | 1.99170 | 67 | 34.25960 |
| 8 | 0.54760 | 38 | 2.17330 | 68 | 36.90860 |
| 9 | 0.55930 | 39 | 2.37670 | 69 | 39.06360 |
| 10 | 0.57350 | 40 | 2.64820 | 70 | 41.41760 |
| 11 | 0.58930 | 41 | 2.93180 | 71 | 43.99540 |
| 12 | 0.60940 | 42 | 3.23010 | 72 | 46.82420 |
| 13 | 0.63110 | 43 | 3.56140 | 73 | 49.93700 |
| 14 | 0.65200 | 44 | 3.92360 | 74 | 53.37330 |
| 15 | 0.67460 | 45 | 4.34570 | 75 | 57.18460 |
| 16 | 0.68790 | 46 | 4.84010 | 76 | 61.42910 |
| 17 | 0.70380 | 47 | 5.41330 | 77 | 66.18210 |
| 18 | 0.72390 | 48 | 6.04180 | 78 | 71.53880 |
| 19 | 0.74900 | 49 | 6.76170 | 79 | 77.62690 |
| 20 | 0.78330 | 50 | 7.51460 | 80 | 83.33330 |
| 21 | 0.41180 | 51 | 8.33040 | 81 | 83.33330 |
| 22 | 0.45950 | 52 | 9.24140 | 82 | 83.33330 |
| 23 | 0.51560 | 53 | 10.27540 | 83 | 83.33330 |
| 24 | 0.57510 | 54 | 11.43490 | 84 | 83.33330 |
| 25 | 0.63890 | 55 | 12.71510 | 85 | 83.33330 |
| 26 | 0.69180 | 56 | 14.10520 | 86 | 83.33330 |
| 27 | 0.75230 | 57 | 15.59360 | 87 | 83.33330 |
| 28 | 0.82540 | 58 | 17.17060 | 88 | 83.33330 |
| 29 | 0.91630 | 59 | 18.67330 | 89+ | 0.00000 |
| 30 | 1.02660 | 60 | 20.26540 | | |

**POLICY SPECIFICATIONS**

Table of Maximum Monthly Coverage Charges
for Basic Life Coverage

Insured: KYLE T BUSCH

| Policy Year | Coverage Charge | Policy Year | Coverage Charge | Policy Year | Coverage Charge |
|---|---|---|---|---|---|
| 1 | $34,938.21 | 31 | $34,948.01 | 61 | $34,948.01 |
| 2 | $34,938.21 | 32 | $34,948.01 | 62 | $34,948.01 |
| 3 | $34,938.21 | 33 | $34,948.01 | 63 | $34,948.01 |
| 4 | $34,938.21 | 34 | $34,948.01 | 64 | $34,948.01 |
| 5 | $34,938.21 | 35 | $34,948.01 | 65 | $34,948.01 |
| 6 | $34,938.21 | 36 | $34,948.01 | 66 | $34,948.01 |
| 7 | $34,938.21 | 37 | $34,948.01 | 67 | $34,948.01 |
| 8 | $34,938.21 | 38 | $34,948.01 | 68 | $34,948.01 |
| 9 | $34,938.21 | 39 | $34,948.01 | 69 | $34,948.01 |
| 10 | $34,938.21 | 40 | $34,948.01 | 70 | $34,948.01 |
| 11 | $34,938.21 | 41 | $34,948.01 | 71 | $34,948.01 |
| 12 | $34,938.21 | 42 | $34,948.01 | 72 | $34,948.01 |
| 13 | $34,938.21 | 43 | $34,948.01 | 73 | $34,948.01 |
| 14 | $34,938.21 | 44 | $34,948.01 | 74 | $34,948.01 |
| 15 | $34,938.21 | 45 | $34,948.01 | 75 | $34,948.01 |
| 16 | $34,938.21 | 46 | $34,948.01 | 76 | $34,948.01 |
| 17 | $34,938.21 | 47 | $34,948.01 | 77 | $34,948.01 |
| 18 | $34,938.21 | 48 | $34,948.01 | 78 | $34,948.01 |
| 19 | $34,938.21 | 49 | $34,948.01 | 79 | $34,948.01 |
| 20 | $34,938.21 | 50 | $34,948.01 | 80 | $34,948.01 |
| 21 | $34,948.01 | 51 | $34,948.01 | 81 | $34,948.01 |
| 22 | $34,948.01 | 52 | $34,948.01 | 82 | $34,948.01 |
| 23 | $34,948.01 | 53 | $34,948.01 | 83 | $34,948.01 |
| 24 | $34,948.01 | 54 | $34,948.01 | 84 | $34,948.01 |
| 25 | $34,948.01 | 55 | $34,948.01 | 85 | $34,948.01 |
| 26 | $34,948.01 | 56 | $34,948.01 | 86 | $34,948.01 |
| 27 | $34,948.01 | 57 | $34,948.01 | 87 | $34,948.01 |
| 28 | $34,948.01 | 58 | $34,948.01 | 88 | $34,948.01 |
| 29 | $34,948.01 | 59 | $34,948.01 | 89+ | $0.00 |
| 30 | $34,948.01 | 60 | $34,948.01 | | |

**POLICY SPECIFICATIONS**

**1 YEAR INDEXED ACCOUNT**

This is an Eligible Account under the 2% Interest Guarantee on Termination Rider.

**Indexed Account Factors**

Segment Term: 1 Year
Minimum Segment Guaranteed Interest Rate: 0.00%
Cumulative Minimum Segment Guaranteed Interest Rate: 0.00%
Guaranteed Minimum Participation Rate: 100% for the Segment Term
Guaranteed Minimum Growth Cap: 3% for the Segment Term
Guaranteed Minimum Performance Factor: 1.00 for the Segment Term

**Overview –** This describes the Indexed Account Factors and method used in calculating Segment Indexed Interest for each Segment of this Indexed Account. The Indexed Account Factors used in determining the credited rate from the index are not guaranteed and can be changed by us for future segments, subject to the guarantees in the policy, and any such changes can affect the return. Also, see Indexed Accounts.

**Index –** The Index is the S&P 500® Index, excluding dividends. If the S&P 500® Index is discontinued, or if we are unable to use it for reasons beyond our control, we will substitute a successor index of our choosing subject to approval by the Interstate Insurance Product Regulation Commission (IIPRC). In such case, we will notify you and any assignee of record of the change at their last known address.

**Segment Indexed Interest –** At Segment Maturity, Segment Indexed Interest will be credited to the Segment and is equal to the Segment Indexed Interest Rate multiplied by the average of all Segment Monthly Balances over the entire Segment Term. That amount will then be multiplied by the Performance Factor to determine the final Segment Indexed Interest applied.

**Segment Monthly Balance –** The Segment Monthly Balance is, as of the end of any Segment Month, the amount initially transferred to the Segment on the Segment Date minus all Segment Deductions, excluding any interest that may have been credited to the Segment.

**Segment Indexed Interest Rate –** The Segment Indexed Interest Rate reflects any growth in the Index multiplied by the Participation Rate, subject to the Growth Cap, that exceeds the Cumulative Minimum Segment Guaranteed Interest Rate. The Segment Indexed Interest Rate is equal to [the lesser of (a x b) and c] - d, such result being not less than zero, where:

a = Index Growth Rate
b = Participation Rate
c = Growth Cap
d = Cumulative Minimum Segment Guaranteed Interest Rate

**Index Growth Rate –** In calculating the Segment Indexed Interest, the Index Growth Rate for that Segment Term is first calculated, as (f ÷ e) – 1, where:

e = the Closing Value of the Index as of the day before the beginning of the Segment Term; and
f = the Closing Value of the Index as of the day before the end of the Segment Term.

**Participation Rate –** This is the percentage of the Index Growth Rate that is used in calculating the Segment Indexed Interest Rate. The Guaranteed Minimum Participation Rate is shown above. We may declare a higher Participation Rate.

**Growth Cap –** This is the maximum total interest rate for a Segment over the Segment Term, including both the Cumulative Minimum Segment Guaranteed Interest Rate and the Segment Indexed Interest Rate. The Guaranteed Minimum Growth Cap is shown above. We may declare a higher Growth Cap.

**POLICY SPECIFICATIONS**

**Cumulative Minimum Segment Guaranteed Interest Rate –** The Cumulative Minimum Segment Guaranteed Interest Rate is the Minimum Segment Guaranteed Interest Rate compounded annually for the number of years of the Segment Term.

**Segment Guaranteed Interest Rate –** The Segment Guaranteed Interest Rate is the Cumulative Minimum Segment Guaranteed Interest Rate multiplied by the Performance Factor and then converted to an annual rate using compound interest for the number of years of the Segment Term. The Segment Guaranteed Interest Rate is then used to calculate the Segment Guaranteed Interest Credit.

**Performance Factor –** This is the factor used to determine the final Segment Indexed Interest and Segment Guaranteed Interest Rate. The Guaranteed Minimum Performance Factor is shown above. We may declare a higher Performance Factor. Certain policy charges may be used in determining the Performance Factor.

**Product –** Refers to the product provided by this Policy.

The S&P 500 Index is a product of S&P Dow Jones Indices LLC ("SPDJI"), and has been licensed for use by Pacific Life Life Insurance Company ("Pacific Life"). Standard & Poor's®, S&P® and S&P 500® are registered trademarks of Standard & Poor's Financial Services LLC ("S&P"); Dow Jones® is a registered trademark of Dow Jones Trademark Holdings LLC ("Dow Jones"); and these trademarks have been licensed for use by SPDJI and sublicensed for certain purposes by Pacific Life. Pacific Life's Product(s) are not sponsored, endorsed, sold or promoted by SPDJI, Dow Jones, S&P, any of their respective affiliates (collectively, "S&P Dow Jones Indices"). S&P Dow Jones Indices makes no representation or warranty, express or implied, to the owners of the Pacific Life's Product(s) or any member of the public regarding the advisability of investing in securities generally or in Pacific Life's Product(s) particularly or the ability of the S&P 500 Index to track general market performance. S&P Dow Jones Indices' only relationship to Pacific Life with respect to the S&P 500 Index is the licensing of the Index and certain trademarks, service marks and/or trade names of S&P Dow Jones Indices or its licensors. The S&P 500 Index is determined, composed and calculated by S&P Dow Jones Indices without regard to Pacific Life or the Pacific Life's Product(s). S&P Dow Jones Indices have no obligation to take the needs of Pacific Life or the owners of Pacific Life's Product(s) into consideration in determining, composing or calculating the S&P 500 Index. S&P Dow Jones Indices is not responsible for and has not participated in the determination of the prices, and amount of Pacific Life's Product(s) or the timing of the issuance or sale of Pacific Life's Product(s) or in the determination or calculation of the equation by which Pacific Life's Product(s) is to be converted into cash, surrendered or redeemed, as the case may be. S&P Dow Jones Indices has no obligation or liability in connection with the administration, marketing or trading of Pacific Life's Product(s). There is no assurance that investment products based on the S&P 500 Index will accurately track index performance or provide positive investment returns. S&P Dow Jones Indices LLC is not an investment advisor. Inclusion of a security within an index is not a recommendation by S&P Dow Jones Indices to buy, sell, or hold such security, nor is it considered to be investment advice. Notwithstanding the foregoing, CME Group Inc. and its affiliates may independently issue and/or sponsor financial products unrelated to Pacific Life's Product(s) currently being issued by Pacific Life, but which may be similar to and competitive with Pacific Life's Product(s). In addition, CME Group Inc. and its affiliates may trade financial products which are linked to the performance of the S&P 500 Index.

S&P DOW JONES INDICES DOES NOT GUARANTEE THE ADEQUACY, ACCURACY, TIMELINESS AND/OR THE COMPLETENESS OF THE S&P 500 INDEX OR ANY DATA RELATED THERETO OR ANY COMMUNICATION, INCLUDING BUT NOT LIMITED TO, ORAL OR WRITTEN COMMUNICATION (INCLUDING ELECTRONIC COMMUNICATIONS) WITH RESPECT THERETO. S&P DOW JONES INDICES SHALL NOT BE SUBJECT TO ANY DAMAGES OR LIABILITY FOR ANY ERRORS, OMISSIONS, OR DELAYS THEREIN. S&P DOW JONES INDICES MAKES NO EXPRESS OR IMPLIED

**POLICY SPECIFICATIONS**

WARRANTIES, AND EXPRESSLY DISCLAIMS ALL WARRANTIES, OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE OR AS TO RESULTS TO BE OBTAINED BY PACIFIC LIFE, OWNERS OF THE PACIFIC LIFE'S PRODUCTS, OR ANY OTHER PERSON OR ENTITY FROM THE USE OF THE S&P 500 INDEX OR WITH RESPECT TO ANY DATA RELATED THERETO. WITHOUT LIMITING ANY OF THE FOREGOING, IN NO EVENT WHATSOEVER SHALL S&P DOW JONES INDICES BE LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES INCLUDING BUT NOT LIMITED TO, LOSS OF PROFITS, TRADING LOSSES, LOST TIME OR GOODWILL, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, WHETHER IN CONTRACT, TORT, STRICT LIABILITY, OR OTHERWISE. THERE ARE NO THIRD PARTY BENEFICIARIES OF ANY AGREEMENTS OR ARRANGEMENTS BETWEEN S&P DOW JONES INDICES AND PACIFIC LIFE, OTHER THAN THE LICENSORS OF S&P DOW JONES INDICES.

## POLICY SPECIFICATIONS

### 1 YEAR INDEXED ACCOUNT 2

This is an Eligible Account under the 2% Interest Guarantee on Termination Rider.

**Indexed Account Factors**

Segment Term: 1 Year
Minimum Segment Guaranteed Interest Rate: 0.00%
Cumulative Minimum Segment Guaranteed Interest Rate: 0.00%
Guaranteed Minimum Participation Rate: 100% for the Segment Term
Guaranteed Minimum Growth Cap: 3% for the Segment Term
Guaranteed Minimum Performance Factor: 1.00 for the Segment Term

**Overview –** This describes the Indexed Account Factors and method used in calculating Segment Indexed Interest for each Segment of this Indexed Account. The Indexed Account Factors used in determining the credited rate from the index are not guaranteed and can be changed by us for future segments, subject to the guarantees in the policy, and any such changes can affect the return. Also, see Indexed Accounts.

**Index –** The 1 Year Indexed Account 2 provides returns based in part on the returns of three Indexes (Index A, B and C below), excluding dividends. We reserve the right in our sole discretion to substitute any of the Indexes, including if an Index is discontinued or no longer published. In such case, we will notify you and any assignee of record of the change at the respective last known addresses.

Index A – MSCI Emerging Markets Index (published under the ticker symbol "MXEF")

Index B – Hang Seng Index (published under the ticker symbol "HSI")

Index C – EURO STOXX 50® Index, a registered trademark of STOXX Limited (published under the ticker symbol "SX5E")

**Segment Indexed Interest –** At Segment Maturity, Segment Indexed Interest will be credited to the Segment and is equal to the Average Segment Indexed Interest Rate multiplied by the average of all Segment Monthly Balances over the entire Segment Term. That amount will then be multiplied by the Performance Factor to determine the final Segment Indexed Interest applied.

**Segment Monthly Balance –** The Segment Monthly Balance is, as of the end of any Segment Month, the amount initially transferred to the Segment on the Segment Date minus all Segment Deductions, excluding any interest that may have been credited to the Segment.

**Average Segment Indexed Interest Rate –** The Average Segment Indexed Interest Rate is the average of each Index's Segment Indexed Interest Rate for each Index, we calculate the Segment Indexed Interest Rate as described below.

**Segment Indexed Interest Rate –** With regard to each Index, the Segment Indexed Interest Rate reflects any growth in the Index multiplied by the Participation Rate, subject to the Growth Cap, that exceeds the Cumulative Minimum Segment Guaranteed Interest Rate. The Segment Indexed Interest Rate is equal to [the lesser of (a x b) and c] – d, such result being not less than zero, where:

a = Index Growth Rate of the Index
b = Participation Rate
c = Growth Cap
d = Cumulative Minimum Segment Guaranteed Interest Rate

**POLICY SPECIFICATIONS**

**Index Growth Rate –** In calculating the Segment Indexed Interest, the Index Growth Rate for that Segment Term is first calculated separately with regard to each Index, as (f ÷ e) – **1**, where:

e = the Final Value of the Index as of one calendar day before the beginning of the Segment Term, provided the New York Stock Exchange is open that day, and if it is not then as of the next day that the New York Stock Exchange is open; and
f = the Final Value of the Index as of one calendar day before the end of the Segment Term provided the New York Stock Exchange is open that day, and if it is not then as of the next day that the New York Stock Exchange is open.

The Final Value of any particular Index on any calendar day used in calculating the Index Growth Rate as provided above means the value determined by that Index's provider as the Index's final value for that calendar day. If no Final Value is determined for any Index as of the day the New York Stock Exchange is open as provided above, then we will use the Final Value for the most recent preceding calendar day for which a Final Value was determined for that Index.

**Participation Rate –** This is the percentage of the Index Growth Rate of the Index that is used in calculating the Segment Indexed Interest Rate. The Guaranteed Minimum Participation Rate is shown above. We apply the same Participation Rate to each Index. We may declare a higher Participation Rate.

**Growth Cap –** This is the maximum total interest rate for each Index over the Segment Term, including both the Cumulative Minimum Segment Guaranteed Interest Rate and the Segment Indexed Interest Rate. The Guaranteed Minimum Growth Cap is shown above. We apply the same Growth Cap to each Index. We may declare a higher Growth Cap.

**Cumulative Minimum Segment Guaranteed Interest Rate –** The Cumulative Minimum Segment Guaranteed Interest Rate is the Minimum Segment Guaranteed Interest Rate compounded annually for the number of years of the Segment Term.

**Segment Guaranteed Interest Rate –** The Segment Guaranteed Interest Rate is the Cumulative Minimum Segment Guaranteed Interest Rate multiplied by the Performance Factor and then converted to an annual rate using compound interest for the number of years of the Segment Term. The Segment Guaranteed Interest Rate is then used to calculate the Segment Guaranteed Interest Credit.

**Performance Factor –** This is the factor used to determine the final Segment Indexed Interest and Segment Guaranteed Interest Rate. The Guaranteed Minimum Performance Factor is shown above. We may declare a higher Performance Factor. Certain policy charges may be used in determining the Performance Factor.

**POLICY SPECIFICATIONS**

DISCLAIMERS AND ACKNOWLEDGEMENT REQUIRED BY INDEX PROVIDERS

MSCI:

THIS PRODUCT IS NOT SPONSORED, ENDORSED, SOLD OR PROMOTED BY MSCI INC. ("MSCI"), ANY OF ITS AFFILIATES, ANY OF ITS INFORMATION PROVIDERS OR ANY OTHER THIRD PARTY INVOLVED IN, OR RELATED TO, COMPILING, COMPUTING OR CREATING ANY MSCI INDEX (COLLECTIVELY, THE "MSCI PARTIES"). THE MSCI INDEXES ARE THE EXCLUSIVE PROPERTY OF MSCI. MSCI AND THE MSCI INDEX NAMES ARE SERVICE MARK(S) OF MSCI OR ITS AFFILIATES AND HAVE BEEN LICENSED FOR USE FOR CERTAIN PURPOSES BY PACIFIC LIFE INSURANCE COMPANY. NONE OF THE MSCI PARTIES MAKES ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, TO THE ISSUER OR OWNERS OF THIS PRODUCT OR ANY OTHER PERSON OR ENTITY REGARDING THE ADVISABILITY OF INVESTING IN PRODUCTS GENERALLY OR IN THIS PRODUCT PARTICULARLY OR THE ABILITY OF ANY MSCI INDEX TO TRACK CORRESPONDING STOCK MARKET PERFORMANCE. MSCI OR ITS AFFILIATES ARE THE LICENSORS OF CERTAIN TRADEMARKS, SERVICE MARKS AND TRADE NAMES AND OF THE MSCI INDEXES WHICH ARE DETERMINED, COMPOSED AND CALCULATED BY MSCI WITHOUT REGARD TO THIS PRODUCT OR THE ISSUER OR OWNERS OF THIS PRODUCT OR ANY OTHER PERSON OR ENTITY. NONE OF THE MSCI PARTIES HAS ANY OBLIGATION TO TAKE THE NEEDS OF THE ISSUER OR OWNERS OF THIS PRODUCT OR ANY OTHER PERSON OR ENTITY INTO CONSIDERATION IN DETERMINING, COMPOSING OR CALCULATING THE MSCI INDEXES. NONE OF THE MSCI PARTIES IS RESPONSIBLE FOR OR HAS PARTICIPATED IN THE DETERMINATION OF THE TIMING OF, PRICES AT, OR QUANTITIES OF THIS PRODUCT TO BE ISSUED OR IN THE DETERMINATION OR CALCULATION OF THE EQUATION BY OR THE CONSIDERATION INTO WHICH THIS PRODUCT IS REDEEMABLE. FURTHER, NONE OF THE MSCI PARTIES HAS ANY OBLIGATION OR LIABILITY TO THE ISSUER OR OWNERS OF THIS PRODUCT OR ANY OTHER PERSON OR ENTITY IN CONNECTION WITH THE ADMINISTRATION, MARKETING OR OFFERING OF THIS PRODUCT.

ALTHOUGH MSCI SHALL OBTAIN INFORMATION FOR INCLUSION IN OR FOR USE IN THE CALCULATION OF THE MSCI INDEXES FROM SOURCES THAT MSCI CONSIDERS RELIABLE, NONE OF THE MSCI PARTIES WARRANTS OR GUARANTEES THE ORIGINALITY, ACCURACY AND/OR THE COMPLETENESS OF ANY MSCI INDEX OR ANY DATA INCLUDED THEREIN. NONE OF THE MSCI PARTIES MAKES ANY WARRANTY, EXPRESS OR IMPLIED, AS TO RESULTS TO BE OBTAINED BY THE ISSUER OF THE PRODUCT, OWNERS OF THE PRODUCT, OR ANY OTHER PERSON OR ENTITY, FROM THE USE OF ANY MSCI INDEX OR ANY DATA INCLUDED THEREIN. NONE OF THE MSCI PARTIES SHALL HAVE ANY LIABILITY FOR ANY ERRORS, OMISSIONS OR INTERRUPTIONS OF OR IN CONNECTION WITH ANY MSCI INDEX OR ANY DATA INCLUDED THEREIN. FURTHER, NONE OF THE MSCI PARTIES MAKES ANY EXPRESS OR IMPLIED WARRANTIES OF ANY KIND, AND THE MSCI PARTIES HEREBY EXPRESSLY DISCLAIM ALL WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO EACH MSCI INDEX AND ANY DATA INCLUDED THEREIN. WITHOUT LIMITING ANY OF THE FOREGOING, IN NO EVENT SHALL ANY OF THE MSCI PARTIES HAVE ANY LIABILITY FOR ANY DIRECT, INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL OR ANY OTHER DAMAGES (INCLUDING LOST PROFITS) EVEN IF NOTIFIED OF THE POSSIBILITY OF SUCH DAMAGES.

**POLICY SPECIFICATIONS**

HANG SENG:

The Hang Seng Index (the "Index(es)") is/are published and compiled by Hang Seng Indexes Company Limited pursuant to a license from Hang Seng Data Services Limited. The mark(s) and name(s) Hang Seng Index are proprietary to Hang Seng Data Services Limited. Hang Seng Indexes Company Limited and Hang Seng Data Services Limited have agreed to the use of, and reference to, the Index(es) by Pacific Life Insurance Company in connection with 1 YEAR INDEXED ACCOUNT 2 (the "Product"), **BUT NEITHER HANG SENG INDEXES COMPANY LIMITED NOR HANG SENG DATA SERVICES LIMITED WARRANTS OR REPRESENTS OR GUARANTEES TO ANY BROKER OR HOLDER OF THE PRODUCT OR ANY OTHER PERSON (i) THE ACCURACY OR COMPLETENESS OF ANY OF THE INDEX(ES) AND ITS COMPUTATION OR ANY INFORMATION RELATED THERETO; OR (ii) THE FITNESS OR SUITABILITY FOR ANY PURPOSE OF ANY OF THE INDEX(ES) OR ANY COMPONENT OR DATA COMPRISED IN IT; OR (iii) THE RESULTS WHICH MAY BE OBTAINED BY ANY PERSON FROM THE USE OF ANY OF THE INDEX(ES) OR ANY COMPONENT OR DATA COMPRISED IN IT FOR ANY PURPOSE, AND NO WARRANTY OR REPRESENTATION OR GUARANTEE OF ANY KIND WHATSOEVER RELATING TO ANY OF THE INDEX(ES) IS GIVEN OR MAY BE IMPLIED.** The process and basis of computation and compilation of any of the Index(es) and any of the related formula or formulae, constituent stocks and factors may at any time be changed or altered by Hang Seng Indexes Company Limited without notice. **TO THE EXTENT PERMITTED BY APPLICABLE LAW, NO RESPONSIBILITY OR LIABILITY IS ACCEPTED BY HANG SENG INDEXES COMPANY LIMITED OR HANG SENG DATA SERVICES LIMITED (i) IN RESPECT OF THE USE OF AND/OR REFERENCE TO ANY OF THE INDEX(ES) BY PACIFIC LIFE INSURANCE COMPANY IN CONNECTION WITH THE PRODUCT; OR (ii) FOR ANY INACCURACIES, OMISSIONS, MISTAKES OR ERRORS OF HANG SENG INDEXES COMPANY LIMITED IN THE COMPUTATION OF ANY OF THE INDEX(ES); OR (iii) FOR ANY INACCURACIES, OMISSIONS, MISTAKES, ERRORS OR INCOMPLETENESS OF ANY INFORMATION USED IN CONNECTION WITH THE COMPUTATION OF ANY OF THE INDEX(ES) WHICH IS SUPPLIED BY ANY OTHER PERSON; OR (iv) FOR ANY ECONOMIC OR OTHER LOSS WHICH MAY BE DIRECTLY OR INDIRECTLY SUSTAINED BY ANY BROKER OR HOLDER OF THE PRODUCT OR ANY OTHER PERSON DEALING WITH THE PRODUCT AS A RESULT OF ANY OF THE AFORESAID, AND NO CLAIMS, ACTIONS OR LEGAL PROCEEDINGS MAY BE BROUGHT AGAINST HANG SENG INDEXES COMPANY LIMITED AND/OR HANG SENG DATA SERVICES LIMITED** in connection with the Product in any manner whatsoever by any broker, holder or other person dealing with the Product. Any broker, holder or other person dealing with the Product does so therefore in full knowledge of this disclaimer and can place no reliance whatsoever on Hang Seng Indexes Company Limited and Hang Seng Data Services Limited. For the avoidance of doubt, this disclaimer does not create any contractual or quasi-contractual relationship between any broker, holder or other person and Hang Seng Indexes Company Limited and/or Hang Seng Data Services Limited and must not be construed to have created such relationship.

A policyowner, by purchasing the policy, will be regarded as having acknowledged, understood, and accepted this disclaimer. The level of the Hang Seng Index at any time for the purposes of the Product will be the level as calculated by Hang Seng Indexes Company Limited.

**POLICY SPECIFICATIONS**

EURO STOXX 50® Index:

STOXX and its licensors (the "Licensors") have no relationship to the Pacific Life Insurance Company, other than the licensing of the EURO STOXX 50® Index and the related trademarks for use in connection with the **1 YEAR INDEXED ACCOUNT 2**.

**STOXX and its Licensors do not:**

- Sponsor, endorse, sell or promote the **1 YEAR INDEXED ACCOUNT 2**.
- Recommend that any person invest in the **1 YEAR INDEXED ACCOUNT 2** or any other securities.
- Have any responsibility or liability for or make any decisions about the timing, amount or pricing of the **1 YEAR INDEXED ACCOUNT 2.**
- Have any responsibility or liability for the administration, management or marketing of the **1 YEAR INDEXED ACCOUNT 2**.
- Consider the needs of the **1 YEAR INDEXED ACCOUNT 2** or the owners of the **1 YEAR INDEXED ACCOUNT 2** in determining, composing or calculating the EURO STOXX 50® Index or have any obligation to do so.

**STOXX and its Licensors will not have any liability in connection with the 1 YEAR INDEXED ACCOUNT 2. Specifically,**

- **STOXX and its Licensors do not make any warranty, express or implied and disclaim any and all warranty about:**
  - **The results to be obtained by the 1 YEAR INDEXED ACCOUNT 2, the owner of the 1 YEAR INDEXED ACCOUNT 2 or any other person in connection with the use of the** EURO STOXX 50® Index **and the data included in the** EURO STOXX 50® Index**;**
  - **The accuracy or completeness of the** EURO STOXX 50® Index **and its data;**
  - **The merchantability and the fitness for a particular purpose or use of the** EURO STOXX 50® Index **and its data;**
- **STOXX and its Licensors will have no liability for any errors, omissions or interruptions in the** EURO STOXX 50® Index **or its data;**
- **Under no circumstances will STOXX or its Licensors be liable for any lost profits or indirect, punitive, special or consequential damages or losses, even if STOXX or its Licensors knows that they might occur.**

**The licensing agreement between Pacific Life Insurance Company and STOXX is solely for their benefit and not for the benefit of the owners of the 1 YEAR INDEXED ACCOUNT 2 or any other third parties.**

## POLICY SPECIFICATIONS

### 1 YEAR INDEXED ACCOUNT 3

This is an Eligible Account under the 2% Interest Guarantee on Termination Rider.

**Indexed Account Factors**

Segment Term: 1 Year
Minimum Segment Guaranteed Interest Rate: 0.00%
Cumulative Minimum Segment Guaranteed Interest Rate: 0.00%
Guaranteed Minimum Participation Rate: 140% for the Segment Term
Guaranteed Minimum Growth Cap: 2% for the Segment Term
Guaranteed Minimum Performance Factor: 1.00 for the Segment Term

**Overview –** This describes the Indexed Account Factors and method used in calculating Segment Indexed Interest for each Segment of this Indexed Account. The Indexed Account Factors used in determining the credited rate from the index are not guaranteed and can be changed by us for future segments, subject to the guarantees in the policy, and any such changes can affect the return. Also, see Indexed Accounts.

**Index –** The Index is the S&P 500® Index, excluding dividends. If the S&P 500® Index is discontinued, or if we are unable to use it for reasons beyond our control, we will substitute a successor index of our choosing subject to approval by the Interstate Insurance Product Regulation Commission (IIPRC). In such case, we will notify you and any assignee of record of the change at their last known address.

**Segment Indexed Interest –** At Segment Maturity, Segment Indexed Interest will be credited to the Segment and is equal to the Segment Indexed Interest Rate multiplied by the average of all Segment Monthly Balances over the entire Segment Term. That amount will then be multiplied by the Performance Factor to determine the final Segment Indexed Interest applied.

**Segment Monthly Balance –** The Segment Monthly Balance is, as of the end of any Segment Month, the amount initially transferred to the Segment on the Segment Date minus all Segment Deductions, excluding any interest that may have been credited to the Segment.

**Segment Indexed Interest Rate –** The Segment Indexed Interest Rate reflects any growth in the Index multiplied by the Participation Rate, subject to the Growth Cap, that exceeds the Cumulative Minimum Segment Guaranteed Interest Rate. The Segment Indexed Interest Rate is equal to [the lesser of (a x b) and c] - d, such result being not less than zero, where:

a = Index Growth Rate
b = Participation Rate
c = Growth Cap
d = Cumulative Minimum Segment Guaranteed Interest Rate

**Index Growth Rate –** In calculating the Segment Indexed Interest, the Index Growth Rate for that Segment Term is first calculated, as (f ÷ e) – 1, where:

e = the Closing Value of the Index as of the day before the beginning of the Segment Term; and
f = the Closing Value of the Index as of the day before the end of the Segment Term.

**Participation Rate –** This is the percentage of the Index Growth Rate that is used in calculating the Segment Indexed Interest Rate. The Guaranteed Minimum Participation Rate is shown above. We may declare a higher Participation Rate.

**Growth Cap –** This is the maximum total interest rate for a Segment over the Segment Term, including both the Cumulative Minimum Segment Guaranteed Interest Rate and the Segment Indexed Interest Rate. The Guaranteed Minimum Growth Cap is shown above. We may declare a higher Growth Cap.

**POLICY SPECIFICATIONS**

**Cumulative Minimum Segment Guaranteed Interest Rate –** The Cumulative Minimum Segment Guaranteed Interest Rate is the Minimum Segment Guaranteed Interest Rate compounded annually for the number of years of the Segment Term.

**Segment Guaranteed Interest Rate –** The Segment Guaranteed Interest Rate is the Cumulative Minimum Segment Guaranteed Interest Rate multiplied by the Performance Factor and then converted to an annual rate using compound interest for the number of years of the Segment Term. The Segment Guaranteed Interest Rate is then used to calculate the Segment Guaranteed Interest Credit.

**Performance Factor –** This is the factor used to determine the final Segment Indexed Interest and Segment Guaranteed Interest Rate. The Guaranteed Minimum Performance Factor is shown above. We may declare a higher Performance Factor. Certain policy charges may be used in determining the Performance Factor.

**Product –** Refers to the product provided by this Policy.

The S&P 500 Index is a product of S&P Dow Jones Indices LLC ("SPDJI"), and has been licensed for use by Pacific Life Life Insurance Company ("Pacific Life"). Standard & Poor's®, S&P® and S&P 500® are registered trademarks of Standard & Poor's Financial Services LLC ("S&P"); Dow Jones® is a registered trademark of Dow Jones Trademark Holdings LLC ("Dow Jones"); and these trademarks have been licensed for use by SPDJI and sublicensed for certain purposes by Pacific Life. Pacific Life's Product(s) are not sponsored, endorsed, sold or promoted by SPDJI, Dow Jones, S&P, any of their respective affiliates (collectively, "S&P Dow Jones Indices"). S&P Dow Jones Indices makes no representation or warranty, express or implied, to the owners of the Pacific Life's Product(s) or any member of the public regarding the advisability of investing in securities generally or in Pacific Life's Product(s) particularly or the ability of the S&P 500 Index to track general market performance. S&P Dow Jones Indices' only relationship to Pacific Life with respect to the S&P 500 Index is the licensing of the Index and certain trademarks, service marks and/or trade names of S&P Dow Jones Indices or its licensors. The S&P 500 Index is determined, composed and calculated by S&P Dow Jones Indices without regard to Pacific Life or the Pacific Life's Product(s). S&P Dow Jones Indices have no obligation to take the needs of Pacific Life or the owners of Pacific Life's Product(s) into consideration in determining, composing or calculating the S&P 500 Index. S&P Dow Jones Indices is not responsible for and has not participated in the determination of the prices, and amount of Pacific Life's Product(s) or the timing of the issuance or sale of Pacific Life's Product(s) or in the determination or calculation of the equation by which Pacific Life's Product(s) is to be converted into cash, surrendered or redeemed, as the case may be. S&P Dow Jones Indices has no obligation or liability in connection with the administration, marketing or trading of Pacific Life's Product(s). There is no assurance that investment products based on the S&P 500 Index will accurately track index performance or provide positive investment returns. S&P Dow Jones Indices LLC is not an investment advisor. Inclusion of a security within an index is not a recommendation by S&P Dow Jones Indices to buy, sell, or hold such security, nor is it considered to be investment advice. Notwithstanding the foregoing, CME Group Inc. and its affiliates may independently issue and/or sponsor financial products unrelated to Pacific Life's Product(s) currently being issued by Pacific Life, but which may be similar to and competitive with Pacific Life's Product(s). In addition, CME Group Inc. and its affiliates may trade financial products which are linked to the performance of the S&P 500 Index.

S&P DOW JONES INDICES DOES NOT GUARANTEE THE ADEQUACY, ACCURACY, TIMELINESS AND/OR THE COMPLETENESS OF THE S&P 500 INDEX OR ANY DATA RELATED THERETO OR ANY COMMUNICATION, INCLUDING BUT NOT LIMITED TO, ORAL OR WRITTEN COMMUNICATION (INCLUDING ELECTRONIC COMMUNICATIONS) WITH RESPECT THERETO. S&P DOW JONES INDICES SHALL NOT BE SUBJECT TO ANY DAMAGES OR LIABILITY FOR ANY ERRORS, OMISSIONS, OR DELAYS THEREIN. S&P DOW JONES INDICES MAKES NO EXPRESS OR IMPLIED

**POLICY SPECIFICATIONS**

WARRANTIES, AND EXPRESSLY DISCLAIMS ALL WARRANTIES, OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE OR AS TO RESULTS TO BE OBTAINED BY PACIFIC LIFE, OWNERS OF THE PACIFIC LIFE'S PRODUCTS, OR ANY OTHER PERSON OR ENTITY FROM THE USE OF THE S&P 500 INDEX OR WITH RESPECT TO ANY DATA RELATED THERETO. WITHOUT LIMITING ANY OF THE FOREGOING, IN NO EVENT WHATSOEVER SHALL S&P DOW JONES INDICES BE LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES INCLUDING BUT NOT LIMITED TO, LOSS OF PROFITS, TRADING LOSSES, LOST TIME OR GOODWILL, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, WHETHER IN CONTRACT, TORT, STRICT LIABILITY, OR OTHERWISE. THERE ARE NO THIRD PARTY BENEFICIARIES OF ANY AGREEMENTS OR ARRANGEMENTS BETWEEN S&P DOW JONES INDICES AND PACIFIC LIFE, OTHER THAN THE LICENSORS OF S&P DOW JONES INDICES.

**POLICY SPECIFICATIONS**

**1 YEAR INDEXED ACCOUNT 4**

This is an Eligible Account under the 2% Interest Guarantee on Termination Rider.

**Indexed Account Factors**

Segment Term: 1 Year
Minimum Segment Guaranteed Interest Rate: 0.00%
Cumulative Minimum Segment Guaranteed Interest Rate: 0.00%
Guaranteed Minimum Participation Rate: 100% for the Segment Term
Guaranteed Maximum Index Threshold: 20%
Guaranteed Minimum Performance Factor: 1.00 for the Segment Term

**Overview –** This describes the Indexed Account Factors and method used in calculating Segment Indexed Interest for each Segment of this Indexed Account. The Indexed Account Factors used in determining the credited rate from the index are not guaranteed and can be changed by us for future segments, subject to the guarantees in the policy, and any such changes can affect the return. Also, see Indexed Accounts.

**Index –** The Index is the S&P 500® Index, excluding dividends. If the S&P 500® Index is discontinued, or if we are unable to use it for reasons beyond our control, we will substitute a successor index of our choosing subject to approval by the Interstate Insurance Product Regulation Commission (IIPRC). In such case, we will notify you and any assignee of record of the change at their last known address.

**Segment Indexed Interest –** At Segment Maturity, Segment Indexed Interest will be credited to the Segment and is equal to the Segment Indexed Interest Rate multiplied by the average of all Segment Monthly Balances over the entire Segment Term. That amount will then be multiplied by the Performance Factor to determine the final Segment Indexed Interest applied.

**Segment Monthly Balance –** The Segment Monthly Balance is, as of the end of any Segment Month, the amount initially transferred to the Segment on the Segment Date minus all Segment Deductions, excluding any interest that may have been credited to the Segment.

**Segment Indexed Interest Rate –** The Segment Indexed Interest Rate reflects any growth in the Index above the Index Threshold. The Segment Indexed Interest Rate is equal to (a - b) x c, such result being not less than zero, where:

a = Index Growth Rate
b = Index Threshold
c = Participation Rate

**Index Growth Rate –** In calculating the Segment Indexed Interest, the Index Growth Rate for that Segment Term is first calculated, as (d ÷ e) – 1, where:

d = the Closing Value of the Index as of the day before the beginning of the Segment Term; and
e = the Closing Value of the Index as of the day before the end of the Segment Term.

**Index Threshold –** The Segment Indexed Interest Rate is based upon the Index Growth Rate less the Index Threshold. The Guaranteed Maximum Index Threshold is shown above. We may declare a lower Index Threshold.

**Participation Rate –** This is the percentage of the Index Growth Rate that is used in calculating the Segment Indexed Interest Rate. The Guaranteed Minimum Participation Rate is shown above. We may declare a higher Participation Rate.

**POLICY SPECIFICATIONS**

**Cumulative Minimum Segment Guaranteed Interest Rate –** The Cumulative Minimum Segment Guaranteed Interest Rate is the Minimum Segment Guaranteed Interest Rate compounded annually for the number of years of the Segment Term.

**Segment Guaranteed Interest Rate –** The Segment Guaranteed Interest Rate is the Cumulative Minimum Segment Guaranteed Interest Rate multiplied by the Performance Factor and then converted to an annual rate using compound interest for the number of years of the Segment Term. The Segment Guaranteed Interest Rate is then used to calculate the Segment Guaranteed Interest Credit.

**Performance Factor –** This is the factor used to determine the final Segment Indexed Interest and Segment Guaranteed Interest Rate. The Guaranteed Minimum Performance Factor is shown above. We may declare a higher Performance Factor. Certain policy charges may be used in determining the Performance Factor.

**Product –** Refers to the product provided by this Policy.

The S&P 500 Index is a product of S&P Dow Jones Indices LLC ("SPDJI"), and has been licensed for use by Pacific Life Life Insurance Company ("Pacific Life"). Standard & Poor's®, S&P® and S&P 500® are registered trademarks of Standard & Poor's Financial Services LLC ("S&P"); Dow Jones® is a registered trademark of Dow Jones Trademark Holdings LLC ("Dow Jones"); and these trademarks have been licensed for use by SPDJI and sublicensed for certain purposes by Pacific Life. Pacific Life's Product(s) are not sponsored, endorsed, sold or promoted by SPDJI, Dow Jones, S&P, any of their respective affiliates (collectively, "S&P Dow Jones Indices"). S&P Dow Jones Indices makes no representation or warranty, express or implied, to the owners of the Pacific Life's Product(s) or any member of the public regarding the advisability of investing in securities generally or in Pacific Life's Product(s) particularly or the ability of the S&P 500 Index to track general market performance. S&P Dow Jones Indices' only relationship to Pacific Life with respect to the S&P 500 Index is the licensing of the Index and certain trademarks, service marks and/or trade names of S&P Dow Jones Indices or its licensors. The S&P 500 Index is determined, composed and calculated by S&P Dow Jones Indices without regard to Pacific Life or the Pacific Life's Product(s). S&P Dow Jones Indices have no obligation to take the needs of Pacific Life or the owners of Pacific Life's Product(s) into consideration in determining, composing or calculating the S&P 500 Index. S&P Dow Jones Indices is not responsible for and has not participated in the determination of the prices, and amount of Pacific Life's Product(s) or the timing of the issuance or sale of Pacific Life's Product(s) or in the determination or calculation of the equation by which Pacific Life's Product(s) is to be converted into cash, surrendered or redeemed, as the case may be. S&P Dow Jones Indices has no obligation or liability in connection with the administration, marketing or trading of Pacific Life's Product(s). There is no assurance that investment products based on the S&P 500 Index will accurately track index performance or provide positive investment returns. S&P Dow Jones Indices LLC is not an investment advisor. Inclusion of a security within an index is not a recommendation by S&P Dow Jones Indices to buy, sell, or hold such security, nor is it considered to be investment advice. Notwithstanding the foregoing, CME Group Inc. and its affiliates may independently issue and/or sponsor financial products unrelated to Pacific Life's Product(s) currently being issued by Pacific Life, but which may be similar to and competitive with Pacific Life's Product(s). In addition, CME Group Inc. and its affiliates may trade financial products which are linked to the performance of the S&P 500 Index.

S&P DOW JONES INDICES DOES NOT GUARANTEE THE ADEQUACY, ACCURACY, TIMELINESS AND/OR THE COMPLETENESS OF THE S&P 500 INDEX OR ANY DATA RELATED THERETO OR ANY COMMUNICATION, INCLUDING BUT NOT LIMITED TO, ORAL OR WRITTEN COMMUNICATION (INCLUDING ELECTRONIC COMMUNICATIONS) WITH RESPECT THERETO. S&P DOW JONES INDICES SHALL NOT BE SUBJECT TO ANY DAMAGES OR LIABILITY FOR ANY ERRORS, OMISSIONS, OR DELAYS THEREIN. S&P DOW JONES INDICES MAKES NO EXPRESS OR IMPLIED

**POLICY SPECIFICATIONS**

WARRANTIES, AND EXPRESSLY DISCLAIMS ALL WARRANTIES, OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE OR AS TO RESULTS TO BE OBTAINED BY PACIFIC LIFE, OWNERS OF THE PACIFIC LIFE'S PRODUCTS, OR ANY OTHER PERSON OR ENTITY FROM THE USE OF THE S&P 500 INDEX OR WITH RESPECT TO ANY DATA RELATED THERETO. WITHOUT LIMITING ANY OF THE FOREGOING, IN NO EVENT WHATSOEVER SHALL S&P DOW JONES INDICES BE LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES INCLUDING BUT NOT LIMITED TO, LOSS OF PROFITS, TRADING LOSSES, LOST TIME OR GOODWILL, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, WHETHER IN CONTRACT, TORT, STRICT LIABILITY, OR OTHERWISE. THERE ARE NO THIRD PARTY BENEFICIARIES OF ANY AGREEMENTS OR ARRANGEMENTS BETWEEN S&P DOW JONES INDICES AND PACIFIC LIFE, OTHER THAN THE LICENSORS OF S&P DOW JONES INDICES.

## POLICY SPECIFICATIONS

### 1 YEAR INDEXED ACCOUNT 5

This is an Eligible Account under the 2% Interest Guarantee on Termination Rider.

**Indexed Account Factors**

Segment Term: 1 Year
Minimum Segment Guaranteed Interest Rate: 0.00%
Cumulative Minimum Segment Guaranteed Interest Rate: 0.00%
Guaranteed Minimum Participation Rate: 100% for the Segment Term
Guaranteed Minimum Growth Cap: 4% for the Segment Term
Maximum Monthly Indexed Account Charge Rate: 0.0666% for the Segment Term
Guaranteed Minimum Performance Factor: 1.00 for the Segment Term

**Overview –** This describes the Indexed Account Factors and method used in calculating Segment Indexed Interest for each Segment of this Indexed Account. The Indexed Account Factors used in determining the credited rate from the index are not guaranteed and can be changed by us for future segments, subject to the guarantees in the policy, and any such changes can affect the return. Also, see Indexed Accounts.

**Index –** The Index is the S&P 500® Index, excluding dividends. If the S&P 500® Index is discontinued, or if we are unable to use it for reasons beyond our control, we will substitute a successor index of our choosing subject to approval by the Interstate Insurance Product Regulation Commission (IIPRC). In such case, we will notify you and any assignee of record of the change at their last known address.

**Segment Indexed Interest –** At Segment Maturity, Segment Indexed Interest will be credited to the Segment and is equal to the Segment Indexed Interest Rate multiplied by the average of all Segment Monthly Balances over the entire Segment Term. That amount will then be multiplied by the Performance Factor to determine the final Segment Indexed Interest applied.

**Segment Monthly Balance –** The Segment Monthly Balance is, as of the end of any Segment Month, the amount initially transferred to the Segment on the Segment Date minus all Segment Deductions, excluding any interest that may have been credited to the Segment.

**Segment Indexed Interest Rate –** The Segment Indexed Interest Rate reflects any growth in the Index multiplied by the Participation Rate, subject to the Growth Cap, that exceeds the Cumulative Minimum Segment Guaranteed Interest Rate. The Segment Indexed Interest Rate is equal to [the lesser of (a x b) and c] - d, such result being not less than zero, where:

a = Index Growth Rate
b = Participation Rate
c = Growth Cap
d = Cumulative Minimum Segment Guaranteed Interest Rate

**Index Growth Rate –** In calculating the Segment Indexed Interest, the Index Growth Rate for that Segment Term is first calculated, as (f ÷ e) – 1, where:

e = the Closing Value of the Index as of the day before the beginning of the Segment Term; and
f = the Closing Value of the Index as of the day before the end of the Segment Term.

**Participation Rate –** This is the percentage of the Index Growth Rate that is used in calculating the Segment Indexed Interest Rate. The Guaranteed Minimum Participation Rate is shown above. We may declare a higher Participation Rate.

**Growth Cap –** This is the maximum total interest rate for a Segment over the Segment Term, including both the Cumulative Minimum Segment Guaranteed Interest Rate and the Segment Indexed Interest Rate. The Guaranteed Minimum Growth Cap is shown above. We may declare a higher Growth Cap.

**POLICY SPECIFICATIONS**

**Cumulative Minimum Segment Guaranteed Interest Rate –** The Cumulative Minimum Segment Guaranteed Interest Rate is the Minimum Segment Guaranteed Interest Rate compounded annually for the number of years of the Segment Term.

**Segment Guaranteed Interest Rate –** The Segment Guaranteed Interest Rate is the Cumulative Minimum Segment Guaranteed Interest Rate multiplied by the Performance Factor and then converted to an annual rate using compound interest for the number of years of the Segment Term. The Segment Guaranteed Interest Rate is then used to calculate the Segment Guaranteed Interest Credit.

**Performance Factor –** This is the factor used to determine the final Segment Indexed Interest and Segment Guaranteed Interest Rate. The Guaranteed Minimum Performance Factor is shown above. We may declare a higher Performance Factor. Certain policy charges may be used in determining the Performance Factor.

**Monthly Indexed Account Charge Rate –** This is the rate that is used to calculate the Indexed Account Charge. The Maximum Monthly Indexed Account Charge Rate for this Indexed Account is shown above.

**Indexed Account Charge –** This is a benefit charge that is treated as part of the Monthly Deduction on each Monthly Payment Date. The amount of this benefit charge is the Monthly Indexed Account Charge Rate, multiplied by the Indexed Account Value of this Indexed Account at the beginning of the policy month before the Monthly Deduction is assessed.

**Product –** Refers to the product provided by this Policy.

The S&P 500 Index is a product of S&P Dow Jones Indices LLC ("SPDJI"), and has been licensed for use by Pacific Life Life Insurance Company ("Pacific Life"). Standard & Poor's®, S&P® and S&P 500® are registered trademarks of Standard & Poor's Financial Services LLC ("S&P"); Dow Jones® is a registered trademark of Dow Jones Trademark Holdings LLC ("Dow Jones"); and these trademarks have been licensed for use by SPDJI and sublicensed for certain purposes by Pacific Life. Pacific Life's Product(s) are not sponsored, endorsed, sold or promoted by SPDJI, Dow Jones, S&P, any of their respective affiliates (collectively, "S&P Dow Jones Indices"). S&P Dow Jones Indices makes no representation or warranty, express or implied, to the owners of the Pacific Life's Product(s) or any member of the public regarding the advisability of investing in securities generally or in Pacific Life's Product(s) particularly or the ability of the S&P 500 Index to track general market performance. S&P Dow Jones Indices' only relationship to Pacific Life with respect to the S&P 500 Index is the licensing of the Index and certain trademarks, service marks and/or trade names of S&P Dow Jones Indices or its licensors. The S&P 500 Index is determined, composed and calculated by S&P Dow Jones Indices without regard to Pacific Life or the Pacific Life's Product(s). S&P Dow Jones Indices have no obligation to take the needs of Pacific Life or the owners of Pacific Life's Product(s) into consideration in determining, composing or calculating the S&P 500 Index. S&P Dow Jones Indices is not responsible for and has not participated in the determination of the prices, and amount of Pacific Life's Product(s) or the timing of the issuance or sale of Pacific Life's Product(s) or in the determination or calculation of the equation by which Pacific Life's Product(s) is to be converted into cash, surrendered or redeemed, as the case may be. S&P Dow Jones Indices has no obligation or liability in connection with the administration, marketing or trading of Pacific Life's Product(s). There is no assurance that investment products based on the S&P 500 Index will accurately track index performance or provide positive investment returns. S&P Dow Jones Indices LLC is not an investment advisor. Inclusion of a security within an index is not a recommendation by S&P Dow Jones Indices to buy, sell, or hold such security, nor is it considered to be investment advice. Notwithstanding the foregoing, CME Group Inc. and its affiliates may independently issue and/or sponsor financial products unrelated to Pacific Life's Product(s) currently being issued by Pacific Life, but which may be similar to and competitive with Pacific Life's Product(s). In addition, CME Group Inc. and its affiliates may trade financial products which are linked to the performance of the S&P 500 Index.

**POLICY SPECIFICATIONS**

S&P DOW JONES INDICES DOES NOT GUARANTEE THE ADEQUACY, ACCURACY, TIMELINESS AND/OR THE COMPLETENESS OF THE S&P 500 INDEX OR ANY DATA RELATED THERETO OR ANY COMMUNICATION, INCLUDING BUT NOT LIMITED TO, ORAL OR WRITTEN COMMUNICATION (INCLUDING ELECTRONIC COMMUNICATIONS) WITH RESPECT THERETO. S&P DOW JONES INDICES SHALL NOT BE SUBJECT TO ANY DAMAGES OR LIABILITY FOR ANY ERRORS, OMISSIONS, OR DELAYS THEREIN. S&P DOW JONES INDICES MAKES NO EXPRESS OR IMPLIED WARRANTIES, AND EXPRESSLY DISCLAIMS ALL WARRANTIES, OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE OR AS TO RESULTS TO BE OBTAINED BY PACIFIC LIFE, OWNERS OF THE PACIFIC LIFE'S PRODUCTS, OR ANY OTHER PERSON OR ENTITY FROM THE USE OF THE S&P 500 INDEX OR WITH RESPECT TO ANY DATA RELATED THERETO. WITHOUT LIMITING ANY OF THE FOREGOING, IN NO EVENT WHATSOEVER SHALL S&P DOW JONES INDICES BE LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES INCLUDING BUT NOT LIMITED TO, LOSS OF PROFITS, TRADING LOSSES, LOST TIME OR GOODWILL, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, WHETHER IN CONTRACT, TORT, STRICT LIABILITY, OR OTHERWISE. THERE ARE NO THIRD PARTY BENEFICIARIES OF ANY AGREEMENTS OR ARRANGEMENTS BETWEEN S&P DOW JONES INDICES AND PACIFIC LIFE, OTHER THAN THE LICENSORS OF S&P DOW JONES INDICES.

**POLICY SPECIFICATIONS**

**2 YEAR INDEXED ACCOUNT**

**Indexed Account Factors**

Segment Term: 2 Years
Minimum Segment Guaranteed Interest Rate: 0.00%
Cumulative Minimum Segment Guaranteed Interest Rate: 0.00%
Guaranteed Minimum Participation Rate: 100% for the Segment Term
Guaranteed Minimum Growth Cap: 6% for the Segment Term
Guaranteed Minimum Performance Factor: 1.00 for the Segment Term

**Overview –** This describes the Indexed Account Factors and method used in calculating Segment Indexed Interest for each Segment of this Indexed Account. The Indexed Account Factors used in determining the credited rate from the index are not guaranteed and can be changed by us for future segments, subject to the guarantees in the policy, and any such changes can affect the return. Also, see Indexed Accounts.

**Index –** The Index is the S&P 500® Index, excluding dividends. If the S&P 500® Index is discontinued, or if we are unable to use it for reasons beyond our control, we will substitute a successor index of our choosing subject to approval by the Interstate Insurance Product Regulation Commission (IIPRC). In such case, we will notify you and any assignee of record of the change at their last known address.

**Segment Indexed Interest –** At Segment Maturity, Segment Indexed Interest will be credited to the Segment and is equal to the Segment Indexed Interest Rate multiplied by the average of all Segment Monthly Balances over the entire Segment Term. That amount will then be multiplied by the Performance Factor to determine the final Segment Indexed Interest applied.

**Segment Monthly Balance –** The Segment Monthly Balance is, as of the end of any Segment Month, the amount initially transferred to the Segment on the Segment Date minus all Segment Deductions, excluding any interest that may have been credited to the Segment.

**Segment Indexed Interest Rate –** The Segment Indexed Interest Rate reflects any growth in the Index multiplied by the Participation Rate, subject to the Growth Cap, that exceeds the Cumulative Minimum Segment Guaranteed Interest Rate. The Segment Indexed Interest Rate is equal to [the lesser of (a x b) and c] - d, such result being not less than zero, where:

a = Index Growth Rate
b = Participation Rate
c = Growth Cap
d = Cumulative Minimum Segment Guaranteed Interest Rate

**Index Growth Rate –** In calculating the Segment Indexed Interest, the Index Growth Rate for that Segment Term is first calculated, as (f ÷ e) – 1, where:

e = the Closing Value of the Index as of the day before the beginning of the Segment Term; and
f = the Closing Value of the Index as of the day before the end of the Segment Term.

**Participation Rate –** This is the percentage of the Index Growth Rate that is used in calculating the Segment Indexed Interest Rate. The Guaranteed Minimum Participation Rate is shown above. We may declare a higher Participation Rate.

**Growth Cap –** This is the maximum total interest rate for a Segment over the Segment Term, including both the Cumulative Minimum Segment Guaranteed Interest Rate and the Segment Indexed Interest Rate. The Guaranteed Minimum Growth Cap is shown above. We may declare a higher Growth Cap.

**Cumulative Minimum Segment Guaranteed Interest Rate –** The Cumulative Minimum Segment Guaranteed Interest Rate is the Minimum Segment Guaranteed Interest Rate compounded annually for the number of years of the Segment Term.

**POLICY SPECIFICATIONS**

**Segment Guaranteed Interest Rate –** The Segment Guaranteed Interest Rate is the Cumulative Minimum Segment Guaranteed Interest Rate multiplied by the Performance Factor and then converted to an annual rate using compound interest for the number of years of the Segment Term. The Segment Guaranteed Interest Rate is then used to calculate the Segment Guaranteed Interest Credit.

**Performance Factor –** This is the factor used to determine the final Segment Indexed Interest and Segment Guaranteed Interest Rate. The Guaranteed Minimum Performance Factor is shown above. We may declare a higher Performance Factor. Certain policy charges may be used in determining the Performance Factor.

**Product –** Refers to the product provided by this Policy.

The S&P 500 Index is a product of S&P Dow Jones Indices LLC ("SPDJI"), and has been licensed for use by Pacific Life Life Insurance Company ("Pacific Life"). Standard & Poor's®, S&P® and S&P 500® are registered trademarks of Standard & Poor's Financial Services LLC ("S&P"); Dow Jones® is a registered trademark of Dow Jones Trademark Holdings LLC ("Dow Jones"); and these trademarks have been licensed for use by SPDJI and sublicensed for certain purposes by Pacific Life. Pacific Life's Product(s) are not sponsored, endorsed, sold or promoted by SPDJI, Dow Jones, S&P, any of their respective affiliates (collectively, "S&P Dow Jones Indices"). S&P Dow Jones Indices makes no representation or warranty, express or implied, to the owners of the Pacific Life's Product(s) or any member of the public regarding the advisability of investing in securities generally or in Pacific Life's Product(s) particularly or the ability of the S&P 500 Index to track general market performance. S&P Dow Jones Indices' only relationship to Pacific Life with respect to the S&P 500 Index is the licensing of the Index and certain trademarks, service marks and/or trade names of S&P Dow Jones Indices or its licensors. The S&P 500 Index is determined, composed and calculated by S&P Dow Jones Indices without regard to Pacific Life or the Pacific Life's Product(s). S&P Dow Jones Indices have no obligation to take the needs of Pacific Life or the owners of Pacific Life's Product(s) into consideration in determining, composing or calculating the S&P 500 Index. S&P Dow Jones Indices is not responsible for and has not participated in the determination of the prices, and amount of Pacific Life's Product(s) or the timing of the issuance or sale of Pacific Life's Product(s) or in the determination or calculation of the equation by which Pacific Life's Product(s) is to be converted into cash, surrendered or redeemed, as the case may be. S&P Dow Jones Indices has no obligation or liability in connection with the administration, marketing or trading of Pacific Life's Product(s). There is no assurance that investment products based on the S&P 500 Index will accurately track index performance or provide positive investment returns. S&P Dow Jones Indices LLC is not an investment advisor. Inclusion of a security within an index is not a recommendation by S&P Dow Jones Indices to buy, sell, or hold such security, nor is it considered to be investment advice. Notwithstanding the foregoing, CME Group Inc. and its affiliates may independently issue and/or sponsor financial products unrelated to Pacific Life's Product(s) currently being issued by Pacific Life, but which may be similar to and competitive with Pacific Life's Product(s). In addition, CME Group Inc. and its affiliates may trade financial products which are linked to the performance of the S&P 500 Index.

S&P DOW JONES INDICES DOES NOT GUARANTEE THE ADEQUACY, ACCURACY, TIMELINESS AND/OR THE COMPLETENESS OF THE S&P 500 INDEX OR ANY DATA RELATED THERETO OR ANY COMMUNICATION, INCLUDING BUT NOT LIMITED TO, ORAL OR WRITTEN COMMUNICATION (INCLUDING ELECTRONIC COMMUNICATIONS) WITH RESPECT THERETO. S&P DOW JONES INDICES SHALL NOT BE SUBJECT TO ANY DAMAGES OR LIABILITY FOR ANY ERRORS, OMISSIONS, OR DELAYS THEREIN. S&P DOW JONES INDICES MAKES NO EXPRESS OR IMPLIED WARRANTIES, AND EXPRESSLY DISCLAIMS ALL WARRANTIES, OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE OR AS TO RESULTS TO BE OBTAINED BY PACIFIC LIFE, OWNERS OF THE PACIFIC LIFE'S PRODUCTS, OR ANY OTHER PERSON OR ENTITY FROM THE USE OF THE S&P 500 INDEX OR WITH RESPECT TO ANY DATA RELATED THERETO. WITHOUT LIMITING ANY OF THE FOREGOING, IN NO EVENT WHATSOEVER SHALL S&P DOW JONES INDICES BE LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE, OR

**POLICY SPECIFICATIONS**

CONSEQUENTIAL DAMAGES INCLUDING BUT NOT LIMITED TO, LOSS OF PROFITS, TRADING LOSSES, LOST TIME OR GOODWILL, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, WHETHER IN CONTRACT, TORT, STRICT LIABILITY, OR OTHERWISE. THERE ARE NO THIRD PARTY BENEFICIARIES OF ANY AGREEMENTS OR ARRANGEMENTS BETWEEN S&P DOW JONES INDICES AND PACIFIC LIFE, OTHER THAN THE LICENSORS OF S&P DOW JONES INDICES.

**POLICY SPECIFICATIONS**

**5 YEAR INDEXED ACCOUNT 2**

**Indexed Account Factors**

Segment Term: 5 Years
Minimum Segment Guaranteed Interest Rate: 0.00%
Cumulative Minimum Segment Guaranteed Interest Rate: 0.00%
Guaranteed Minimum Participation Rate: 105% for the Segment Term
Guaranteed Minimum Growth Cap: 15% for the Segment Term
Guaranteed Minimum Performance Factor: 1.00 for the Segment Term

**Overview –** This describes the Indexed Account Factors and method used in calculating Segment Indexed Interest for each Segment of this Indexed Account. The Indexed Account Factors used in determining the credited rate from the index are not guaranteed and can be changed by us for future segments, subject to the guarantees in the policy, and any such changes can affect the return. Also, see Indexed Accounts.

**Index –** The Index is the S&P 500® Index, excluding dividends. If the S&P 500® Index is discontinued, or if we are unable to use it for reasons beyond our control, we will substitute a successor index of our choosing subject to approval by the Interstate Insurance Product Regulation Commission (IIPRC). In such case, we will notify you and any assignee of record of the change at their last known address.

**Segment Indexed Interest –** At Segment Maturity, Segment Indexed Interest will be credited to the Segment and is equal to the Segment Indexed Interest Rate multiplied by the average of all Segment Monthly Balances over the entire Segment Term. That amount will then be multiplied by the Performance Factor to determine the final Segment Indexed Interest applied.

**Segment Monthly Balance –** The Segment Monthly Balance is, as of the end of any Segment Month, the amount initially transferred to the Segment on the Segment Date minus all Segment Deductions, excluding any interest that may have been credited to the Segment.

**Segment Indexed Interest Rate –** The Segment Indexed Interest Rate reflects any growth in the Index multiplied by the Participation Rate, subject to the Growth Cap, that exceeds the Cumulative Minimum Segment Guaranteed Interest Rate. The Segment Indexed Interest Rate is equal to [the lesser of (a x b) and c] - d, such result being not less than zero, where:

a = Index Growth Rate
b = Participation Rate
c = Growth Cap
d = Cumulative Minimum Segment Guaranteed Interest Rate

**Index Growth Rate –** In calculating the Segment Indexed Interest, the Index Growth Rate for that Segment Term is first calculated, as (f ÷ e) – 1, where:

e = the Closing Value of the Index as of the day before the beginning of the Segment Term; and
f = the average Closing Value of the Index as of the day before the end of the last twelve Segment Months of the Segment Term.

**Participation Rate –** This is the percentage of the Index Growth Rate that is used in calculating the Segment Indexed Interest Rate. The Guaranteed Minimum Participation Rate is shown above. We may declare a higher Participation Rate.

**Growth Cap –** This is the maximum total interest rate for a Segment over the Segment Term, including both the Cumulative Minimum Segment Guaranteed Interest Rate and the Segment Indexed Interest Rate. The Guaranteed Minimum Growth Cap is shown above. We may declare a higher Growth Cap.

**POLICY SPECIFICATIONS**

**Cumulative Minimum Segment Guaranteed Interest Rate –** The Cumulative Minimum Segment Guaranteed Interest Rate is the Minimum Segment Guaranteed Interest Rate compounded annually for the number of years of the Segment Term.

**Segment Guaranteed Interest Rate –** The Segment Guaranteed Interest Rate is the Cumulative Minimum Segment Guaranteed Interest Rate multiplied by the Performance Factor and then converted to an annual rate using compound interest for the number of years of the Segment Term. The Segment Guaranteed Interest Rate is then used to calculate the Segment Guaranteed Interest Credit.

**Performance Factor –** This is the factor used to determine the final Segment Indexed Interest and Segment Guaranteed Interest Rate. The Guaranteed Minimum Performance Factor is shown above. We may declare a higher Performance Factor. Certain policy charges may be used in determining the Performance Factor.

**Product –** Refers to the product provided by this Policy.

The S&P 500 Index is a product of S&P Dow Jones Indices LLC ("SPDJI"), and has been licensed for use by Pacific Life Life Insurance Company ("Pacific Life"). Standard & Poor's®, S&P® and S&P 500® are registered trademarks of Standard & Poor's Financial Services LLC ("S&P"); Dow Jones® is a registered trademark of Dow Jones Trademark Holdings LLC ("Dow Jones"); and these trademarks have been licensed for use by SPDJI and sublicensed for certain purposes by Pacific Life. Pacific Life's Product(s) are not sponsored, endorsed, sold or promoted by SPDJI, Dow Jones, S&P, any of their respective affiliates (collectively, "S&P Dow Jones Indices"). S&P Dow Jones Indices makes no representation or warranty, express or implied, to the owners of the Pacific Life's Product(s) or any member of the public regarding the advisability of investing in securities generally or in Pacific Life's Product(s) particularly or the ability of the S&P 500 Index to track general market performance. S&P Dow Jones Indices' only relationship to Pacific Life with respect to the S&P 500 Index is the licensing of the Index and certain trademarks, service marks and/or trade names of S&P Dow Jones Indices or its licensors. The S&P 500 Index is determined, composed and calculated by S&P Dow Jones Indices without regard to Pacific Life or the Pacific Life's Product(s). S&P Dow Jones Indices have no obligation to take the needs of Pacific Life or the owners of Pacific Life's Product(s) into consideration in determining, composing or calculating the S&P 500 Index. S&P Dow Jones Indices is not responsible for and has not participated in the determination of the prices, and amount of Pacific Life's Product(s) or the timing of the issuance or sale of Pacific Life's Product(s) or in the determination or calculation of the equation by which Pacific Life's Product(s) is to be converted into cash, surrendered or redeemed, as the case may be. S&P Dow Jones Indices has no obligation or liability in connection with the administration, marketing or trading of Pacific Life's Product(s). There is no assurance that investment products based on the S&P 500 Index will accurately track index performance or provide positive investment returns. S&P Dow Jones Indices LLC is not an investment advisor. Inclusion of a security within an index is not a recommendation by S&P Dow Jones Indices to buy, sell, or hold such security, nor is it considered to be investment advice. Notwithstanding the foregoing, CME Group Inc. and its affiliates may independently issue and/or sponsor financial products unrelated to Pacific Life's Product(s) currently being issued by Pacific Life, but which may be similar to and competitive with Pacific Life's Product(s). In addition, CME Group Inc. and its affiliates may trade financial products which are linked to the performance of the S&P 500 Index.

S&P DOW JONES INDICES DOES NOT GUARANTEE THE ADEQUACY, ACCURACY, TIMELINESS AND/OR THE COMPLETENESS OF THE S&P 500 INDEX OR ANY DATA RELATED THERETO OR ANY COMMUNICATION, INCLUDING BUT NOT LIMITED TO, ORAL OR WRITTEN COMMUNICATION (INCLUDING ELECTRONIC COMMUNICATIONS) WITH RESPECT THERETO. S&P DOW JONES INDICES SHALL NOT BE SUBJECT TO ANY DAMAGES OR LIABILITY FOR ANY ERRORS, OMISSIONS, OR DELAYS THEREIN. S&P DOW JONES INDICES MAKES NO EXPRESS OR IMPLIED

**POLICY SPECIFICATIONS**

WARRANTIES, AND EXPRESSLY DISCLAIMS ALL WARRANTIES, OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE OR AS TO RESULTS TO BE OBTAINED BY PACIFIC LIFE, OWNERS OF THE PACIFIC LIFE'S PRODUCTS, OR ANY OTHER PERSON OR ENTITY FROM THE USE OF THE S&P 500 INDEX OR WITH RESPECT TO ANY DATA RELATED THERETO. WITHOUT LIMITING ANY OF THE FOREGOING, IN NO EVENT WHATSOEVER SHALL S&P DOW JONES INDICES BE LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES INCLUDING BUT NOT LIMITED TO, LOSS OF PROFITS, TRADING LOSSES, LOST TIME OR GOODWILL, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, WHETHER IN CONTRACT, TORT, STRICT LIABILITY, OR OTHERWISE. THERE ARE NO THIRD PARTY BENEFICIARIES OF ANY AGREEMENTS OR ARRANGEMENTS BETWEEN S&P DOW JONES INDICES AND PACIFIC LIFE, OTHER THAN THE LICENSORS OF S&P DOW JONES INDICES.

## POLICY SPECIFICATIONS

## SUMMARY DESCRIPTION

This is a flexible premium adjustable life insurance policy with an optional feature linking interest to an outside index ("Index"). Provided the policy is In Force, a death benefit is payable as described in the Policy. Premiums, net of Premium Load, are credited to an account earning a fixed rate of interest ("Fixed Account") at a rate not less than the Fixed Account Guaranteed Interest Rate shown in the Policy Specifications. Then, according to your instructions, a portion of the Fixed Account may be transferred to one or more Indexed Accounts that earn interest, based in part, on the growth rate of the Index and the Indexed Account Factors applied to the Indexed Account. A detailed explanation of how the Indexed Accounts work is contained in the Indexed Accounts sections of the Policy Specifications. Policy charges are deducted from the policy's Accumulated Value.

Diagrams are included as a general representation of how the policy works. Additional information, key definitions, and the various policy provisions are included in the contract. Please read your policy carefully. It is a legal contract between you and Pacific Life Insurance Company.

### HOW YOUR POLICY ACCUMULATED VALUE WORKS




**All Monthly Deductions, Withdrawals and Standard Policy Loans from the Accumulated Value are taken as described in **Account Deduction Method**.

## DEFINITIONS

In this section, we define certain terms used throughout this Policy. Other terms may be defined in other parts of the Policy. Defined terms are usually capitalized to provide emphasis.

**Accounts –** consist of the Fixed Account (see **Accumulated Value**) and the Indexed Accounts (see **Indexed Accounts**), each of which may be referred to as an Account.

**Account Additions –** will increase the Fixed Account Value and the Indexed Account Value under the Policy (see Accumulated Value), as described in Account Addition Method. An Account Addition is any of the Account Addition Factors shown in the Policy Specifications.

**Account Deductions –** will reduce the Fixed Account Value and the Indexed Account Value under the Policy (see Accumulated Value), as described in Account Deduction Method. An Account Deduction is any of the Account Deduction Factors shown in the Policy Specifications.

**Accumulated Value –** The Accumulated Value is calculated as described in the Accumulated Value section.

**Administrative Office –** is the office that administers your Policy. The mailing address of the Administrative Office at the time you applied for this Policy is shown in the heading of the Application. If the address changes, we will send you written notice of the new address.

**Age –** means the age as of the Insured's birthday nearest to the Policy Date, increased by the number of complete policy years elapsed.

**Application –** consists of the application for this Policy, including any Certificate of Health, Statement of Good Health and Insurability, amendments, and endorsements, supplements, approved policy change requests and any application for reinstatement or increase in benefits.

**Basic Face Amount –** is the sum of the Face Amounts of all Basic Life Coverage Layers on the Insured. The Face Amount of each initial Basic Life Coverage is shown in the Policy Specifications.

**Basic Life Coverage –** is insurance coverage on the Insured provided by this Policy as shown in the Policy Specifications and any related Supplemental Schedule of Coverage. Certain riders may provide life insurance coverage, but such amounts are not included in the Basic Life Coverage.

**Basic Life Coverage Layer –** is a layer of insurance coverage on the Insured under this policy. There may be one or more Basic Life Coverage Layers created at issue. Additionally, each increase in Basic Face Amount will comprise a new Basic Life Coverage Layer. Each Basic Life Coverage Layer has its own Face Amount, Risk Class, Coverage Layer Date, and set of charges. The Face Amount, Risk Class, Coverage Layer Date and set of charges for each initial Basic Life Coverage Layer are shown in the Policy Specifications. The Face Amount, Risk Class, Coverage Layer Date and set of charges for any Basic Life Coverage Layer added at a later time will be shown in a Supplemental Schedule of Coverage sent to you at that time.

**Business Day –** is a day when both we and the New York Stock Exchange are open for business.

**Class –** (i) is considered in determining Policy Charges, interest credited, features of the Indexed Accounts, and certain limitations on Policy features and benefits; and (ii) depends on a number of factors, including (but not limited to) the Death Benefit, Basic and Total Face Amount, Coverage Layer, Policy Date, Policy duration, premiums paid, source of premium, Policy ownership structure, underwriting type, the Insured's Age and Risk Class, requested or scheduled increases in, or additions of, Coverage Layers, and the presence and attributes of Policy features and benefits and optional riders.

**Code –** is the U.S. Internal Revenue Code of 1986, as amended.

**Coverage Layer –** is a Basic Life Coverage Layer or a layer of insurance coverage on the Insured under an optional rider.

**Coverage Layer Date –** is the date that a particular Coverage Layer is effective. Coverage Layer months, years and anniversaries are measured from this date. The Coverage Layer Date for each initial Coverage Layer is the Policy Date as shown in the Policy Specifications.

**Evidence of Insurability –** is information, including medical information, satisfactory to us that is used to determine insurability and the Insured's Risk Class, subject to our approval and issue limits.

**Face Amount –** is the Face Amount of life insurance coverage for each Coverage Layer as shown in the Policy Specifications and any related Supplemental Schedule of Coverage. The Face Amount is subject to increase or decrease as provided elsewhere in this Policy.

**Free Look Period –** The Free Look Period is the number of days in which you have the right to return your Policy as specified in the Free Look Right on the cover of your Policy.

**In Force –** means a Policy is in effect and provides a Death Benefit on the Insured.

**Insured –** is the person insured under this Policy, as shown in the Policy Specifications.

**Monthly Deduction End Date –** is shown in the Policy Specifications and is the date when Monthly Deductions no longer modify the Accumulated Value.

**Monthly Payment Date –** is the same day each month as the Policy Date and is the date on which certain Policy Charges are deducted from the Accumulated Value. The first Monthly Payment Date is the Policy Date.

**Net Accumulated Value –** is the Accumulated Value less any Policy Debt.

**Net Amount at Risk –** is the difference between the Death Benefit and the Accumulated Value.

**Net Premium –** is the premium we receive reduced by any applicable Premium Load.

**Owner, you, or your –** refers to the Owner of this Policy, as shown in the Policy Specifications at the time of issue or in the Title Change Confirmation if ownership is changed after issue.

**Policy Date –** is shown in the Policy Specifications and means the date the Policy and associated riders become effective. Policy and rider months, quarters, years and anniversaries are measured from this date.

**Policy Debt –** is the amount necessary to repay the Policy loan in full and is equal to the Loan Account plus any accrued Loan Interest Charge. The Policy Debt reduces any amount otherwise payable under the Policy.

**Policy Specifications –** is a section of the Policy that shows information specific to your Policy.

**Risk Class –** is used in determining Policy Charges and is determined by us during the underwriting process for each Coverage Layer. Risk Class depends on the Insured's gender classification, health, tobacco use, and other factors. The gender classification of the Insured on this Policy will be either male, female or unisex and is shown in the Policy Specifications. The Risk Class of the Insured for each

initial Coverage Layer is shown in the Policy Specifications. The Risk Class of the Insured for any additional Coverage Layer will be shown in a Supplemental Schedule of Coverage sent to you at that time. Risk Class may also be referred to as Risk Classification.

**Supplemental Schedule of Coverage –** is the written notice we will provide to you at your last known address reflecting certain changes made to your Policy after the Policy Date. A Supplemental Schedule of Coverage is an endorsement to your Policy and becomes part of the contract as described in the Entire Contract provision.

**Total Face Amount –** is the sum of the Basic Face Amount and the Face Amounts of any riders providing life insurance coverage on the Insured, unless specifically excluded. The Total Face Amount is used in determining the Death Benefit under this Policy and the initial Total Face Amount is shown in the Policy Specifications or subsequent Supplemental Schedule of Coverage.

**We, our, ours,** and **us –** refer to Pacific Life Insurance Company (PLIC).

**Written Request –** is your signed request in writing, or on a form we provide, and received by us at our Administrative Office, containing information we need to act on the request.

## DEATH BENEFIT

**When the Policy is In Force –** This Policy is In Force as of the Policy Date, subject to your acceptance of the delivered Policy and payment of the initial premium. The Policy remains In Force until the earliest of any of the following:

- Surrender, as described in the Surrender and Withdrawal of Values provision;
- Lapse, as described in the Policy Lapse and Reinstatement section; or
- The death of the Insured.

Coverage under this Policy is subject to any changes we have made to the Policy at your request, and may include increases or decreases in Total Face Amount, as described in later sections of this Policy.

**Death Benefit –** This Policy provides a Death Benefit on the death of the Insured while this Policy is In Force. This section describes how the Death Benefit is calculated. The Death Benefit is the larger of either:

- The Death Benefit calculated under the Death Benefit Option in effect; or
- The Minimum Death Benefit specified below, according to the Death Benefit Qualification Test that applies to your Policy.

The Death Benefit under this Policy is subject to any increase required to qualify the Policy as Life Insurance (see Tax Qualification as Life Insurance), or to prevent this Policy from being classified as a MEC (see Modified Endowment Contract Tax Status).

**Minimum Death Benefit –** The Minimum Death Benefit will be determined based on the Death Benefit Qualification Test for the Policy and at any time will be no less than the minimum amount we determine to be required for this Policy to qualify as a life insurance contract under the Code.

**Death Benefit Options –** You elected the initial Death Benefit Option in the Application. Descriptions of all the Available Death Benefit Options on this Policy and the initial Death Benefit Option in Effect are shown in the Policy Specifications. Some changes in Death Benefit Option are allowed as described in Change of Death Benefit Option below.

**Death Benefit Qualification Test –** In order for your Policy to qualify as a life insurance contract under the Code, it must at all relevant times satisfy one of two Death Benefit Qualification Tests. The Policy provides a Minimum Death Benefit amount, as needed, for the Policy to qualify under either of the Tests.

Unless you elected otherwise in the Application, the Death Benefit Qualification Test that is specified for this Policy is the Guideline Premium Test. The Death Benefit Qualification Test that this Policy is designed to satisfy appears in the Policy Specifications. You may not change your Policy's specified Death Benefit Qualification Test without our written consent. The two Death Benefit Qualification Tests and the Minimum Death Benefit amounts applicable to each are explained in this subsection.

1. **Cash Value Accumulation Test –** If this test applies to your Policy, the Minimum Death Benefit will be no less than the greater of the minimum amount we determine to be required under the Code or 101% of the Accumulated Value.

2. **Guideline Premium Test –** If this test applies to your Policy, the Minimum Death Benefit will be no less than the Accumulated Value multiplied by the Death Benefit Percentage for the Age of the Insured as shown in the following table.

| Age | Death Benefit Percentage | Age | Death Benefit Percentage | Age | Death Benefit Percentage | Age | Death Benefit Percentage |
|---|---|---|---|---|---|---|---|
| 0-40 | 250% | 50 | 185% | 60 | 130% | 70 | 115% |
| 41 | 243 | 51 | 178 | 61 | 128 | 71 | 113 |
| 42 | 236 | 52 | 171 | 62 | 126 | 72 | 111 |
| 43 | 229 | 53 | 164 | 63 | 124 | 73 | 109 |
| 44 | 222 | 54 | 157 | 64 | 122 | 74 | 107 |
| 45 | 215 | 55 | 150 | 65 | 120 | 75-90 | 105 |
| 46 | 209 | 56 | 146 | 66 | 119 | 91 | 104 |
| 47 | 203 | 57 | 142 | 67 | 118 | 92 | 103 |
| 48 | 197 | 58 | 138 | 68 | 117 | 93 | 102 |
| 49 | 191 | 59 | 134 | 69 | 116 | Over 93 | 101 |

**Change of Death Benefit Option –** The Death Benefit Option may be changed as shown in the Policy Specifications, upon Written Request no more than once per Policy year. The Total Face Amount will be adjusted, if necessary, so that the Death Benefit immediately after the change of Death Benefit Option will be equal to the Death Benefit immediately before the change. The change will be effective on the Monthly Payment Date on or next following the day we receive your Written Request at our Administrative Office. Any such Death Benefit Option change will be shown in a Supplemental Schedule of Coverage that we will send to you at the time of the change.

Unless you specify otherwise by Written Request, any request for a Death Benefit Option change will not take effect if the requested change would cause the Policy to be classified as a Modified Endowment Contract under the Code.

If the Guideline Premium Test applies to this Policy, then Change of Death Benefit Option requests will be subject to the Guideline Premium Limit as defined in the Code. This may result in one or more refunds of premiums or required distributions of Accumulated Value in order to maintain compliance with such limit, in accordance with the Tax Qualification as Life Insurance section of this Policy. Such request will not be allowed to the extent we determine that any resulting Guideline Premium limit would cause an amount in excess of the Net Cash Surrender Value to be distributed from the Policy.

**Death Benefit Proceeds –** The Death Benefit Proceeds (“Proceeds”) are the actual amount payable if the Insured dies while this Policy is In Force. The Proceeds are equal to the Death Benefit, as of the date of death, less any Policy Debt and less any Monthly Deductions that may be due and unpaid if death occurs during a Grace Period.

We will pay the Proceeds within two months after we receive, at our Administrative Office all of the following:

- Satisfactory evidence of the Insured's death, such as a certified copy of the death certificate for the Insured or other lawful evidence providing equivalent information.
- Proof of the claimant's legal interest in the proceeds.

- Sufficient evidence that any legal impediments to payment of Proceeds that depend on parties other than us have been resolved. Legal impediments to payment include, but are not limited to (a) the establishment of guardianships and conservatorships; (b) the appointment and qualification of trustees, executors and administrators; (c) submission of information required to satisfy state and federal reporting requirements; and (d) conflicting claims.

Proceeds paid are subject to the conditions and adjustments defined in other Policy provisions, such as General Provisions, withdrawals, Policy loans, and Timing of Payments. We will pay interest on the Proceeds from the date of death at a rate not less than the Minimum Annual Interest Rate for Funds Left on Deposit, shown in your Policy Specifications. If payment of Proceeds is delayed more than 31 calendar days after we receive the above requirements needed to pay the claim, we will pay Death Benefit Proceeds Additional Interest annually, at the rate shown in the Policy Specifications beginning with the 31st calendar day referenced above. Proceeds are paid as a lump sum unless you choose another payment method, as described in the Income Benefits section.

**Basic Face Amount Increase –** You may submit an Application to increase the Basic Face Amount by adding a new Basic Life Coverage Layer. Your Application must include Evidence of Insurability and is subject to our approval. The effective date of the increased Basic Face Amount will be the first Monthly Payment Date on or next following the date all required conditions are met or any other Monthly Payment Date you request and we approve. Certain riders may restrict your ability to request unscheduled increases in Coverage Layers. Increases may be allowed more than once per policy year; however we reserve the right to limit Basic Face Amount increases to one per policy year and the right to charge a fee to evaluate insurability, not to exceed the amount shown in the Policy Specifications, for each evaluation.

Upon approval of any such increase, we will send you a Supplemental Schedule of Coverage, which will include the following information:

- The increased Face Amount and the effective date of the increase;
- The Risk Class for the increase;
- The Maximum Monthly Cost of Insurance Rates applicable to the increase;
- The Maximum Monthly Coverage Charge for the increase;
- If the Guideline Premium Test is used, the Policy's new Guideline Premiums; and
- The Maximum Surrender Charge Factors for the new Coverage Layer.

**Other Face Amount Increases –** An increase in the Total Face Amount may arise when you request a change in Death Benefit Options. In this case, we will increase the Face Amount of the most recently issued Coverage Layer. If there are rider and Basic Life Coverage Layers with the same Coverage Layer Date, we will increase the rider Face Amount first. Certain riders may restrict your ability to request unscheduled increases in Coverage Layers.

**Face Amount Decrease –** You may request a decrease in the Total Face Amount of the Policy by providing a Written Request. A decrease in Total Face Amount is subject to each of these limits:

- Only one requested decrease per Policy year is allowed.
- A decrease during the first Policy year is not allowed.
- The Basic Face Amount remaining after a decrease must be at least equal to the Minimum Basic Face Amount Following Decrease shown in the Policy Specifications.

The effective date of the decreased Face Amount will be the first Monthly Payment Date on or next following the date we approved your Written Request.

Unless and until you specify otherwise by Written Request, any request for a decrease in Total Face Amount will not take effect if the requested change would cause the Policy to be classified as a Modified Endowment Contract under the Code in accordance with the Modified Endowment Contract Tax Status section of this Policy. We recommend you consult a qualified tax advisor before requesting a decrease in Total Face Amount of Coverage Layers as described below. Upon approval of any decrease, we will send you a Supplemental Schedule of Coverage to reflect the decrease.

The request for a decrease in the Total Face Amount will be subject to the Guideline Premium Limit (if specified for your Policy) as defined in the Code. This may result in one or more refunds of premiums or required distributions of Accumulated Value in order to maintain compliance with such limit, in accordance with the Tax Qualification as Life Insurance section of this Policy. Such request will not be allowed to the extent we determine that any resulting Guideline Premium limit would cause an amount in excess of the Net Cash Surrender Value to be distributed from the Policy.

**Processing of Face Amount Decreases –** Any reduction in the Total Face Amount, whether by Written Request or due to a withdrawal or change in Death Benefit Option, will affect the Total Face Amount by reducing the Face Amount of Coverage Layers as described below.

Coverage Layers are reduced or eliminated based on Coverage Layer Date, in order from the latest to the earliest. If more than one Coverage Layer has the same Coverage Layer Date, we will first reduce or eliminate the Face Amount of any rider Coverage Layer, and then the Face Amount of any Basic Life Coverage Layer.

Face Amount decreases that are a result of an acceleration of the Death Benefit through certain riders, may result in a Basic Face Amount below the Minimum Basic Face Amount Following Decrease.

**Policy Change Limit –** We reserve the right to require Evidence of Insurability for any Policy change that would result in an increase in Net Amount at Risk and, if the Evidence of Insurability is inconsistent with our underwriting rules, we may limit or refuse the Policy change.

**Change in Benefits –** Under the Guideline Premium Test or the Cash Value Accumulation Test, whichever is specified for your Policy, any change in Policy or rider benefits or certain other factors may require an adjustment to the Policy's tax qualification limits.

## PREMIUMS

**Premiums –** The initial premium is payable either at our Administrative Office or to an independent producer before we can place your Policy In Force. At your request, we will give you a premium receipt signed by one of our officers. Additional premiums are optional and are payable at any time at our Administrative Office. We will consider any premium paid after the initial premium, whether delivered to an independent producer or otherwise, to be “received” when it is delivered to our Administrative Office. Except for the initial premium, we bear no responsibility for any premium unless it has been received by us. Premiums may be paid at any time before the Monthly Deduction End Date, subject to the premium limits below. Any payment we receive from you while you have a loan will be first considered a loan repayment, unless you tell us by Written Request it is a premium payment.

**Planned Premium –** The Planned Premium is the amount of premium you have told us you intend to pay and is shown in the Policy Specifications. We will send you Planned Premium Reminder Notices for as long as premiums can be paid. You may change the Planned Premium by Written Request. Payment of the Planned Premium does not guarantee that the Policy will continue In Force.

**Premium Processing –** We deduct the applicable Premium Load(s) at the time we receive the premium payment. Then the resulting Net Premium will be applied to the Fixed Account. Subject to the Automatic Transfers provision, we will thereafter process a transfer to the Indexed Accounts. See the Indexed Accounts section for details.

**Premium Load –** The Premium Load is equal to the premium paid, categorized by Premium Type, multiplied by the applicable Premium Load Rate. The Premium Load Rate we use may vary depending on a number of factors, including Class, Premium Type, the number of years the policy is In Force and source and amount of premium. Such rate will not exceed, and may be less than, the Maximum Premium Load Rates shown in the Policy Specifications.

**Premium Type –** Premium Type is used to determine the applicable Premium Load for each premium payment. Each premium payment is categorized as one or, if applicable, more than one of the Premium Types described in the Policy Specifications.

**Premium Limitation –** We reserve the right to require Evidence of Insurability for any premium payment that would result in an increase in the Net Amount at Risk. If such Evidence of Insurability is not satisfactory, we may limit or refuse the premium payment, unless it is necessary to keep the Policy In Force.

**Guideline Premium Limit –** This subsection applies only if the Guideline Premium Test is the Death Benefit Qualification Test specified in the Policy Specifications. In order for this Policy to qualify as a life insurance contract under Section 7702 of the Code, the sum of the premiums paid less a portion of any withdrawals, as specified in the Code, may not exceed the Guideline Premium Limit, which is the greater of:

- The Guideline Single Premium; or
- The sum of the annual Guideline Level Premiums to the earlier of the date of payment or the Insured's Age 100.

The Guideline Premiums are shown in the Policy Specifications. The Guideline Premiums may change whenever there is a change in the Total Face Amount of insurance, whether scheduled or otherwise, or certain other Policy benefits or factors. Any such Guideline Premium change will be shown in a Supplemental Schedule of Coverage that we will send to you at the time of the change. The Guideline Premiums are used to determine the premium limits beyond which this Policy would fail to qualify as a life insurance contract under the Code. Payment of the Guideline Premiums does not guarantee that the Policy will never lapse and additional premiums may be necessary to prevent the Policy from lapsing in the future.

The Guideline Premiums are determined by the rules that apply to this Policy as set forth in the Code. The Guideline Premiums will be adjusted to conform to any changes in the Code. To the extent that a premium payment would exceed such limits, we will refund the excess payment to you in accordance with the Tax Qualification as Life Insurance section of this Policy, provided that we may not refuse any premium payment necessary to keep this Policy In Force. Further, we reserve the right to make distributions to you from the Policy to the extent we deem necessary to continue to classify this Policy as a life insurance contract under the Code, in accordance with the Tax Qualification as Life Insurance section of this Policy.

**Modified Endowment Contract Premium Limit –** In order that this Policy not be classified as a Modified Endowment Contract under Section 7702A of the Code, the sum of premiums paid less a portion of any withdrawals may not exceed the 7-Pay limit as defined in the Code. The 7-Pay limit is the cumulative sum of the 7-Pay Premiums during the applicable 7-Pay testing period. In the event that a premium payment would cause the 7-Pay limit to be exceeded, we will refund the excess payment to you, unless you have provided a Written Request in which you accept your Policy being classified as a Modified Endowment Contract and indicate that we may accept such payments and apply them to the Policy, in accordance with the Modified Endowment Contract Tax Status section of this Policy. Payment of the 7-Pay Premium does not guarantee that the policy will never lapse and additional premium may be necessary to prevent the policy from lapsing in the future.

The 7-Pay Premium may change whenever there is a change in the Total Face Amount of insurance or in other certain Policy benefits or factors. The 7-Pay Premiums are determined according to the rules applicable to this Policy set forth in the Code. The 7-Pay Premium will be adjusted to conform to any changes in the Code. To the extent that a premium payment would cause such limits to be exceeded, we will refund the excess payment to you in accordance with the Modified Endowment Contract Tax Status section of this Policy. Further, as indicated in that section, we will increase the Death Benefit to the extent we deem necessary to continue to classify this Policy as a non-Modified Endowment Contract under the Code.

## ACCUMULATED VALUE

**Accumulated Value –** The Accumulated Value equals the sum of:

- The Fixed Account Value; plus
- The Indexed Account Value; plus
- The Loan Account Value.

At our discretion, on a non-guaranteed basis, we may credit the Accumulated Value with additional credits no less frequently than annually. Once credited, these additional amounts are nonforfeitable except indirectly due to any Surrender Charge. Any such amounts will be credited as described in Account Addition Method.

**Fixed Account Value –** The value of the Fixed Account as of the Policy Date is equal to the initial Net Premium modified by the first Monthly Deduction. On any day following the Policy Date, the value of the Fixed Account is equal to:

- The value of the Fixed Account as of the prior day;
- Plus interest earned on such amount since the prior day;
- Plus the amount of any applicable Account Additions to the Fixed Account since the prior day;
- Plus the amount of any transfer from the Indexed Accounts since the prior day (such transfer is allowed only at Segment Maturity);
- Less reduction for benefits paid since the prior day as described in certain riders attached to this Policy;
- Less the amount of any applicable Account Deductions from the Fixed Account since the prior day;
- Less the amount of any transfer from the Fixed Account since the prior day (such transfers include transfers to the Indexed Accounts to create a new Segment and transfers to the Loan Account to secure any Policy loan).

We credit interest on a daily basis using a 365-day year at an annual rate not less than the Fixed Account Guaranteed Interest Rate shown in the Policy Specifications.

**Indexed Account Value –** See the Growth of Segment Value during the Segment Term section.

**Loan Account Value –** See the Standard Policy Loans section.

**Account Addition Method –** The Account Addition Method describes the order and proportion that Account Additions will be applied to the Accumulated Value, and is shown in the Policy Specifications.

**Account Deduction Method –** The Account Deduction Method describes the order and proportion that Account Deductions will be taken from the Accumulated Value, and is shown in the Policy Specifications.

## INDEXED ACCOUNTS

**Indexed Accounts –** You may allocate all or a portion of your Policy's Accumulated Value to one or more policy accounts, each referred to as an "Indexed Account", for which values will vary over time based, in part, on the change in value of an external index ("Index"). The Indexed Accounts available as of the Policy Date, as well as how credits based on the Index are calculated, are shown in the Policy Specifications. We reserve the right to add additional Indexed Accounts or to cease offering one or more of the Indexed Accounts at any time. In such case, we will notify you of the change at your last known address.

**Closing Value –** By Closing Value of the Index, we mean the value of the Index as of the close of the New York Stock Exchange, which is usually 4:00 p.m. Eastern time. If an index is traded on an exchange other than the New York Stock Exchange, we will use that exchange's closing value. If no Closing Value is published for a given day, we will use the Closing Value for the next day for which the Closing Value is published. In calculating the change in value of the Index, we use the Closing Value of the Index.

**Substitution of Indexes –** We reserve the right for any particular Indexed Account to substitute one or more Indexes for any reason, including if an Index is discontinued or no longer published. In such case, prior to the change, we will notify you, and any assignee of record at the respective last known addresses. Any such substitution is subject to approval by the Interstate Insurance Product Regulation Commission (IIPRC).

## SEGMENT OVERVIEW

**Segments –** Your Policy's value in an Indexed Account is divided into Segments. Each Segment represents a transfer of Policy value from the Fixed Account to an Indexed Account.

Segments are credited with interest and comprise a portion of the Policy's Accumulated Value. This is a summary of how Segments work:

- <u>Segment Creation</u> – A new Segment is created when there is a transfer to an Indexed Account. The Segment will continue until the end of the Segment Term.
- <u>Segment Value Change</u> – Over the Segment Term, the Segment will be credited with the Segment Guaranteed Interest and will be reduced by Segment Deductions.
- <u>Segment Deductions</u> – Over the Segment Term, money may be transferred out of the Segments for Account Deductions.
- <u>Segment Indexed Interest</u> – Based on the performance of the Index, additional interest may be credited to the Segment at the end of the Segment Term.
- <u>Segment Maturity</u> – At the end of a Segment Term, the Segment Value is either transferred to a new Indexed Account Segment, or to the Fixed Account.

## SEGMENT CREATION AND TRANSFERS

**Segment Creation –** A new Segment is created when there is a transfer to an Indexed Account. The date of the transfer is called the Segment Start Date or Segment Date. Segment Months and Segment Years are measured from this date. Once a Segment is created, the Indexed Account Factors will not change for that Segment during the Segment Term, as described in the Policy Specifications.

**Transfer Dates –** Transfer Dates are the dates as of which transfers into the Indexed Account may occur. The Transfer Dates as of the issue of the policy are shown in the Policy Specifications. We reserve the right to change the Transfer Dates and to limit transfers into the Indexed Account, but these will occur not less frequently than once per calendar quarter. There are two types of Transfers: Automatic Transfers and Transfers by Written Request.

**Automatic Transfers –** Automatic Transfers will be based on your latest instructions on file with us. There are two types of transfer instructions that result in Automatic Transfers.

1. Payment Instructions: These are your instructions to us to transfer any Account Addition from the Fixed Account to the Indexed Account. The amount transferred to the Indexed Account can never exceed the value in the Fixed Account at the time of the transfer. If you have given us no instructions or if your Policy is in a Lockout Period (see Lockout Period), then no transfer to the Indexed Account will occur.

2. Reallocation Instructions: At the end of the Segment Term, if a Segment has a Segment Value other than Segment Guaranteed Interest and Segment Indexed Interest, the Segment Value can be

reallocated to any Account.

**Transfers by Written Request –** Transfers by Written Request consist of:

- Your Written Request to transfer to an Indexed Account on a Transfer Date; and
- Your Written Request to transfer a particular Segment to the Fixed Account at Segment Maturity.

**Cut-Off Date –** To be effective on a given Transfer Date, each of the following must be received at our Administrative Office by the Cut-Off Date shown in the Policy Specifications:

- Any instructions for Automatic Transfers,
- Any instructions for Transfers by Written Request, and
- Any premium payment or loan repayment intended to result in a transfer to an Indexed Account.

**Order of Processing Transfers –** Transfers among the Accounts on a given Transfer Date will be processed in the following order:

- First, any transfer to the Fixed Account of a Segment at Segment Maturity will occur;
- Then, any transfer from the Fixed Account will occur.

## GROWTH OF SEGMENT VALUE DURING THE SEGMENT TERM

**Segment Term and Segment Maturity –** The Segment Term is the total length of time that a particular Segment can exist. The Segment Term begins on the Segment Date and ends at Segment Maturity. On Segment Maturity, we calculate any Segment Indexed Interest and credit it to the Segment (see Segment Indexed Interest).

**Indexed Account Value –** Your Policy's value in an Indexed Account is equal to the sum of the Segment Values for all Segments in the Indexed Account.

**Segment Value –** The Segment Value on the Segment Date is equal to the amount transferred to the Indexed Account at such time. At any later date, the Segment Value is equal to:

- The Segment Value as of the prior day;
- Plus the Segment Guaranteed Interest since the prior day;
- Minus any Segment Deductions since the prior day;
- Plus, at Segment Maturity only, any Segment Indexed Interest credited.

**Segment Guaranteed Interest Credit –** We credit interest on a daily basis to each Segment from the Segment Date to Segment Maturity, using a 365-day year, at an annual rate equal to the Segment Guaranteed Interest Rate shown in the Policy Specifications. The amount of such interest is called the Segment Guaranteed Interest Credit ("Segment Guaranteed Interest").

**Segment Deductions –** Within each Indexed Account, deductions are made from all Segments as described in the Account Deduction Method. For each Segment, the deduction is taken first from the Segment Monthly Balance and then from the Segment Guaranteed Interest.

**Lockout Period –** This is a 12 month period of time during which no transfers from the Fixed Account to the Indexed Accounts will be allowed. Reallocation of Segment Maturity Value to an Indexed Account is allowed during the Lockout Period. A Lockout Period will begin any time there is a deduction from an Indexed Account as a result of a loan or withdrawal, unless stated otherwise.

## SEGMENT MATURITY VALUE AND REALLOCATION

**Segment Indexed Interest Credit –** At Segment Maturity, the Segment Indexed Interest Credit (Segment Indexed Interest) is calculated, as described in the Policy Specifications, and credited to the Segment, resulting in the **Segment Maturity Value**. Upon a policy termination, no Segment Indexed Interest is credited to the Indexed Account Value for any Segment that has not yet reached the Segment Maturity Date. A Segment will not be reinstated upon reinstatement of the Policy.

**Segment Maturity Value –** At Segment Maturity the maturing Segment ends and the Segment Maturity Value is reallocated, according to your instructions on file with us, in any of the Accounts, except that if the Segment Maturity Value consists only of the Segment Guaranteed Interest and the Segment Indexed Interest, we will transfer such value into the Fixed Account. If you reallocate any portion of the Segment Maturity Value in an Indexed Account, a new Segment will be created at that time.

## POLICY CHARGES

**Monthly Deduction –** The Monthly Deduction provides coverage for the Policy month following the Monthly Payment Date, and is equal to the sum of the following items:

- The Cost of Insurance Charge;
- The Administrative Charge;
- The Coverage Charge;
- Rider or benefit charges, if any.

The result of each Monthly Deduction will either be an Account Addition or an Account Deduction.

The maximum for each such charge is described below or in the rider or benefit forms. We may charge less than such maximum charge. Any lesser charge will apply uniformly to all members of the same Class. The charges, including the Cost of Insurance Charge, can be adjusted by us in our sole and exclusive discretion and such adjustment can be based on our experience factors such as investment earnings, mortality, persistency, taxes, and expenses, but will not exceed the maximums as shown in the Policy Specifications. We may profit from such charges and may use those profits for any lawful purpose such as the payment of distribution and administrative expenses. There are no Monthly Deductions on and after the Monthly Deduction End Date, which is shown in the Policy Specifications.

**Coverage Charge –** The Coverage Charge is the sum of the Coverage Charges for all Coverage Layers. The Coverage Charge for each Coverage Layer will not exceed the Coverage Charge shown in the Policy Specifications or, if applicable, the Supplemental Schedule of Coverage that is sent to you when a Coverage Layer is added. This charge is based on the Face Amount of the Coverage Layer as of its effective date. The Coverage Charge will not decrease even if the Face Amount of the associated Coverage Layer is decreased.

**Administrative Charge –** The Administrative Charge is shown in the Policy Specifications.

**Rider Charges –** Any rider or benefit charges are described in the rider or benefit forms.

**Cost of Insurance Charge –** The Cost of Insurance Charge is the sum of the Cost of Insurance Charges for all Coverage Layers. The Cost of Insurance Charge for each Coverage Layer is equal to (1) multiplied by (2), where:

(1) is the Monthly Cost of Insurance Rates per Coverage Layer divided by 1000 as shown in the Policy Specifications; and
(2) is the Death Benefit divided by the Net Amount at Risk Factor as shown in the Policy Specifications,

reduced by the Accumulated Value as of the beginning of the Policy month before the Monthly Deduction is assessed.

If there are multiple Coverage Layers, the Net Amount at Risk is allocated proportionately to each Coverage Layer according to Total Face Amount.

**Cost of Insurance Rates –** The Maximum Monthly Cost of Insurance Rates for each Coverage Layer are shown in the Policy Specifications or, if applicable, in the Supplemental Schedule of Coverage that is sent to you. We reserve the right to charge rates that are lower than the maximums shown. Any lower Cost of Insurance Rates will apply uniformly to all members of the same Class.

**Tax-Related Charges –** In addition to the charges described in this Policy, we reserve the right to make a charge for federal, state or local taxes generated by this Policy, or generated by our operations with respect to this Policy, to the extent such tax was not applicable to the Policy or our operations at the time of Policy issuance.

## POLICY LAPSE AND REINSTATEMENT

**Grace Period –** We will use the Policy's Accumulated Value, reduced by Policy Debt, to determine if the Policy will lapse. If that amount is not sufficient to provide for the Policy's Monthly Deductions, the Policy will enter the Grace Period. A Grace Period of 61 days will be allowed for the payment of sufficient loan repayment or premium to keep your Policy In Force. The Grace Period begins on the Monthly Payment Date on which the insufficiency occurred and ends 61 days thereafter. At the start of the Grace Period, we will provide a grace notice to you, any assignee of record, and any additional person designated to receive notice of lapse or termination. Sufficient Premiums that are sent to us by United States mail and postmarked within the Grace Period will be accepted. There is no penalty for paying a premium during the Grace Period. Your Policy will remain In Force during the Grace Period.

**Notification of Pending Termination for Non-Payment –** Thirty days after the Monthly Payment Date on which the insufficiency occurred, we will provide a notification to you, any assignee of record, and any additional person designated to receive notice of lapse or termination (grace notice). The notice will be provided to each person at their last known addresses by first class United States mail, postage prepaid, and will state the due date and the amount of loan repayment or premium required for your Policy to remain In Force. A minimum of the Monthly Deduction due plus three times the Monthly Deduction due when the insufficiency occurred, plus any applicable Premium Load, must be paid.

**Lapse –** If sufficient loan repayment or premium is not paid by the end of the Grace Period, a lapse will occur. If the Insured dies during the Grace Period, the Death Benefit will be equal to the Death Benefit as of the beginning of the Grace Period reduced by any overdue charges. Upon lapse, the Policy will terminate with no value. We recommend you consult a qualified tax advisor before allowing your policy to lapse.

**Reinstatement –** If it has not been surrendered, this Policy may be reinstated within three years after the end of the Grace Period. To reinstate this Policy you must provide us with all of the following:

- A written Application;
- Evidence of Insurability satisfactory to us that the Insured is insurable in the same Risk Class as when the Policy was issued;
- Sufficient premium, after reduction by any Premium Load, to cover all Monthly Deductions and Loan Interest Charges due and unpaid during the Grace Period;
- Sufficient premium, after reduction by any Premium Load, to keep the Policy In Force for three months after the date of reinstatement; and
- Sufficient premium to cover any negative Accumulated Value if there was a Policy loan or other outstanding Policy Debt at the time of lapse.

The effective date of the Policy reinstatement will be the Monthly Payment Date on or next following the

date we approve your reinstatement Application. At reinstatement each of the following applies:

- The Accumulated Value upon reinstatement will equal the Accumulated Value at the date of lapse less the Policy Debt at the time of lapse. Any negative Accumulated Value will be due in addition to sufficient premium at the time of reinstatement.
- The Maximum Surrender Charges and Policy Charges (other than Cost of Insurance Charges) for Basic Life Coverage under this Policy will resume on their schedule as of the Monthly Payment Date when lapse occurred.
- Cost of Insurance Charges will be calculated using Cost of Insurance Rates that resume their original schedule as if lapse had never occurred, reflecting the Insured's Age at reinstatement and Policy duration measured from the original Policy Date.
- If there was a Policy loan at the time of lapse, we will not reinstate the loan.

After the reinstatement premium has been applied, regular Policy processing will occur for the period of time when coverage was provided during the Grace Period. There will be no Monthly Deductions and no interest credits between the time of lapse and reinstatement.

## SURRENDER AND WITHDRAWAL OF VALUES

**Surrender –** Upon Written Request, while it is In Force, you may Surrender this Policy for its Net Cash Surrender Value on the date the Written Request is received at our Administrative Office. The Policy will terminate on the date of Surrender. The Net Cash Surrender Value on the date of Surrender will be adjusted for any Account Additions and Account Deductions made since the preceding Monthly Payment Date. This Policy may not be Surrendered during the Grace Period.

**Cash Surrender Value –** The Cash Surrender Value is the Accumulated Value less any Surrender Charge.

**Net Cash Surrender Value –** The Net Cash Surrender Value is the Cash Surrender Value less any Policy Debt.

**Surrender Charge –** If you surrender this policy, there may be a Surrender Charge deducted from the Accumulated Value.

**Determining a Surrender Charge –** The Surrender Charge Calculation, shown in the Policy Specifications will determine if a Surrender Charge will be deducted from the Accumulated Value upon surrender of a policy.

**Maximum Surrender Charge –** The Maximum Surrender Charge is the sum of the Maximum Surrender Charges on any Basic Coverage Layer that has an associated Surrender Charge. The Maximum Surrender Charge may vary with the presence of other Rider Coverage Layers. The Maximum Surrender Charge as of the beginning of each Coverage Year for each initial Coverage Layer is shown in the Policy Specifications.

If there have been decreases in the Face Amount of any Coverage Layer, including decreases due to withdrawals, the Maximum Surrender Charge for that Coverage Layer will not change as a result of the decrease. The Maximum Surrender Charge described is the guaranteed maximum charge. We may charge less than such guaranteed maximum charge. Any lesser charge will apply uniformly to all members of the same Class.

In addition, any Basic Coverage Layer representing an increase in coverage that has an associated Surrender Charge and Reduction Factor will be provided in a Supplemental Schedule of Coverage. The Maximum Surrender Charge for any such Coverage Layer will be effective as of the Coverage Layer Date and as of the beginning of each Coverage Year thereafter, and will decrease in the same manner as each initial Coverage Layer.

**Withdrawals –** Upon Written Request on or after the first Policy anniversary and until the Monthly Deduction End Date, you may withdraw a portion of the Net Cash Surrender Value of this Policy. Such withdrawal will be deducted from the Accumulated Value as an Account Deduction. There is no Surrender Charge imposed for a withdrawal, even if the Total Face Amount is reduced as a result of the withdrawal. Withdrawals will be subject to the Withdrawal Conditions shown in your Policy Specifications.

When Death Benefit Option A is In Effect, a requested withdrawal may increase the Net Amount at Risk, in which case, we will decrease the Total Face Amount by the minimum amount necessary to prevent the Net Amount at Risk from increasing as a result of the withdrawal, except:

1. During the first 15 Policy years, but only in the case of the first withdrawal of a given Policy year, the Total Face Amount will be decreased only to the extent that the withdrawal exceeds the lesser of $10,000 or 10% of the Net Cash Surrender Value, or
2. In any Policy year, but only if both:
   (a) the Death Benefit Qualification Test specified for your Policy is the Guideline Premium Test, and
   (b) the Guideline Premium Limit, as determinable at the time of the decrease in Total Face Amount, would, as a result of the current withdrawal, fail to remain greater than zero at all times prior to Age 100, we will decrease the Total Face Amount as follows:
      i. If cumulative withdrawals for the 12-month period ending on the date of the current withdrawal do not exceed 15% of the Total Face Amount, we will limit the Total Face Amount decrease so that the Guideline Premium Limit, as determinable at the time of the decrease in Total Face Amount, would remain greater than zero at all times prior to Age 100.
      ii. If cumulative withdrawals for the 12-month period ending on the date of the current withdrawal exceed 15% of the Total Face Amount, we will decrease the Total Face Amount to the extent of such excess in addition to the Total Face Amount decrease calculated per i. above on the cumulative withdrawals of 15% of the Total Face Amount.
      iii. For the purpose of the 15% test in i. and ii. above, the Total Face Amount will be the highest Total Face Amount in effect during the current policy year through the date of the withdrawal.

In any instance where both exceptions 1. and 2. above apply, we will decrease the Total Face Amount by the lesser of the two decrease amounts.

If the Insured dies after the request for a withdrawal is received by us and prior to the withdrawal being processed, the withdrawal, if allowed under this provision, will be processed and paid to the Owner, or to the Owner's estate before the Death Benefit Proceeds are determined and paid to the beneficiary.

## INCOME BENEFITS

**Income Benefits –** All or part of any Death Benefit proceeds and Net Cash Surrender Value proceeds, when due and paid, may be distributed over a period of time instead of being paid in a lump sum. If you elect to distribute the proceeds over a period of time, you may select any one, or a combination of the Income Benefit plans available, subject to our minimum amount requirements on the date of election. At the time of death, if an Income Benefit plan has not been selected, the Beneficiary may select one that is available. If the payee is not a natural person, the choice of a payment option will be subject to our approval. Prior to any payment, you may contact us to obtain information on our currently available plans.

## STANDARD POLICY LOANS

**Standard Policy Loans –** You may obtain Policy loans by Written Request after the Free Look Period, on the sole security of the Loan Account of this Policy. We recommend you consult a qualified tax advisor before requesting a Policy loan.

**Loan Account (referred to as LOAN COLLATERAL ACCOUNT in certain riders) –** When a Policy loan is taken, an amount equal to the loan will be deducted from the Fixed Account and, if necessary, from the Indexed Accounts, and transferred to the Loan Account to secure the loan.

**Loan Account Value –** The Loan Account Value is a portion of the Accumulated Value set aside to secure the Policy Debt. The Loan Account Value is equal to the Loan Account plus Loan Interest Credit.

**Loan Amount Available –** The maximum amount available for a loan on any date is equal to the Accumulated Value less:

- Three times the most recent Monthly Deduction that reduces the Accumulated Value under the Policy;
- Any Surrender Charge; and
- Any existing Policy Debt.

The amount of the loan must be at least equal to the Minimum Loan Amount, if any, shown in the Policy Specifications.

**Loan Interest Charge –** Interest will accrue daily based on the balance in the Loan Account and will be due on each Policy anniversary. Such interest is calculated using the simple interest method and is based on the balance in the Loan Account, using the Maximum Annual Loan Account Charge Interest Rate shown in your Policy Specifications. We may use a lower interest rate. The corresponding daily interest rate is equal to the annual rate divided by 365. If the Policy terminates before a Policy anniversary, the Loan Interest Charge will be due at such time.

**Loan Interest Credit –** Loan Interest Credit is based on the balance in the Loan Account, and accrues daily on a simple interest basis, using the Guaranteed Annual Loan Account Credit Interest Rate shown in the Policy Specifications. The corresponding daily interest rate is equal to the annual rate divided by 365.

**Loan Processing on Policy Anniversary –** On each Policy anniversary, the Loan Interest Charge is due. Any portion of the Loan Interest Charge that is not paid when due will be added to the Loan Account and bear interest at the same rate. Further, on each Policy anniversary we will adjust the values of the Policy Debt, Loan Account and Loan Account Value so that they are equal to each other. If the Policy Debt is greater than the Loan Account Value, which is generally the case when the Loan Interest Charge has not been fully paid, the excess of the Policy Debt over the Loan Account Value will be processed as an Account Deduction. If the Loan Account Value is greater than the Policy Debt, which is generally the case when the Loan Interest Charge has been paid, the excess will be processed as an Account Addition.

**Loan Repayment –** You may make loan repayments at any time prior to lapse of this Policy. Any Premiums we receive from you while you have a loan will be first considered a loan repayment, unless you tell us by Written Request it is a premium payment.

**Policy Debt –** The Policy Debt is the amount necessary to repay the Policy loan in full and is equal to the Loan Account plus any accrued Loan Interest Charge. The Policy Debt reduces any amount otherwise payable under the Policy.

## OWNER AND BENEFICIARY

**Owner –** The Owner of this Policy is as shown in the Policy Specifications or as later changed by Written Request. If you change the Owner, the change is effective on the date the Written Request is signed, unless otherwise specified by the Owner, subject to our receipt of it and subject to any action taken or payment made by us prior to its receipt. If there are two or more Owners, they will own this contract as joint tenants with right of survivorship, unless otherwise provided by Written Request. We recommend you consult a qualified tax advisor before requesting a change of Owner.

**Assignment –** You may assign this Policy by Written Request. An assignment must be recorded at our Administrative Office. When received, the assignment will take effect as of the date the Written Request was signed unless otherwise specified by the Owner. Any rights created by the assignment will be subject to any payments made or actions taken by us before the assignment is recorded. We will not be responsible for the validity of any assignment. We recommend you consult a qualified tax advisor before requesting an assignment.

**Beneficiary –** The beneficiary is named by you in the Application to receive the Death Benefit Proceeds. You may name one or more beneficiaries. If you name more than one beneficiary, they will share the Death Benefit Proceeds equally or as you may otherwise specify by Written Request. If you have named a contingent beneficiary, that person becomes the beneficiary if the beneficiary dies before the Insured. A beneficiary may not, on or after the Insured's death, assign, transfer or encumber any benefit payable. To the extent allowed by law, Policy benefits will not be subject to the claims of any creditor of any beneficiary.

You may make a change of beneficiary by Written Request while the Policy is In Force. Beneficiary Change Request forms are available from us. The change will take place as of the date the request is signed unless otherwise specified by the Owner. Any rights created by the change will be subject to any payments made or actions taken by us before we have received the Written Request. You may designate an irrevocable beneficiary whose rights under the Policy cannot be changed without his or her written consent.

The interest of a beneficiary who does not outlive the Insured will be divided pro-rata among the surviving beneficiaries. If no beneficiaries survive the Insured, the Death Benefit Proceeds will pass to the Owner, or the Owner's estate if the Owner does not survive the Insured. In the event of a simultaneous death of the Insured and a beneficiary such that it cannot be determined who died first, it will be assumed, unless proof to the contrary is provided, that the beneficiary died last.

## GENERAL PROVISIONS

**Entire Contract –** This Policy is a contract between you and us. This Policy, Policy Specifications and Indexed Accounts, the attached copy of the initial Application, including any supplements, amendments and endorsements to the Application, any Supplemental Schedules of Coverage, any Applications for Reinstatement, all subsequent Applications to change the Policy including change in smoking status, Risk Class, any endorsements, benefits, or riders, and all additional Policy information sections added to this Policy are the Entire Contract. Only our President, Chief Executive Officer or Secretary is authorized to change this contract or extend the time for paying premiums. Any such change must be in writing.

All statements in the Application shall, in the absence of fraud, be deemed representations and not warranties. We will not use any statement to contest this Policy or defend a claim on grounds of misrepresentation unless the statement is in an Application.

**Incontestability –** We will not contest this Policy unless there was a material misrepresentation in the Application or, when permitted by applicable state law, where the Policy was procured through fraud. If we determine that the Application contains a material misrepresentation, we will rescind the Policy and

return to you the premiums paid less any Policy loans and any withdrawals taken. No Death Benefit will be paid. After the Policy has been In Force for two years during the Insured's lifetime, this Policy cannot be contested except for failure to pay required premiums or if the Policy was procured by fraud.

If this Policy lapses and is later reinstated, we will not contest the reinstated Policy unless there was a material misrepresentation in the Application required for reinstatement, or, when permitted by applicable state law, where the Policy was procured through fraud, or for failure to pay required premiums. If we determine that such Application contains a material misrepresentation, we will rescind the reinstated Policy as of the reinstatement date and return to you the premiums paid after the reinstatement date less any Policy loans and any withdrawals taken after the reinstatement date. No Death Benefit will be paid. After the reinstated Policy has been In Force for two years during the Insured's lifetime, this Policy cannot be contested except for failure to pay required premiums or if the Policy was procured by fraud.

If there has been a change to the Policy for which we required the Insured to submit Evidence of Insurability, we will not contest such a change unless there was a material misrepresentation in the Application required for the change or, when permitted by applicable state law, where the change was procured through fraud, or for failure to pay required premiums. If we determine that such Application contains a material misrepresentation, we will rescind the Policy change and all Policy Charges made after the change will be reversed and corrected charges applied so that the Policy's Accumulated Value will be unaffected by the change. Any Death Benefits or other benefits that become payable will be determined as though the Policy change had never been requested. After the changed Policy has been In Force for two years during the Insured's lifetime, we will not contest any such change except for failure to pay required premiums or if the change was procured by fraud.

**Non-Participating –** This Policy will not share in any of our surplus earnings.

**Suicide Exclusion –** If the Insured dies by suicide, while sane or insane, within two years of the Policy Date, the Death Benefit Proceeds will be limited to an amount equal to the sum of the premiums paid, less the sum of any Policy loans and withdrawals. If this Policy has been reinstated and the Insured dies by suicide, while sane or insane, within two years of the latest reinstatement date, the Death Benefit Proceeds will be limited to an amount equal to the sum of the premiums paid less the sum of any Policy loans and withdrawals taken since such date.

If the Insured dies by suicide, while sane or insane, after two years from the Policy Date but within two years after the effective date of any increase in the Total Face Amount or if applicable, the latest reinstatement date, the Death Benefit Proceeds will be limited by all of the following adjustments:

1. Any such increase in Total Face Amount will be excluded;
2. Refund of the portion of Monthly Deductions associated with any such increase will be included; and
3. Premium Load associated with the portion of Monthly Deductions referred to in 2) above will be included.

**Misstatement –** There will be a Policy adjustment if there is a misstatement on the Application of the Insured's:

- Birth date;
- Sex. Sex does not apply to Policies issued as unisex; see the Policy Specifications to determine if this Policy was issued as unisex.

If the misstatement is discovered on or after the death of the Insured, the Death Benefit shall be the Minimum Death Benefit for the correct sex and birth date of the Insured, or if greater, a Death Benefit based on a Net Amount at Risk adjusted by the ratio of the incorrect Cost of Insurance Rate to the correct Cost of Insurance Rate. The adjusted Net Amount at Risk will result in an adjusted Death Benefit, since the Death Benefit depends on the Net Amount at Risk.

If the misstatement is discovered before the death of the Insured, we will not recalculate the

Accumulated Value, but we will use the correct sex and birth date of the Insured in calculating future Monthly Deductions.

**Maturity –** This Policy does not mature, but will continue In Force so long as the Insured is alive and the Policy has not been surrendered and lapse has not occurred.

**Monthly Deduction End Date –** Provided the Policy is still In Force, coverage will continue on and after the Monthly Deduction End Date, subject to all Policy provisions, with all of the following exceptions and clarifications:

- Monthly Deductions will cease;
- Premiums will not be accepted, except amounts required to keep the Policy In Force;
- Loans will be allowed;
- Loan repayments will be permitted;
- Loan Interest Charges and Loan Interest Credits will continue to accrue; and
- Withdrawals will not be allowed.

**Timing of Payments –** We may defer payments of any Net Cash Surrender Value, withdrawal or loan (except for loans to pay a premium on any policy issued by us) for up to six months after we receive your request. If we defer any such payment for more than 30 days after we receive your request, we will pay interest at least equal to the Fixed Account Guaranteed Interest Rate shown in the Policy Specifications.

**Annual Report –** A report will be mailed to your last known address no less frequently than annually. This report will show all of the following:

- The beginning and end dates of the reporting period;
- The Accumulated Value at the beginning and end of the reporting period;
- Amounts that have been modified the Accumulated Value by way of Account Additions and Account Deductions during the reporting period, identified by type;
- The Death Benefit at the end of the reporting period on each life covered by the Policy;
- The Net Cash Surrender Value at the end of the reporting period;
- Any Policy Debt outstanding at the end of the reporting period;
- A notice if the Net Cash Surrender Value will not be sufficient to keep the Policy In Force until the end of the next reporting period, unless further premium payments are made; and
- Any other information required by law.

**Policy Illustrations –** Upon request, we will give you a hypothetical illustration of the future benefits under this Policy based upon both guaranteed and current cost factor assumptions. Such illustrations reflect assumptions about the Policy's non-guaranteed elements and about how you will use the Policy's options. Over time the Policy's actual non-guaranteed elements, and your actual use of the Policy's options, are likely to vary from the assumptions used in such illustrations. In addition, the order in which we process requested transactions may vary between the illustration we provide and policy administration. For these reasons, actual Policy values will likely be more or less favorable than shown in such illustrations. We reserve the right to charge a fee, not to exceed the amount shown in the Illustration Conditions section of the Policy Specifications, for each illustration in excess of one per Policy year.

**Juvenile Insured –** This provision only applies if the Insured was under Age 18 on the Policy Date. Beginning when the Insured attains Age 18, you will have an opportunity to request a change to your Policy's Risk Class as compared with the Risk Class that applied prior to Age 18. This may reduce the actual Cost of Insurance Charge that is deducted from your Policy's Accumulated Value. At least 60 days prior to the Insured's Age 18, we will send to your last known address a notice of your right for a change to a different Risk Class for the Insured. In order to qualify for a changed Risk Class, you will be required to supply Evidence of Insurability satisfactory to us. In order for said Risk Class to take effect at Age 18, you must make the Written Request prior to Age 18. If you do not request to change the Risk Class for the Insured, a Risk Class of "Standard Smoker" will be assigned.

**Basis of Values –** All nonforfeiture values for this Policy will be at least equal to the minimums required by the Uniform Standards and Operating Procedures adopted by the Interstate Insurance Product Regulation Commission. A detailed statement showing how such values are determined has been filed with the Interstate Insurance Product Regulation Commission. To calculate the minimum required nonforfeiture values, the Fixed Account Guaranteed Interest Rate shown in the Policy Specifications which is a rate established by us or, if higher, the rate required by the Interstate Insurance Product Regulation Commission, and mortality rates from the Basis of Value Mortality Table shown in the Policy Specifications, are used.

Cash values available under the Policy are not less than the minimum values and benefits required by or pursuant to the NAIC Universal Life Insurance Regulation, model #585.

**Tax Qualification as Life Insurance –** This Policy is intended to qualify as a life insurance contract for federal tax purposes, and the Death Benefit under this Policy is intended to qualify for federal income tax exclusion. The provisions of this Policy, including any rider, benefit or endorsement that does not specifically override this tax qualification provision, shall be interpreted to ensure and maintain such tax qualification, despite any other provision to the contrary. At no time shall the amount of Death Benefit under this Policy ever be less than the minimum amount needed to ensure or maintain such tax qualification. If need be, the Death Benefit shall be increased retroactively and prospectively to the minimum extent necessary to accomplish that purpose. In addition, the Accumulated Value will be reduced to reflect the increased Monthly Deductions that result from such Death Benefit increase(s), starting on the date that each increase is effective. We reserve the right to amend this Policy from time to time to reflect any clarifications that may be needed or are appropriate to maintain such tax qualification or to conform the Policy provisions to any applicable changes in such tax qualification requirements, as provided in the Code or any published IRS guidance relating thereto, without consent (where allowed by law). We will send you a copy of such amendment. **As of the effective date of the filing of this Policy in the state in which it was issued for delivery, the Internal Revenue Service has not published final guidance on all aspects of the tax treatment of life insurance policies that continue coverage beyond Age 100. You should consult a qualified tax advisor, as there may be tax consequences.**

We will not accept a premium payment that would cause the Policy to fail to qualify as a life insurance contract for federal tax purposes. If at any time the premiums paid under the Policy exceed the amount allowable for such tax qualification, the excess amount, including any interest as determined under federal tax law, shall be removed from the Policy as of the date of its payment and any appropriate adjustments in the Death Benefit and/or Accumulated Value shall be made as of such date. This excess amount, including such interest, shall be refunded no later than 60 days after the end of the applicable contract year, as determined under federal tax law.

If this excess amount is not refunded by the end of such 60-day period, the Death Benefit shall be increased retroactively and prospectively to the minimum extent necessary so that at no time is the Death Benefit ever less than the minimum amount necessary to ensure or maintain such tax qualification. In addition, the Accumulated Value will be reduced to reflect any increased Monthly Deductions that result from such Death Benefit increase, starting on the date that the increase is effective.

If you request a decrease in Policy or rider benefits, it may cause a reduction in any applicable tax limits on premiums or cash values for the Policy to maintain such tax qualification. Such a reduction in these limits may require us to make one or more distributions from the Policy equal to the greatest amount by which the premiums paid or cash values for the Policy, exceed any such reduced limits, as determined under federal tax law, in order to maintain the Policy's tax qualification. If such a distribution is made, the distribution will be paid to you and the Accumulated Value will be reduced by the amount of the distribution. However, no request for a decrease in Policy or rider benefits will be allowed to the extent that we determine that the resulting reduction in such tax limits would require us to distribute more than the Net Cash Surrender Value for the Policy.

**Modified Endowment Contract Tax Status –** Unless and until you have given us a Written Request to accept a Modified Endowment Contract ("MEC") classification for your Policy, the provisions of this

Modified Endowment Contract Tax Status subsection apply to your Policy.

Under federal tax law, if the funding of a life insurance contract occurs too rapidly, it becomes a MEC and fails to qualify for certain favorable tax treatment as a result. This Policy is intended to qualify as a life insurance contract that is not a MEC for federal tax purposes. To achieve these purposes, the provisions of this Policy (including any rider or endorsement that does not specifically override this tax qualification provision) shall be interpreted to prevent this Policy from being subject to such MEC treatment, despite any other provision to the contrary. If and while the provisions of this subsection apply to your Policy, the amount of death benefit under this Policy shall never be less than the minimum amount needed to avoid such MEC treatment. We reserve the right to amend this Policy from time to time to reflect any clarifications that may be needed or are appropriate to maintain such tax qualification for non-MEC treatment or to conform the Policy provisions to any applicable changes in such tax qualification requirements, as provided in the Code or any published IRS guidance relating thereto, without consent (where allowed by law). We will send you a copy of such amendment to you at your last known address.

We will not accept a payment as premium or otherwise which would cause the Policy to become a MEC. The 7-Pay Premium, shown in the Policy Specifications, is used solely to determine the Policy's premium limits to avoid MEC treatment. Payment of one or more 7-Pay Premium amounts does not guarantee that the Policy will never lapse, and additional premiums may be necessary to prevent the Policy from lapsing in the future.

If at any time the amounts paid under the Policy exceed the limit for avoiding such MEC treatment, this excess amount, including any interest as determined under federal tax law, shall be removed from the Policy as of the date of its payment, and any appropriate adjustment in the Death Benefit and/or Accumulated Value shall be made as of such date. This excess amount, including any interest, shall be refunded no later than 60 days after the end of the applicable contract year, as determined under federal tax law.

If this excess amount is not refunded by the end of such 60-day period, the Death Benefit shall be increased retroactively and prospectively to the minimum extent necessary (e.g., to the end of any MEC 7-year test period) so that at no time is the Death Benefit ever less than the minimum amount necessary to avoid Modified Endowment Contract classification. In addition, the Accumulated Value will be reduced to reflect any increased Monthly Deductions resulting from such Death Benefit increase, starting on the date that the increase is effective.

Any request that would change the Death Benefit or any other benefit or rider under the Policy will not be processed if the change would cause the Policy to be classified as a Modified Endowment Contract. Requested changes that could cause the Policy to be classified as a Modified Endowment Contract include, but are not limited to, an elective reduction in the Total Face Amount, a Death Benefit Option change that would cause a reduction in the Total Face Amount, and a withdrawal that would cause a reduction in the Total Face Amount.

**Other Distributions of Accumulated Value –** If the Net Amount at Risk ever exceeds three times the original Total Face Amount, we reserve the right to make a distribution of Accumulated Value to make the Net Amount at Risk equal three times the original Total Face Amount. In such case, the distribution will be treated as a premium refund. Note that while such a distribution will be treated as a premium refund for certain contract purposes, normal tax rules will apply in determining the amount of such a distribution, if any, which is taxable.

We may offer a program through which periodic distributions of policy values are made. Any such program will be shown in the Policy Specifications.

**Additional Services –** While this Policy is In Force, we may, either directly or through a third party service provider, provide you with access to independent living-related resources and discounted independent living-related goods and services.

**Right to Add Benefits –** From time to time we may offer additional benefits that could be available to your Policy by rider or endorsement. To request such an additional benefit, you must submit to us a Written Request. You or the proposed Insured may be subject to new underwriting for any additional benefit requested. If an additional benefit requested is issued pursuant to this paragraph, a Supplemental Schedule of Coverage will be mailed to you.

**Change of Risk Class –** You may request a change to your Policy's Risk Class by submitting a Written Request. We may require you to submit Evidence of Insurability in order to evaluate your request. If we approve the change in Risk Class, only the Cost of Insurance Charges deducted from your Accumulated Value thereafter are affected. No other policy or rider charges will be affected.

**Effect of Additional Benefits on Policy Provisions –** Your policy may include additional benefits that were added by rider or endorsement. These rider and endorsement forms may include provisions that replace or amend provisions in this contract. **Please read this policy and all other forms carefully.**

**Compliance –** We reserve the right to make any change to the provisions of this Policy to comply with, or give you the benefit of, any federal or state statute, rule, or regulation, including but not limited to requirements for life insurance contracts under the Code or of any state. We will provide you with a copy of any such change, and file such a change with the insurance supervisory official of the state in which this Policy is issued for delivery. You have the right to refuse any such change where allowed by state law.

**Conformity with IIPRC Standards –** This contract was approved under the authority of the IIPRC and issued under the IIPRC standards. If there is any contract provision that is in conflict with any IIPRC standards applicable to this Contract when this Contract was issued, the provision is amended to conform to that standard. Any such amendment is effective on the Contract Date.

**INDEX**


Subject Page

Account Addition Method ....42
Account Additions ....35
Account Deduction Method ....42
Account Deductions ....35
Accounts ....35
Accumulated Value ....42
Accumulated Value ....35
Additional Services ....54
Administrative Charge ....45
Administrative Office ....35
Age ....35
Annual Report ....52
Application ....35
Assignment ....50
Automatic Transfers ....43
Basic Face Amount ....35
Basic Face Amount Increase ....39
Basic Life Coverage ....35
Basic Life Coverage Layer ....35
Basis of Values ....53
Beneficiary ....50
Business Day ....35
Cash Surrender Value ....47
Cash Value Accumulation Test ....38
Change in Benefits ....40
Change of Death Benefit Option ....38
Change of Risk Class ....55
Class ....35
Closing Value ....43
Code ....36
Compliance ....55
Conformity with IIPRC Standards ....55
Cost of Insurance Charge ....45
Cost of Insurance Rates ....46
Coverage Charge ....45
Coverage Layer ....36
Coverage Layer Date ....36
Cut-Off Date ....44
Death Benefit ....37
Death Benefit Options ....37
Death Benefit Proceeds ....38
Death Benefit Qualification Test ....37
Definitions ....35
Determining a Surrender Charge ....47
Effect of Additional Benefits on Policy Provisions ....55
Entire Contract ....50
Evidence of Insurability ....36
Face Amount ....36
Face Amount Decrease ....39
Fixed Account Value ....42
Free Look Period ....36

General Provisions....50
Grace Period....46
Growth of Segment Value During the Segment Term....44
Guideline Premium Limit....41
Guideline Premium Test....38
How Your Policy Accumulated Value Works....34
In Force....36
Income Benefits....48
Incontestability....50
Indexed Account Value....42
Indexed Account Value....44
Indexed Accounts....42
Insured....36
Juvenile Insured....52
Lapse....46
Loan Account....49
Loan Account Value....49
Loan Account Value....42
Loan Amount Available....49
Loan Interest Charge....49
Loan Interest Credit....49
Loan Processing on Policy Anniversary....49
Loan Repayment....49
Lockout Period....44
Maturity....52
Maximum Surrender Charge....47
Minimum Death Benefit....37
Misstatement....51
Modified Endowment Contract Premium Limit....41
Modified Endowment Contract Tax Status....53
Monthly Deduction....45
Monthly Deduction End Date....36
Monthly Deduction End Date....52
Monthly Payment Date....36
Net Accumulated Value....36
Net Amount at Risk....36
Net Cash Surrender Value....47
Net Premium....36
Non-Participating....51
Notification of Pending Termination for Non-Payment....46
Order of Processing Transfers....44
Other Distributions of Accumulated Value....54
Other Face Amount Increases....39
Owner....50
Owner and Beneficiary....50
Owner, you, or your....36
Planned Premium....40
Policy Change Limit....40
Policy Charges....45
Policy Date....36
Policy Debt....49

Policy Debt....36
Policy Illustrations....52
Policy Lapse and Reinstatment....46
Policy Specifications....36
Premium Limitation....41
Premium Load....40
Premium Processing....40
Premium Type....41
Premiums....40
Processing of Face Amount Decreases....40
Reinstatement....46
Rider Charges....45
Right to Add Benefits....55
Risk Class....36
Segment Creation....43
Segment Creation and Transfers....43
Segment Deductions....44
Segment Guaranteed Interest Credit....44
Segment Indexed Interest Credit....45
Segment Maturity Value....45
Segment Maturity Value and Reallocation....45
Segment Overview....43
Segment Term and Segment Maturity....44
Segment Value....44
Segments....43
Standard Policy Loans....48
Substitution of Indexes....43
Suicide Exclusion....51
Summary Description....34
Supplemental Schedule of Coverage....37
Surrender....47
Surrender Charge....47
Surrender and Withdrawal of Values....47
Tax Qualification as Life Insurance....53
Tax-Related Charges....46
Timing of Payments....52
Total Face Amount....37
Transfer Dates....43
Transfers by Written Request....44
We, our, ours, and us....37
When the Policy is In Force....37
Withdrawals....48
Written Request....37

## 2% INTEREST GUARANTEE ON TERMINATION RIDER

This Rider becomes a part of the policy to which it is attached ("the Policy"). All terms of the Policy that do not conflict with this Rider's terms apply to this Rider. If there is a conflict between the terms of this Rider and the terms of the policy, the terms of this Rider shall prevail.

**Rider Benefit Summary –** This Rider provides an Alternate Accumulated Value that grows at an Alternate Interest Rate of 2% on Eligible Accounts. The Alternate Accumulated Value provides the benefits described below. There is no charge for this Rider.

**Eligible Account –** The Alternate Interest Rate provided by this Rider applies only to those Accounts identified as an Eligible Account in the Policy Specifications.

We reserve the right to classify additional Accounts as an Eligible Account and to de-classify existing Accounts as an Eligible Account at any time. Additionally, the provisions in your Policy provide us the right to add additional Indexed Accounts or to cease offering one or more of the Indexed Accounts at any time. We will notify you in writing, at your last known address, of any changes to Accounts identified as Eligible Accounts, including the addition of an Indexed Account that is an Eligible Account.

The Alternate Interest Rate provided by this Rider for any additional Accounts we classify as an Eligible Account will be effective as of the date provided in the notification we send to you. If an Eligible Account is de-classified, the notification will include the date the Alternate Interest Rate will no longer be effective for that Account. Any benefit provided by this Rider while an Account is classified as an Eligible Account will remain until the Policy terminates.

## ALTERNATE ACCUMULATED VALUE

**Alternate Accumulated Value –** The Alternate Accumulated Value is a value that is used to determine the following under the Policy:

- The Death Benefit under Death Benefit Option B on the date of death;
- The Net Cash Surrender Value at the time a full surrender of the Policy is requested; and
- The time at which the Policy enters a Grace Period.

The Alternate Accumulated Value is calculated daily as follows:

- The value of the Alternate Accumulated Value as of the prior day;
- Minus Account Deductions, except those related to Standard Policy Loans;
- Plus the amount of any Net Premiums or policy loan repayment since the prior day;
- Plus an interest credit at the Alternate Interest Rate shown since the prior day.

We credit interest to the Alternate Accumulated Value on a daily basis using 365-day year at an annual rate not less than the Alternate Interest Rate.

**Alternate Interest Rate –** The Alternate Interest Rate, beginning on each Monthly Payment Date and ending on the day prior to the next Monthly Payment Date equals (a ÷ b) x 2%, where:

a = the sum of the value of all Eligible Accounts; and
b = the Policy's Accumulated Value.

On each Monthly Payment Date, the values in a. and b. above are established after the account values have been adjusted for any applicable Account Deductions and Account Additions but prior to any interest being credited.

If the Policy's Accumulated Value is less than or equal to zero, then the Alternate Interest Rate will be set to 2%.

**Net Cash Surrender Value –** We will use the higher of the Alternate Accumulated Value and the Policy's Accumulated Value. The Net Cash Surrender Value at the time full surrender of the policy is requested will be less Policy Debt and less Surrender Charges.

**Death Benefit** – We will use the higher of the Alternate Accumulated Value and the Policy's Accumulated Value in determining the Policy's Death Benefit on the date of the death. This only affects policies on which Death Benefit Option B is in effect, or those policies subject to the Minimum Death Benefit.

**Grace Period –** We will use the higher of the Alternate Accumulated Value and the Policy's Accumulated Value, each reduced by Policy Debt, to determine if the Policy will lapse. If the higher of these two values is not sufficient to provide for the Policy's Monthly Deductions, the Policy will enter the Grace Period. Upon entering the Grace Period, the terms of the Grace Period, as described in the Policy, will apply.

## GENERAL PROVISIONS OF THIS RIDER

**Effective Date –** This Rider takes effect as of the Policy Date and stays In Force unless it terminates as described in the Rider Termination section below.

**Rider Termination –** This Rider will terminate if the Policy lapses or terminates. You may not terminate this Rider by Written Request.

**Reinstatement –** If the policy is reinstated as described in the Policy, then this Rider will also be reinstated. At such time, the Accumulated Value will be reinstated as described in the Policy, and the Alternate Accumulated Value will be reinstated as of the beginning of the Grace Period, after subtracting any Policy Debt.

**Effect of Additional Benefits on Rider Provisions –** Your policy may include additional benefits that were added by rider or endorsement. These rider and endorsement forms may include provisions that replace or amend provisions in this contract. **Please read your entire policy, including all riders and other forms carefully.**

**Conformity with IIPRC Standards –** This contract was approved under the authority of the IIPRC and issued under the IIPRC standards. If there is any contract provision that is in conflict with any IIPRC standards applicable to this Contract when this Contract was issued, the provision is amended to conform to that standard. Any such amendment is effective on the Contract Date.

North Carolina Department of Insurance: (855) 408-1212

Signed for Pacific Life Insurance Company,

James T. Morris

Chairman and Chief Executive Officer

Jane M. Guon

Secretary

www.PacificLife.com (800) 347-7787

# ACCELERATED DEATH BENEFIT RIDER FOR TERMINAL ILLNESS

This rider ("Rider") becomes a part of the policy to which it is attached ("Policy") as of the Policy Date and covers only the person named as the Insured in the Policy Specifications. The Application and premium put this Rider In Force as of the Policy Date. A copy of the Application is attached. If the Rider is effective after the Policy Date, the effective date for this Rider will be shown on the Policy Specifications. If the provisions of this Rider and those of the Policy do not agree, the provisions of this Rider will apply. Please read it carefully.

This Rider provides prepayment to the Owner of a portion of the Death Benefit when written proof that the Insured has been certified as a Terminally Ill Individual and the conditions described in this Rider are met. The Terminal Illness Benefit represents a portion of the Death Benefit after applying a Reduction Factor as described in this Rider and is subject to the minimum and maximum amounts as described herein.

**Disclosure – Accelerated death benefits for terminally ill individuals may affect eligibility for, or amounts of, other benefits provided by federal, state, or local government. Payment of an accelerated death benefit provided by this Rider are intended to qualify as death benefits under section 101(g) of the Internal Revenue Code. The federal, state, or local tax consequences resulting from payment of an accelerated death benefit will depend on your specific facts and circumstances. Consequently, advice and guidance should be obtained from a personal tax advisor prior to the receipt of any accelerated death benefit payments.**

**Payment of an Accelerated Death Benefit under this rider will reduce the death benefit, cost of insurance charges, and other values under the policy. Further, the premium limitations and death benefits required for the Policy to qualify as a life insurance policy or avoid being classified as a Modified Endowment Contract under the Code will also be affected.**

North Carolina Department of Insurance: (855) 408-1212

Signed for Pacific Life Insurance Company,

James T. Morris

Chairman and Chief Executive Officer

Jane M. Guon

Secretary

www.PacificLife.com (800) 347-7787

## DEFINITIONS

**Terminally Ill Individual –** means the Insured has been certified in writing by a Licensed Physician to have a medical condition that is reasonably expected to result in a life expectancy of 12 months or less from the date of Written Request.

**Coverage Layer –** is a Basic Life Coverage Layer, a Basic Coverage Layer, or a layer of insurance coverage on the Insured under an optional rider.

**Death Benefit –** means the Death Benefit, as defined in the Policy.

**Eligible Coverage –** is the portion of the policy Face Amount that will qualify for determining the Terminal Illness Benefit under this Rider. Eligible Coverage is listed in the Policy Specifications under the title of this rider.

Eligible Coverage does not include:

- Any insurance under the Policy on the life of someone other than the Insured; and
- Any other rider on the Insured other than explicitly listed under Eligible Coverage above.

**Insured –** The person covered under the base Policy to which this Rider is attached. This term does not include other persons covered under other riders which are part of the Policy.

**Licensed Physician –** means a physician licensed and residing in the United States. A Licensed Physician does not include yourself or anyone who is an immediate family member.

**Total Face Amount –** means the Total Face Amount, as defined in the Policy.

## BENEFIT ELIGIBILITY

**Eligibility –** In order to receive this benefit, the following conditions must be satisfied:

1. This benefit is only available to the Owner of this Policy upon Written Request on a form provided by us while the policy is In Force. We shall provide such claim form within 15 days of your request for an accelerated death benefit payment. If the claim form is not furnished within 15 days, it is considered that you have complied with the claim form requirements if you provide written proof covering the occurrence, the character and the extent of the occurrence for which claim is made.
2. We must receive written consent of any assignee of record named under the Policy or any irrevocable beneficiary named under the Policy.
3. This benefit is not available if the law requires the benefit to meet the claims of creditors, whether in bankruptcy or otherwise; or a government agency requires the benefit in order to apply for, obtain, or keep a government benefit or entitlement.
4. Accelerated Death Benefit Rider for Chronic Illness will terminate once a Written Request for Terminal Illness Benefit has been received by us under this Rider.
5. This benefit is not available for a Terminally Ill Individual whose illness results from attempted suicide, or intentionally self-inflicted injury.
6. Terminal Illness Benefits are payable immediately upon receipt of due written certification from a Licensed Physician that the Insured is a Terminally Ill Individual and meets the conditions of this Rider. Certification must include clinical, radiological or laboratory evidence of the condition that supports the certification of the licensed physician. We reserve the right to obtain at any time an additional opinion of the Insured's condition from a Licensed Physician at our expense. Should this opinion differ from that of the Insured's Licensed Physician, eligibility for benefits will be determined by a third Licensed Physician who is mutually acceptable to the Owner and us.

## ACCELERATED DEATH BENEFIT VALUES

**Terminal Illness Benefit –** If the Insured qualifies as a Terminally Ill Individual and meets the Eligibility conditions of this Rider, you may submit a Written Request for a Terminal Illness Benefit on a form provided by us. The request should include the amount of Terminal Illness Benefit requested.

At the time of benefit payment, we will do the following:

- Limit the Terminal Illness Benefit to the lesser of 75% of the Eligible Coverage or $250,000, as applicable;
- Calculate the Terminal Illness Benefit Proceeds; and
- Reduce Policy and Rider values as described herein.

If your policy has an accidental death rider, the accidental death benefit amount is not eligible for acceleration under the terms of this Rider.

**Terminal Illness Benefit Proceeds –** This is the amount payable upon request under this Rider. It is a one-time payment and is equal to the Terminal Illness Benefit multiplied by a) and reduced by b) and c) where:

a) The Terminal Illness Reduction Factor,
b) The Policy Debt multiplied by the Acceleration Percentage; and
c) A processing charge, not to exceed $100.

We will refund the amounts discussed in a) and c) above should the death of the Insured occur within 30 days of the Terminal Illness Benefit Proceeds.

The Terminal Illness Benefit will be paid as a lump sum. The minimum Terminal Illness Benefit is the lesser of $500 or 25% of your policy face amount. We place no restrictions on how you use any Terminal Illness Benefit Proceeds that may be paid under this rider. WE WILL PAY THE TERMINAL ILLNESS BENEFIT PROCEEDS ONLY ONCE PER POLICY.

**Terminal Illness Reduction Factor –** A Terminal Illness Reduction Factor will be calculated for the Terminal Illness Benefit and is equal to (a) divided by (b) where:

a) is equal to 1; and
b) is equal to 1 plus the Accelerated Death Benefit Interest Rate.

**To Whom We Will Pay Benefits –** All benefits will be payable to the Owner or the Owner's estate while the Insured is still living, unless otherwise assigned or designated by the Owner, subject to any required acknowledgment of concurrence for payout. We will be discharged to the extent of any such payment made in good faith.

**Death of the Insured –** If the Insured dies and we receive written notice of the death at our Administrative Office before Terminal Illness Benefit is paid, no such payment will be made. However, any payment made by us prior to receiving written notice of the Insured's death at our Administrative Office is effective and will reduce the Death Benefit Proceeds payable under the Policy.

Death Benefit Proceeds are paid according to the terms of the Policy to which this Rider is attached. Any Chronic Illness Benefit Proceeds, plus any required interest, paid by us after the date of death will reduce the Death Benefit Proceeds.

**Accelerated Death Benefit Interest Rate –** The Accelerated Death Benefit Interest Rate will not exceed the greater of:

a) the current yield on the ninety-day Treasury bill; or
b) the maximum fixed annual rate of 8% in arrears or a variable rate determined in accordance with the NAIC Model Policy Loan Interest Rate Bill, model #590.

## EFFECT ON THE POLICY

**Acceleration Percentage –** Based on the payment made we will adjust the policy's values by the Acceleration Percentage.

The Acceleration Percentage is calculated as (a divided by b), where:
a = the Terminal Illness Benefit
b = the Eligible Coverage on the date of the benefit payment.

**Effect on Policy Values –** The following values are reduced by an amount equal to the value below multiplied by the Acceleration Percentage:

1. The Total Face Amount;
2. The Accumulated Value of your Policy;
3. If your policy has a Death Benefit calculated as the Face Amount plus premiums less withdrawals (referred to as "Option C"), the sum of the premiums less withdrawals; and
4. If your policy has a Death Benefit calculated as the Face Amount plus premiums less withdrawals (referred to as "Option C"), the Option C Death Benefit Limit.

Upon payment of the Accelerated Benefit, the Policy will be modified by an endorsement, which shall include a statement of the effect of the benefit payment on the Accumulated Value, Death Benefit, Premium, Cost of Insurance Charges and Policy Loans (including loans to pay premiums).

**Reduction to Total Face Amount –** The Total Face Amount under your policy is reduced on the date of the benefit payment by an amount equal to the Acceleration Percentage multiplied by the Total Face Amount prior to the benefit payment. For each Coverage Layer under the Policy or any term insurance on the Insured, the Face Amount of each layer will be reduced according to the terms of the Policy and Rider.

**Reduction to Death Benefit –** The Policy Death Benefit will continue to be calculated according to the terms of the Policy to which this Rider is attached.

**Reduction to Accumulated Value –** The Accumulated Value under your policy will continue to be calculated according to the terms of the Policy to which this Rider is attached.

**Reduction to Fixed and Indexed Account Values –** The sum of the Policy's Fixed and Indexed Account Values is reduced on the date of the benefit payment by an amount equal to the Acceleration Percentage multiplied by the Fixed and Indexed Account Values prior to the benefit payment.

The reduction to the values in each of the Fixed and Indexed Account Values will be treated using the same calculation rules as described for an Account Deduction under the terms of your policy.

**Reduction to Cost of Insurance Charges –** Cost of Insurance Charges will continue to be calculated according to the terms of the Policy to which this rider is attached, but will be based upon the reduced Policy values following the benefit payment.

**Policy Loans –** Policy Loan availability will continue according to the terms of the Policy to which this Rider is attached.

**Reduction to Policy Loans –** Policy Loans (also referred to as "Standard Policy Loans") are reduced by benefit payments under this Rider. Policy Debt, Loan Account (also referred to as "Loan Collateral Account"), and the Loan Account Value are all reduced on the date of the benefit payment by an amount equal to their respective values prior to the benefit payment multiplied by the Acceleration Percentage.

If your policy has an alternate loan under an alternate loan rider, alternate loan values are reduced by benefit payments under this Rider. Alternate Policy Debt, Alternate Loan and Alternate Loan Interest Charged are all reduced on the date of the benefit payment by an amount equal to their respective values prior to the benefit payment multiplied by the Acceleration Percentage.

**Reduction to Alternate Accumulated Value –** If your policy has an Alternate Accumulated Value, the Alternate Accumulated Value is reduced on the date of the benefit payment by an amount equal to the Acceleration Percentage multiplied by the Alternate Accumulated Value prior to the benefit payment.

**Reduction to Cash Surrender Value and Net Cash Surrender Value –** The Policy Cash Surrender Value and Net Cash Surrender Value after the benefit payment will be calculated according to terms of the contract.

**Coordination with Other Payments –** If there is another transaction requested on the same day as a Terminal Illness Benefit Proceeds is paid under the Policy, the Terminal Illness Benefit Proceeds will be processed after the other transactions.

**Terminal Illness Benefit Payment Notice –** Prior to or concurrent with the election to effect the Terminal Illness Benefit, we will send the Owner a statement demonstrating the effect of the Terminal Illness Benefit on the Accumulated Value, Death Benefit, Premium, Cost of Insurance Charges, and Policy loans (including loans to pay premiums).

## EFFECT ON THE RIDERS

In General, optional rider benefits under this policy will continue to remain In Force subject to the terms and conditions of the policy and riders unless otherwise stated. Charges for optional riders will be calculated according to the terms of the rider form, and may be affected by the reduction in benefits and policy values.

**Effect on Term Insurance on the Insured –** If your policy has term insurance, Face Amounts for any term insurance rider on the Insured will be reduced as the Total Face Amount is reduced (see "Reduction to Total Face Amount" above). If the term insurance rider contains any provision for a termination credit, the termination credit basis is reduced on the date of the benefit payment by an amount equal to the value of the termination credit basis prior to the benefit payment multiplied by the Acceleration Percentage. If the term insurance rider contains a Limited Return of Premiums provision, the return of premium provision would terminate when a benefit payment is made under this Rider.

**Effect on No Lapse Guarantee Riders using a No Lapse Guarantee Value –** If your policy has a no lapse guarantee rider using a no lapse guarantee value, the No-Lapse Guarantee Value is reduced on the date of the benefit payment by an amount equal to the No-Lapse Guarantee Value prior to the benefit payment multiplied by the Acceleration Percentage. The amount of reduction will be processed against the No-Lapse Guarantee Value according to the terms of the No Lapse Guarantee Rider.

**Effect on No Lapse Guarantee Riders using No Lapse Guarantee Premiums –** If your policy has a no lapse guarantee rider using no lapse guarantee premiums, the No Lapse Premium is reduced on the date of the benefit payment by an amount equal to the No Lapse Premium prior to the benefit payment multiplied by the Acceleration Percentage. The No Lapse Credit is reduced on the date of the benefit payment by an amount equal to the No Lapse Credit prior to the benefit payment multiplied by the Acceleration Percentage.

**Effect on Overloan Protection Rider –** If your policy has an overloan protection rider, it will terminate at the time the Terminal Illness Benefit Proceeds are paid.

## GENERAL PROVISIONS

**Incontestability –** This Rider will follow the Incontestability provision of the Policy.

**Reinstatement –** If the Policy is reinstated, this Rider may be reinstated on the same terms.

**Premium Requirement –** There is no separate premium required for this benefit. However, this Rider does not eliminate the need to pay premiums to keep the Policy In Force. The Owner must continue to pay any premiums necessary to avoid policy lapse as described in the Policy or in any applicable riders attached to the Policy.

**Effective Dates –** This Rider is effective on the Policy Date unless otherwise stated. It will terminate on the earlier of:

1. Your Written Request;
2. The date the Terminal Illness Benefit Proceeds are paid;
3. Exercise of an overloan protection rider;
4. The date the Rider or the Policy terminates; or
5. The date we receive notice of the death of the Insured.

Termination of this Rider shall not prejudice the payment of benefits for any claim that occurred while the Rider was In Force.

# ALTERNATE LOAN RIDER

This rider ("Rider") becomes a part of the policy to which it is attached ("Policy"). All terms of the Policy that do not conflict with this Rider's terms apply to the Rider. Definitions used in this rider are interspersed in the Rider provisions below.

**Rider Benefit Summary –** Beginning on the Alternate Loan Availability Date shown in the Policy Specifications, this Rider provides an alternate loan type ("Alternate Loan"), in addition to the existing loan type under the Policy ("Standard Loan"). If a loan is available under the Policy, you may take the loan as a Standard Loan, an Alternate Loan, or a combination of Standard Loan and Alternate Loan, subject to the terms of the Policy and this Rider. Unless otherwise described in this Rider, the Policy's provisions describing the Standard Loan continue to apply.

**Designated Account(s) –** As of the Policy Date, the Designated Account(s) are shown in the Policy Specifications. How much you may borrow as an Alternate Loan is determined, in part, by the Policy's value in the Designated Accounts. We may change the Designated Account(s) after the Policy Date by written notice to you.

**Alternate Loan –** Each day after an Alternate Loan is taken, it is increased by any new Alternate Loan, and decreased by any Alternate Loan repayment, and on each policy anniversary, the Alternate Loan is increased by any accrued Alternate Loan interest then due and not paid in cash. Unlike a Standard Loan, with an Alternate Loan there is no deduction from the Fixed and Indexed Accounts to establish an associated Loan Collateral Account and no related interest crediting to a Loan Collateral Account.

**Alternate Policy Debt –** The Alternate Policy Debt is the sum of the Alternate Loans and related accrued loan interest (see Alternate Loan Interest Charged provision below).

**Policy Debt –** Policy Debt is equal to Alternate Policy Debt plus Standard Policy Debt, the latter which is equal to the Standard Loans plus related accrued loan interest.

**Alternate Loan Availability –** You may not take an Alternate Loan less than $200. The maximum Alternate Loan that you may receive as a payout is equal to the lesser of the maximum Standard Loan available under the policy and A – B – C – D – E, where:

A = the Accumulated Value in the Designated Account(s)
B = interest on the Accumulated Value in the Designated Account(s) calculated to the end of the current policy year at the Alternate Loan interest rate
C = loan interest on any existing Standard Policy Debt calculated to the end of the current policy year
D = the most recent Monthly Deduction multiplied by the number of Monthly Payment Dates remaining in the current policy year
E = any existing Alternate Policy Debt

**Alternate Loan Interest Charged –** Alternate Loan interest accrues daily at an annual rate no greater than 7.5% and is due at the end of each policy year. Any such interest not paid when due is treated as a new Alternate Loan on that date and will bear interest at the rate then in effect.

**Loan Repayment –** Unless you specify otherwise by Written Request, any loan repayment will be used to repay Alternate Policy Debt before Standard Policy Debt.

**Exchanging Loan Types –** Subject to the limitations described in this rider, you may exchange all, or a portion, of Policy Debt from either loan type to the other by Written Request, subject to the minimum loan amount available. Such an exchange will be treated as a repayment of one loan type followed by a new loan of the other loan type. Both the Net Cash Surrender Value and the Policy Debt will retain their same values immediately before and after the exchange.

**Exchange from Alternate Policy Debt to Standard Policy Debt –** An exchange from Alternate Policy Debt to Standard Policy Debt can be done only once in any twelve-month period.

The exchange will increase the Loan Collateral Account for the Standard Loan ("Standard Loan Collateral Account") by the exchanged Policy Debt and such amount will decrease the Fixed Account and possibly the Indexed Accounts. The decrease will be processed in the same manner as a deduction from the Accumulated Value. If this results in a decrease to the Indexed Accumulated Value, then your Policy will enter a Lockout Period.

**Exchange from Standard Policy Debt to Alternate Policy Debt –** An exchange from Standard Policy Debt to Alternate Policy Debt can be done only once in any twelve-month period and only if the Policy is not in a Lockout Period. The exchange will be effective on the Transfer Date after your Written Request as long as we receive your Written Request at our Administrative Office by 4:00 pm Eastern time of the associated Cut-Off Date; otherwise the exchange will be effective on the next Transfer Date after the one that follows your Written Request.

The exchange will decrease the Standard Policy Debt by the exchanged Policy Debt, and will create a new Alternate Loan for the same amount. The Standard Loan Collateral Account will be decreased by the lesser of the exchanged Policy Debt and the value of the Standard Loan Collateral Account, and such lesser amount will be used to create a new Segment in the Designated Account(s) that you identify.

**Segment Maturity Value Reallocation –** If there is an Alternate Loan on your Policy, reallocation of Segment Maturity Value in the Designated Account(s) at Segment Maturity will be affected. In such case, the Segment Maturity Value of the Designated Account(s) will be reallocated to the same Designated Account unless such Segment Maturity Value plus the value of other Segments in the Designated Account(s) exceeds A + B + C, where:

A = the Alternate Policy Debt
B = loan interest calculated to the end of the current policy year
C = the most recent Monthly Deduction multiplied by the number of Monthly Payment Dates remaining in the current policy year

In such case, only the excess described immediately above will be reallocated according to your Segment Maturity Value reallocation instructions on file with us and the rest of the Segment Maturity Value will be reallocated to the same Designated Account in which the Segment had been invested.

**Effect of Alternate Loan on Other Riders –** If the Policy has an Overloan Protection Rider attached to it, and if you exercise the Overloan Protection Rider, any existing Alternate Policy Debt will be exchanged to Standard Policy Debt, and this Rider will terminate.

**Reinstatement –** If the Policy is reinstated, any Standard and Alternate Policy Debt will not be reinstated.

Signed for **Pacific Life Insurance Company**,

James T. Morris
Chairman and Chief Executive Officer

Jane M. Guon
Secretary

# CONVERSION RIDER

This rider ("Rider") becomes a part of the policy to which it is attached ("Policy"). If the Rider is effective after the Policy Date, the effective date for this Rider will be shown on the Policy Specifications. If the provisions of this Rider and those of the Policy do not agree, the provisions of this Rider will apply. Please read it carefully.

**Rider Benefit Summary –** This Rider allows you to convert any Eligible Coverage, as defined below, at any time during the Conversion Policy Year shown in the Policy Specifications.

**New Policy Conditions –** The new policy may be issued on any other policy of permanent life insurance that we make available at that time for such conversions. The new policy will be issued at the same Risk Class as this Policy, provided that if this Policy has one or more increases in Face Amount with one or more Risk Classes that are different from the Risk Class for the original Face Amount, the new policy will be issued at the Risk Class of the most recent Coverage Layer of this Policy. If the Risk Class of this Policy is not available on the policy to which you choose to convert, the new policy will be issued at the risk class for which the Insured would have qualified based on the application for this Policy, or for the latest increase in Face Amount, if any.

If additional riders are in effect under this Policy on the date of the conversion, you may choose similar riders, if available, for the new policy, and subject to our rules in effect at the time of the conversion. We reserve the right to offer new riders and require any Evidence of Insurability as needed for those additional riders.

The incontestability and suicide exclusion provisions in the new policy are effective from the issue date of this Policy. If the new policy includes additional coverage for which Evidence of Insurability was given, new incontestability and suicide exclusion provisions apply to that coverage as of its effective date.

The Face Amount of the new policy will be equal to the current amount of Eligible Coverage for this Policy, subject to any minimum requirement for the new policy. There will be no Surrender Charge imposed on this Policy, and no Evidence of Insurability will be required for the conversion. Upon exercise of the conversion right of this Rider, this Policy will end.

The effective date of the new policy will be the same as the date this Policy terminates. Prior to issue, the initial premium for the new policy, if any, will be required and must be sufficient to place the new policy In Force. Premiums and charges for the new policy will be based on our rates in effect on the issue date of the new policy. The premiums and charges will be based on the Insured's Age and Risk Class as described above.

**Eligible Coverage –** is coverage of this Policy that will qualify for conversion under this Rider. Eligible Coverage is listed in the Policy Specifications under the title of this Rider.

**Eligible Coverage does not include:**

- Any insurance provided under this Policy on the life of someone other than the Insured; and
- Any other rider, term policy, or term coverage on the Insured other than explicitly listed under Eligible Coverage above.

**Insured –** As used in this Rider, the Insured means the person covered under the Basic Life Coverage of the Policy. If the Policy is a Last Survivor Policy with two persons listed as the Insureds, this term refers to the two individuals covered under the Basic Life Coverage of the Policy.

**Effective Dates –** This Rider is effective on the Policy Date unless otherwise stated. It will terminate on the earlier of:

- Your Written Request;
- The death of one Insured if the Policy is a Last Survivor Policy;
- The date the Policy ceases to be In Force.

**Consult A Qualified Tax Advisor –** It is possible that converting your Policy under this Rider could cause the Policy to become a Modified Endowment Contract, as defined in the Internal Revenue Code section 7702A. Such a result could have potential adverse tax consequences. You should consult a qualified tax advisor before any such conversion to make sure you understand how it may affect the tax you owe.

Signed for Pacific Life Insurance Company,

James T. Morris — Chairman and Chief Executive Officer

Jane M. Guon — Secretary

www.PacificLife.com (800) 347-7787

## NO-LAPSE GUARANTEE RIDER

### SOME DEFINITIONS USED IN THIS RIDER

**Guarantee Period –** is the time during which we guarantee the death benefit will remain in force if the condition for the No Lapse Guarantee to be in effect (see below) is satisfied. The Guarantee Period is shown in the Policy Specifications. The Guarantee Period begins on the Policy Date and does not re-start if coverage is added or increased.

**No Lapse Guarantee Required Premium ("No Lapse Premium") –** is an amount used during the Guarantee Period to determine the No Lapse Credit (see next section), which in turn is used to determine if the No Lapse Guarantee is in effect. The Initial Annual No Lapse Premium is shown in the Policy Specifications. The No Lapse Premium may change as described in the "Changes in the No Lapse Premium" section below.

**No Lapse Credit –** is a value used to determine if the No Lapse Guarantee is in effect. It is calculated at the beginning of each policy month during the Guarantee Period. The No Lapse Credit as of the Policy Date, which is also the first Monthly Payment Date, is equal to the premium paid less one-twelfth of the Initial Annual No Lapse Premium. On any other Monthly Payment Date, the No Lapse Credit is equal to:

- the No Lapse Credit as of the prior Monthly Payment Date multiplied by (1+i), where i = 0.327374% if the No Lapse Credit is negative, otherwise, i = the rate shown in the Policy Specifications;
- plus premiums received since the prior Monthly Payment Date;
- less withdrawals taken since the prior Monthly Payment Date; and
- less one-twelfth of the then current No Lapse Premium.

**Net AV –** is the policy Accumulated Value less policy debt.

### PROVISIONS OF THIS RIDER

**Changes In No Lapse Premium –** Any increase in face amount, scheduled or not, or addition or increase in coverage will cause an increase in the No Lapse Premium. A decrease in Face Amount or in other coverage will not cause a decrease in the No Lapse Premium. If the No Lapse Premium changes as a result of a coverage change, we will provide you with the changed No Lapse Premium.

**Condition For The No Lapse Guarantee To Be In Effect –** The condition for the No Lapse Guarantee to be in effect is that the No Lapse Credit less policy debt is equal to or greater than zero. As an example, if you pay a premium at the beginning of each policy year at least equal to the then current No Lapse Premium, and if you have taken no policy loans or withdrawals, then the No Lapse Guarantee will be in effect throughout the Guarantee Period. You may also satisfy the condition for the No Lapse Guarantee to be in effect by other premium payment patterns so long as the No Lapse Credit less policy debt is greater than or equal to zero.

**Catch-Up Amount –** If the No Lapse Guarantee has become ineffective because you have not satisfied the above condition, you may bring the No Lapse Guarantee back into effect by paying the Catch-Up Amount. The Catch-Up Amount is equal to the No Lapse Credit less policy debt, if such amount is less than zero.

**No Lapse Guarantee Benefit –** If the No Lapse Guarantee is in effect, and if your policy would lapse in the absence of this rider due to insufficient Net AV to cover the Monthly Deductions due, the policy will not enter the grace period and will not lapse. Instead, the policy will continue under the No Lapse Guarantee and it will stay in force as long as you continue to meet the condition for the No Lapse Guarantee to be in effect.

**AV Pay-Off Account –** If the policy is continued under the No Lapse Guarantee, then the policy has no Net AV from which Monthly Deductions can be collected. Any such uncollected amounts are accumulated with interest at the monthly rate of 0.327374%, which is equivalent to 4% annually, and the result is stored in an account we call the AV Pay-Off Account. Any payment you make to us when the policy is continued under the No Lapse Guarantee will first be used to reduce the AV Pay-Off Account. After the AV Pay-Off Account is reduced to zero, any excess will be applied to the Accumulated Value, as described in your policy. If you want to keep your policy active at the end of the Guarantee Period, you must make a payment sufficient to reduce the AV Pay-Off Account to zero. In such case, any excess will then be applied to the Accumulated Value, as described in your policy. Any payment used to reduce the AV Pay-Off Account will be subject to the Premium Loads shown in your policy.

**Other Riders Attached To Policy At Issue –** If the policy is continued under the No Lapse Guarantee, any attached riders will continue or end according to their terms.

**Effective Date –** This rider is effective on the policy date unless otherwise stated. It will end on the earliest of:

- your Written Request;
- when the policy ends;
- if you change the Death Benefit Option from A to B;
- if you add any rider that has charges; or
- at the end of the Guarantee Period.

**General Conditions –** This rider is part of the policy to which it is attached. All terms of the policy that do not conflict with this rider's terms apply to this rider.

Signed for **Pacific Life Insurance Company**,

James T. Morris
Chairman and Chief Executive Officer

Jane M. Guon
Secretary

**PACIFIC LIFE INSURANCE COMPANY**
Life Insurance Division
P.O. Box 2030 • Omaha, NE 68103-2030
(800) 347-7787 • Fax (866) 964-4860
www.PacificLife.com

# AMENDMENT TO APPLICATION

| Producer Code | Field Office | Proposed Insured's Name | Policy Number | Policy Issue Date |
|---|---|---|---|---|
| **YAPOK** | **00180** | **BUSCH, KYLE T** | **VF53260490** | **3/13/2018** |

| Product Name | Planned Annual Premium |
|---|---|
| **Pacific Discovery Xelerator IUL** | |

Face Amount/Death Benefit

| | |
|---|---|
| **Basic Coverage Amount** | **$28,300,000.00** |
| **Total Initial Coverage** | **$28,300,000.00** |

Optional Benefits

| Type of Change | Benefit Name | Coverage Amt (if applicable) |
|---|---|---|

| Death Benefit Option | Life Insurance Qualification Test | Guaranteed Cost of Insurance Period | Special Policy Dating |
|---|---|---|---|
| | **Cash Value Accumulation Test** | | |

| Primary Policyowner | Soc. Sec. #/Tax ID # |
|---|---|
| | |

Primary Beneficiary

Remarks

Application page 1, Optional Benefits, Question #15: Policy issued without the Premier Living Benefits Rider.
Application page 2, Primary Policyowner, Question #2D: Not Applicable
Application page 5, Question #5: $38,300,000
Application page 8, Indexed Universal Life Insurance-Payment Transfers: Fixed Account- 100%
Application page 12, Signatures: Applicant signed and dated on 02/21/2018

| Proposed Insured's Name | Policy Number |
|---|---|
| **BUSCH, KYLE T** | **VF53260490** |

Variable Life Products Premium Allocation Instructions

| % | Manager & Investment Option |
|---|---|
| | **AB**-PSF Small-Cap Value |
| | **AJO**-M Large Cap Value |
| | **American Century**-VP Mid Cap Val II |
| | **Ashmore**-PSF Emerging Mkts Debt |
| | **AQR**-PSF Equity Long/Short |
| | **Barings**-PSF Inflation Strategy |
| | **BlackRock**-Basic Value V.I. Fund III |
| | **BlackRock**-Global Alloc V.I. Fund III |
| | **BlackRock**-iShares Alt Strat V.I. I |
| | **BlackRock**-iShares Dyn Alloc V.I. I |
| | **BlackRock**-iShares Dyn Fxd Inc V.I. I |
| | **BlackRock**-iShares Eq Apprec V.I. I |
| | **BlackRock**-PSF Equity Index |
| | **BlackRock**-PSF Health Sciences |
| | **BlackRock**-PSF Large-Cap Growth |
| | **BlackRock**-PSF Small-Cap Index |
| | **Boston Partners**-PSF Mid-Cap Value |
| | **Cap Research**-AFIS Asset Alloc Cl 4 |
| | **Cap Research**-AFIS Growth Cl 4 |
| | **Cap Research**-AFIS Growth-Inc Cl 4 |
| | **ClearBridge**-PSF Large-Cap Value |
| | **ClearBridge**-Var Aggr Growth Cl II |
| | **ClearBridge**-Var Mid Cap Cl II |
| | **Dreyfus**-VIF Appreciation Svc Shares |
| | **DSM**-M Large Cap Growth |
| | **Eaton Vance**-PSF Floating Rate Loan |
| | **Eaton Vance**-PSF Global Absolute Rtn |
| | **Fidelity**-VIP Contrafund SC2 |
| | **Fidelity**-VIP Freedom 2010 SC2 |
| | **Fidelity**-VIP Freedom 2015 SC2 |
| | **Fidelity**-VIP Freedom 2020 SC2 |
| | **Fidelity**-VIP Freedom 2025 SC2 |
| | **Fidelity**-VIP Freedom 2030 SC2 |
| | **Fidelity**-VIP Freedom 2035 SC2 |
| | **Fidelity**-VIP Freedom 2045 SC2 |
| | **Fidelity**-VIP Freedom Inc SC2 |

| % | Manager & Investment Option |
|---|---|
| | **Fidelity**-VIP Govt Money Market SC |
| | **Fidelity**-VIP Growth SC2 |
| | **Fidelity**-VIP Mid Cap SC2 |
| | **Fidelity**-VIP Value Strategies SC2 |
| | **Franklin**-Templeton Glbl Bond VIP 2 |
| | **Franklin/BlackRock**-PSF SmCap Equity |
| | **Frontier**-M Capital Appreciation |
| | **Invesco**-PSF Comstock |
| | **Invesco**-V.I. Intl Growth Fund II |
| | **Ivy**-PSF Mid-Cap Growth |
| | **Janus**-Janus HendersonVIT Enterprise SS |
| | **Janus**-Janus HendersonVIT Overseas SS |
| | **Janus**-PSF Focused Growth |
| | **JPMorgan**-PSF Long/Short Large-Cap |
| | **JPMorgan**-PSF Value Advantage |
| | **Lazard**-LRS Glbl Dynamic Multi Asset |
| | **Lazard**-LRS US Strategic Equity |
| | **Lord Abbett**-Bond Debenture VC |
| | **Lord Abbett**-Developing Growth VC |
| | **Lord Abbett**-Fundamental Equity VC |
| | **Lord Abbett**-Total Return VC |
| | **MFS**-PSF Growth |
| | **MFS**-PSF International Large-Cap |
| | **MFS**-PSF Technology |
| | **MFS**-VIT New Discovery Series SC |
| | **MFS**-VIT Utilities SC |
| | **MFS**-VIT Value SC |
| | **Morgan Stanley**-PSF Real Estate |
| | **Neuberger Berman**-Socially Resp CL I |
| | **Northern Cross LLC**-M Internatl Equity |
| | **OFI Global**-OppenheimerGlobal VA Svc |
| | **OppenheimerFunds**-PSF Emerging Markets |
| | **OppenheimerFunds**-PSF Main Street Core |
| | **Pacific Life**-Fixed Account* |
| | **Pacific Life**-Fixed LT Account* |
| | **Pacific Life**-1 Year Indexed Account (Not available on all products) |

| % | Manager & Investment Option |
|---|---|
| | **Pacific Life**-1 Year Indexed Account 3 (Not available on all products) |
| | **PAM**-PSF Core Income |
| | **PAM**-PSF Floating Rate Income |
| | **PAM**-PSF High Yield Bond |
| | **PIMCO**-PSF Inflation Managed |
| | **PIMCO**-PSF Managed Bond |
| | **PIMCO**-PIMCO VIT GMA Mgd Alloc Adv |
| | **PLFA**-PSF Diversified Alternatives |
| | **PLFA**-PSF PD Conservative Growth |
| | **PLFA**-PSF PD Growth |
| | **PLFA**-PSF PD-Moderate-Growth |
| | **PLFA**-PSF DFA Balanced Alloc |
| | **PLFA**-PSF PO Aggressive-Growth |
| | **PLFA**-PSF PO Conservative |
| | **PLFA**-PSF PO Growth |
| | **PLFA**-PSF PO Moderate |
| | **PLFA**-PSF PO Moderate-Conservative |
| | **QS Investors**-PSF International SmCap |
| | **Royce**-Micro-Cap Port SC |
| | **Scout**-PSF Mid-Cap Equity |
| | **State Street**-Tot Rtrn V.I.S. CL3 |
| | **T. Rowe Price**-Blue Chip Growth-II |
| | **T. Rowe Price**-Equity Income II |
| | **T. Rowe Price**-PSF Dividend Growth |
| | **T. Rowe Price**-PSF Short Duration Bond |
| | **Templeton**-Foreign VIP Fund Cl 2 |
| | **UBS/MCG**-PSF Currency Strategies |
| | **VanEck**-VIP Global Hard Assets IC |
| | **WAMCO**-PSF Diversified Bond |
| | **WAMCO**-WA Var Glbl HY Bond II |
| | **Wellington**-PSF Intl Value |
| | |
| | |
| | |
| | |
| | |

**Must total 100%** 0.00

*The Fixed LT Account has less transfer liquidity and may credit a higher current rate of interest than the Fixed Account. Both fixed account options credit a fixed minimum guaranteed interest rate. The Fixed Accounts are not available for automatic rebalancing. See the prospectus for details.

| Proposed Insured's Name | Policy Number |
|---|---|
| **BUSCH, KYLE T** | **VF53260490** |

**SIGNATURES**

By signing below you agree that this amends the application for the policy number shown and that each person signing the application change form agrees that all representations made in the form are true and complete to that person's knowledge and belief on the date signed. You further agree this is to be attached to and made part of the policy.
If you are signing on behalf of an entity, you represent that you are authorized to execute this document and to make the statements that may be shown. You further represent that all requirements of those entities, including the use of any seal (in the case of a Corporation) and any authorized signatures (in the case of a Corporation and/or Trust), have been met.

**SIGNED AND DATED ON:** Date (mm/dd/yyyy)

X
**Policyowner's Signature**. If Corporation, Trust, or Business Entity, also **print name and title**

**Policyowner's Name and Title**

X
**Additional Policyowner's Signature**. If Corporation, Trust, or Business Entity, also **print name and title**

**Additional Policyowner's Name and Title**

X
**Proposed Insured's Signature**

X
**Proposed Additional Insured's Signature**

X
**Applicant's Signature**. If Corporation, Trust, or Business Entity, also **print name and title**

X
**Soliciting Producer's Signature**

**PACIFIC LIFE INSURANCE COMPANY**
Life Insurance Division
P.O. Box 2030 • Omaha, NE 68103-2030
(800) 347-7787 • Fax (866) 964-4860
www.PacificLife.com

PACIFIC LIFE

# APPLICATION FOR INDIVIDUAL LIFE INSURANCE

## Proposed Insured

| | | | | |
|---|---|---|---|---|
| 1A. Name: First Kyle | MI T | Last Busch | | B. Gender ☑ Male ☐ Female |
| C. Residence Address: Street [redacted] | City Denver | State NC | Zip Code 28037 | D. How Long 5 yr 0 mo |
| E. Date of Birth (mm/dd/yyyy) [redacted] | F. Place of Birth (State/Country) Nevada, USA | G. SSN [redacted] | H. E-Mail Address [redacted] | |
| I. Driver's License # & State [redacted] NC | J. Telephone # (include area code) [redacted] | K. Occupation Pro Stock Car Racing Driver | | |
| 2A. Employer's Name Joe Gibbs Racing | | | | B. How Long 9 yr 0 mo |
| C. Proposed Insured's Work Address/Physical Location: Street [redacted] | City Huntseville | State NC | Zip Code 28078 | D. Type of Business Racing |

3. Is the Proposed Insured married or in a legally recognized civil union or domestic partnership? ☑ Yes ☐ No
If Yes, list amount of life insurance in force on your spouse/partner $ ⊖

4A. Proposed Insured is a: ☑ U.S. Citizen ☐ U.S. Permanent Resident ☐ Foreign National (Complete 4B through D)

| | | |
|---|---|---|
| B. If Foreign National, provide Country | C. Visa Type | D. How long in this country? |
| 5. Annual earned income from occupation $ 16,000,000 | 6. Annual unearned income (State sources in Remarks) $ 500,000 | 7. Net Worth ☑ Individual ☐ Joint $ 72,000,000 |

## Policy Information

| | |
|---|---|
| 1. Product Name | 2. Planned Annual Premium $ 1,000,000.00 |

**Face Amount/ Death Benefit** (Not available on all products)

Basic Coverage Amount $ 27,976,444

Check type(s) of term & enter first year coverage amount only. Check Varying box, if term coverage varies.

☐ Annual Renewable Term ☐ Varying $ ______
☐ Scheduled Annual Renewable Term
☐ Annual Renewable Term – Last Survivor ☐ Varying $ ______
☐ SVER Term Insurance Rider $ ______
☐ Term Insurance Rider $ ______
☐ Other ______ $ ______

Total Initial Coverage = $ 27,976,444

**Death Benefit Option** (Check one):

☐ Option A (Level) ☑ Option B (Increasing)
☐ Option C (Face Amount plus premiums less distributions subject to limit shown in the illustration)

**Life Insurance Qualification Test** (Check one):

☑ Guideline Premium Test (GPT)
☐ Cash Value Accumulation Test (CVAT)

**Optional Benefits** (Not available on all products)

1. ☐ Accidental Death Rider $ ______
2. ☐ Annual Renewable Term Rider (Proposed Insured) ☐ Varying $ ______
3. ☐ Annual Renewable Term Rider (Additional Insured) $ ______
4. ☐ Children's Term Rider $ ______
5. ☐ Disability Benefit Rider $ ______
6. ☐ Estate Preservation Rider $ ______
7. ☐ ______ $ ______
8. ☐ Accelerated Death Benefit Rider for Long-Term Care (Complete supplement form)
9. ☐ Benefit Distribution Rider (Complete supplement form)
10. ☐ Flexible Duration No Lapse Guarantee Rider
11. ☐ Guaranteed Insurability Rider
12. ☐ No Lapse Guarantee Rider
13. Waiver of Charges (Check one): ☐ Insured ☐ Owner ☐ Payor
14. ☐ ______

To Opt Out, check if applicable

15. ☐ Accelerated Death Benefit Rider for Chronic Illness
16. ☐ Accelerated Death Benefit Rider for Terminal Illness
17. ☐ Overloan Protection Rider
18. ☐ ______

## Non-Forfeiture Premium Cessation Options (Whole Life Products Only)

☐ Automatic Premium Loan ☐ Extended Insurance ☐ Reduced Paid-Up

## Amount Paid with This Application

1A. Is an initial premium submitted with this application?
☑ No ☐ Yes (Do not submit money unless the Temporary Insurance Agreement (TIA) is completed)

B. If Yes, show amount of initial premium. Amount $ ____________________
If Yes, by signing this application, all parties understand, accept, and agree to the terms of the TIA.

## Special Policy Dating

A current policy date will be used unless you select one of the following.
☐ Date to Save Age ☐ Specific Date ____________________ (mm/dd/yyyy) (Indicate a date, excluding 29th, 30th, and 31st)

**By signing this application**, I, as Applicant and/or Policyowner, understand that insurance charges and expenses begin on the **policy** date.

## Proposed Additional Insured (Complete for either Second-to-Die or Term Rider on Additional Insured.)

| | | | |
|---|---|---|---|
| 1A. Name: First **MI** **Last** | | | B. Gender ☐ Male ☐ Female |
| C. Residence **Address:** Street **City** State Zip Code | | | **D. How** Long yr mo |
| **E. Date of Birth (mm/dd/yyyy)** | F. Place of Birth (State/Country) | G. SSN | H. Relationship to Proposed Insured |
| **I. Driver's License # & State** | J. Telephone # (include area code) | K. Occupation | **L. E-Mail** Address |
| 2A. Employer's **Name** | | | **B. How Long** yr mo |

**3. Is the Proposed Additional Insured** married or in a legally **recognized** civil union or domestic partnership? ☐ Yes ☐ No
If Yes, list amount of life insurance in force on your spouse/partner $ ____________________

4A. Proposed Additional Insured is a: ☐ U.S. Citizen ☐ U.S. Permanent Resident ☐ Foreign National (Complete 4B through D)

| | | |
|---|---|---|
| **B. If Foreign National, provide Country** | C. Visa Type | **D. How long in this** country? |
| **5. Annual** earned income from occupation **$** | 6. Annual unearned income (State sources in Remarks) $ | **7. Net Worth** ☐ **Individual** ☐ Joint **$** |

## Primary Policyowner (Complete if other than Proposed Insured.)

1. Policyowner is (Check **one**): ☐ Individual ☑ Trust (Complete Trust Information form.) ☐ Parent/Guardian
☐ **Corporation/Business (Also complete 3)** ☐ **Partnership** ☐ Qualified **Plan (Complete Qualified Plan forms)** ☐ Other

| | | | |
|---|---|---|---|
| **2A. Name** The Kyle T. Busch Irrevoc Life Ins Trst | | | B. Relationship to Proposed Insured(s) Trust |
| C. Address: Street [redacted] | City Mooresville | **State** NC | **Zip Code** 28115 |
| **D. Date of Birth (mm/dd/yyyy)** [redacted] | E. SSN/TIN [redacted] | F. Telephone # (include area code) [redacted] | **G. E-Mail Address** |
| 3A. Authorized **Representative's** Name: First **MI** Last | | | B. Title |

## Additional Policyowner (If more than one individual is named as Policyowner, they will own policy as joint tenants with rights of survivorship unless otherwise stated.)

1. Policyowner is (Check one): ☐ Individual ☐ Trust (Complete Trust Information form.) ☐ Parent/Guardian
☐ **Corporation/Business (Also complete 3)** ☐ **Partnership** ☐ Qualified Plan **(Complete** Qualified Plan **forms)** ☐ Other

| | | | |
|---|---|---|---|
| **2A.** Name | | | **B. Relationship to Proposed Insured(s)** |
| **C. Address:** Street | City | State | Zip Code |
| D. Date **of Birth** (mm/dd/yyyy) | E. SSN/TIN | F. Telephone # (include area code) | G. E-Mail **Address** |
| **3A.** Authorized Representative's Name: First **MI** Last | | | B. Title |

**Applicant** (The Applicant is the party that applies for the policy. If other than Proposed Insured or Policyowner, also complete 2A-D.)

1. **Applicant is (Check one):** ☐ Proposed Insured ☑ Policyowner ☐ Corporation/Business (Complete 2A-D) ☐ Other (Complete 2A-D)

| | |
|---|---|
| **2A. Applicant Name** | B. Relationship to Proposed Insured(s)<br>Trust |
| **C. Authorized Representative's Name: First** MI Last | D. Title<br>Trustee |

**Primary Beneficiary** (If percentages are left blank, all named Primary Beneficiaries will share equally.)

| | | | |
|---|---|---|---|
| **1A. Name**<br>The Kyle T. Busch Irrevoc Life Ins Trst | | **B. Relationship to Proposed Insured**<br>Trust | C. % of Proceeds<br>100 |
| **D. Mailing Address: Street**<br>[redacted] | City<br>Mooresville | | State NC · Zip Code 28115 |
| E. Date of Birth (mm/dd/yyyy) | F. SSN/TIN<br>[redacted] | **G. Telephone # (include area code)**<br>[redacted] | H. Date of Trust (mm/dd/yyyy)<br>02/21/2018 |

**Additional Beneficiary(ies)** (Optional)

1A. ☐ **Primary** ☐ **Contingent** ☐ Term Rider on ______

| | | | |
|---|---|---|---|
| 2A. Name | | **B. Relationship** to Proposed Insured | C. % of Proceeds |
| D. Mailing Address: Street | City | | **State** **Zip Code** |
| E. Date of Birth (mm/dd/yyyy) | F. SSN/TIN | G. Telephone # (include area code) | H. Date of Trust (mm/dd/yyyy) |

3A. ☐ Primary ☐ Contingent ☐ Term Rider on ______

| | | | |
|---|---|---|---|
| **4A. Name** | | **B. Relationship to Proposed Insured** | **C. % of Proceeds** |
| D. Mailing Address: Street | City | | State Zip Code |
| **E. Date of Birth** (mm/dd/yyyy) | F. SSN/TIN | G. Telephone # (include area code) | **H. Date of Trust** (mm/dd/yyyy) |

**Applicant/Policyowner Representations of Insurable Interest**

As the Applicant and/or Policyowner, I represent that the Policyowner and Beneficiary have an insurable interest in the life of the Proposed Insured(s). (Applicable except where the Proposed Insured is both Applicant and Policyowner.)

**Certification of Policyowner's Taxpayer Identification Number**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. citizen or other U.S. person (defined in the instructions in item 3 of the Certification on the official IRS Form W-9).
4. I am exempt from FATCA reporting (defined in the instructions in item 4 of the Certification on the official IRS Form W-9).

Note: ☐ You must check here if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

**Tax Reporting on Distributions to Foreign Nationals**

While Pacific Life Insurance Company (PLIC) may provide tax information to various United States federal and state agencies regarding certain life insurance or annuity activity, PLIC does not as a matter of course provide such information to any foreign governmental agencies and does not anticipate doing so at this time. Nonetheless, PLIC's tax reporting does not in any way affect the obligations that its policyowners may have with respect to such foreign governmental agencies or under foreign law. PLIC does not provide tax or legal advice, and nothing contained herein should be construed as such.

| **Personal Information** (Provide details in Remarks) | Proposed Insured | | Additional Insured | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| 1. Within the next 2 years do you plan to fly, or within the last 2 years have you flown, as a pilot, student pilot, or crewmember? (If Yes, complete the "Aviation Questionnaire.") | ☐ | ☑ | ☐ | ☐ |
| 2. Within the next 2 years do you plan to participate in, or within the last 2 years have you participated in, parachute jumping, scuba diving, auto/motorboat/motorcycle racing, hang gliding, or mountain climbing? (If Yes, complete the "Avocation Questionnaire.") | ☑ | ☐ | ☐ | ☐ |
| 3. Within the next 2 years do you plan or expect to travel or reside outside the USA? (If Yes, complete the appropriate "Foreign Residence & Travel Questionnaire.") | ☐ | ☑ | ☐ | ☐ |
| 4. Have you applied for any other life insurance within the last 3 months? | ☐ | ☑ | ☐ | ☐ |
| 5. Have you ever had life insurance declined, rated, modified, cancelled, or not renewed? | ☐ | ☑ | ☐ | ☐ |
| 6. Within the past 5 years have you been convicted of a felony? | ☐ | ☑ | ☐ | ☐ |
| 7. Within the past 5 years have you had a driver's license restricted or revoked or been convicted of 3 or more moving violations? | ☐ | ☑ | ☐ | ☐ |

**Tobacco Use Information** (Complete if Proposed Insured is age 18 and above. The age of a juvenile insured varies by product. The responses to the following questions will not be considered in underwriting for products where the Insured is a juvenile Insured as defined in the contract.)

| | Proposed Insured | | Additional Insured | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| 1. Within the last 5 years, have you used or smoked tobacco and/or any other product containing nicotine in any quantity? (If Yes, check all that apply and indicate date when product was last used below) | [redacted] | | ☐ | ☐ |

| Proposed Insured's Information | | Proposed Additional Insured's Information | |
|---|---|---|---|
| Type of Product (check all that apply) | Date last used (mm/yyyy) | Type of Product (check all that apply) | Date last used (mm/yyyy) |
| ☐ Cigarettes | | ☐ Cigarettes | |
| ☐ E-cigarettes | | ☐ E-cigarettes | |
| ☐ Cigars | | ☐ Cigars | |
| ☐ Pipe | | ☐ Pipe | |
| ☐ Chewing Tobacco | | ☐ Chewing Tobacco | |
| ☐ Nicotine Patch | | ☐ Nicotine Patch | |
| ☐ Nicotine Gum | | ☐ Nicotine Gum | |
| ☐ Other ________ | | ☐ Other ________ | |

**Medical Certification** (Complete when submitting a medical examination from another life insurance company, if dated within the last 6 months. If circumstances warrant, a current exam may be required.)

1. The attached examination is on the life of (Use check boxes):

| Proposed Insured | Additional Insured | Name of Insurance Company | Date of Exam (mm/yyyy) |
|---|---|---|---|
| ☐ | ☐ | | |
| ☐ | ☐ | | |

| | Proposed Insured | | Additional Insured | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| 2. To the best of your knowledge and belief, are the statements in the examination true as of today? (If No, explain in Remarks.) | ☐ | ☐ | ☐ | ☐ |
| 3. Has the person who was examined consulted a doctor or other medical practitioner, or received medical or surgical advice since the date of the examination? (If Yes, explain in Remarks.) | ☐ | ☐ | ☐ | ☐ |

**Remarks** *(Use remarks sections for additional detail or clarifications. If more space is needed use the "Application for Individual Life Insurance - Additional Information" form.)*

#2 - Auto Racing

**In Force, Pending, and Replacement Information** (Certain states require replacement forms for in force policies even if a replacement is not intended.)

1. Is there any existing life insurance or annuity on any Proposed Insured(s)?
   ☑ Yes ☐ No (If Yes, complete any applicable state replacement notice(s) and submit with the application.)

2. Will the PLIC policy applied for replace, cause a change in, or involve a cash withdrawal or loan from or lapse of any life insurance policy or annuity on any Proposed Insured's life?
   ☐ Yes ☑ No (If Yes, complete the applicable state replacement forms and submit with the application.)

3A. Complete the chart below for any **existing** life insurance or annuity:

| | Policy/ Contract # | Company | Face Amount | Issue Year | Check All Applicable Boxes | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Replace | 1035 or Transfer Assets* | Life | LTC | Ann | Ind | Grp | Bus | Pers |
| **Primary Proposed Insured** | [redacted] | Nationwide | $5,000,000 | 2010 | | | ✓ | | | | | | |
| | [redacted] | John Hancock | $5,000,000 | 2013 | | | ✓ | | | | | | |
| | | | | | | | | | | | | | |
| **Additional Proposed Insured** | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

*Complete "1035 Exchange Absolute Assignment" form or "Transfer of Qualified Plan Assets" Request.

Complete 3B through 3D if answering Yes to 2 above:

3B. Is any existing policy being replaced a Modified Endowment Contract (MEC)?
   ☐ Yes (Provide policy number(s) in Remarks) ☐ No ☐ Unknown
   Under federal tax rules, if any policy is received in exchange for a MEC, the new policy will also be a MEC. This rule applies whether or not the policies are issued by the same insurance company.

C. To the best of your knowledge is there a loan on any existing policy to be replaced? ☐ Yes (Provide policy number(s) in Remarks) ☐ No

D. If you answered Yes to 3C, do you want a new loan of equal value on this new policy? ☐ Yes (Not available if current policy is a MEC) ☐ No

4A. Do you have any application currently **pending**, or do you plan to apply for any new life insurance or annuity with any other company?
   ☐ Yes (Complete chart below) ☑ No

| Proposed Insured | Company | Face Amount | Purpose |
|---|---|---|---|
| ☐ Primary ☐ Additional | | | |
| ☐ Primary ☐ Additional | | | |
| ☐ Primary ☐ Additional | | | |

4B. Does Applicant plan to accept any policy in the chart above in addition to the PLIC policy being applied for?
   ☐ Yes (Explain in Remarks.) ☐ No

C. If any application listed in the chart above is approved, will any replace, cause a change in, or involve a cash withdrawal or loan from or lapse of any life insurance policy or annuity on any Proposed Insured's life? ☐ Yes (Explain in Remarks.) ☐ No

5. What is the total amount of coverage to be in force with all carriers when this policy and any other pending policies are placed in force?
   $ 37,976,444

**Remarks** *(Use remarks sections for additional detail or clarifications. If more space is needed use the "Application for Individual Life Insurance - Additional Information" form.)*

## Ownership Transfer Information (Required)

1A. Has any life insurance on any Proposed Insured ever been sold, assigned or transferred to a life settlement or viatical company or any other **person or entity?** ☐ Yes (**Complete** 1B through F) ☑ No

| B. Name of Insurance **Company** | C. Face Amount | D. Date Policy Issued |
|---|---|---|
| | | |

| E. Date Policy Sold, **Assigned** or Settled | F. Reason |
|---|---|
| | |

2. Do you plan to sell, assign or transfer **this** policy if issued to a life settlement or viatical company or any other person or **entity?**
☐ Yes (Explain in Remarks) ☑ No

## Premium Financing (Required)

1A. Has any Proposed Insured(s), Policyowner(s) or Applicant entered into, or have made plans to enter into, an arrangement to borrow current or future premiums, or both, in connection with this Application for Life Insurance?
☐ Yes (Complete the Premium Financing Disclosure and Acknowledgment form and provide a copy of the loan term sheet.)
☑ No

| B. Name of lender | C. Name of financing arrangement |
|---|---|
| D. How will the loan interest be paid? | E. What is the type and amount **of the** collateral for this loan? |

2A. Has any Proposed **Insured(s)**, Policyowner(s) or Applicant made plans to transfer this policy to a **third** party as repayment of any premium financing debt?
☐ Yes (Give details below) ☑ No

B. Details

## Premium Billing Methods

1. Billing Method (Check one):
   - A. ☑ Direct
   - B. ☐ Monthly Bank Draft (Complete Authorization for Electronic Funds Transfer (EFT) form)
   - C. ☐ Single Premium
   - D. ☐ List Bill (Check one):

     ☐ New List Bill ☐ Add to Existing List Bill # (Do not complete 2): ____________

     The premium for this policy will be included in an itemized list provided to the payor and will constitute notice of premium due. Separate premium notices or other notices regarding premiums will not be sent to any other party.
2. Frequency of Payment for **Direct** and **List Bill** (Check one):
   A. ☑ Annually B. ☐ Semi-Annually C. ☐ Quarterly D. ☐ Monthly (Available with List Bill only)

## Policy Notifications (Optional - Complete if notifications should be sent to another party. If mailing address is different than residence address for Proposed Insured or Proposed Additional Insured complete 2A-D.)

1. Notifications are sent to the primary policyowner and include, but are not limited to, Policy Annual Statements, Last Premium Offers/Lapse Notices, and Confirmation Statements. Indicate where additional notifications should be sent:
   ☐ **Proposed** Insured ☐ **Proposed** Additional Insured ☐ Payor (**Complete 2A-D**) ☐ Other (**Complete** 2A-D)

| 2A. Name | | | B. Relationship to Insured(s) |
|---|---|---|---|
| C. Care of (if applicable) | | | |
| D. Address: Street | City | State | Zip Code |

## Payor of Premiums (**If Payor** is other than **Proposed** Insured, **Proposed** Additional Insured or **Primary Policyowner**, also complete 2A-E.)

1. Payor of premium is (Check one): ☐ **Proposed** Insured ☐ Proposed Additional Insured ☑ Primary Policyowner ☐ **Employer (Complete** 2A-E) ☐ Other (**Complete 2A-E**)

| 2A. Name | | B. **Relationship** to Proposed Insured(s) | |
|---|---|---|---|
| C. Care **of (if** applicable) | | D. E-Mail Address | |
| E. Address: **Street** | **City** | **State** | Zip Code |

3. Source of Premium Payments: ☑ Earned Income ☑ Unearned Income ☑ Savings ☐ Gift ☐ Inheritance ☐ Business Income ☐ Trust ☐ Premium Financing ☐ Other ____________

## Transaction Authorization

As the Policyowner, I understand that PLIC will act upon my telephone and/or electronic instructions for all of the following requests, unless I have chosen to withhold my authorization by checking the box below.

| Variable Life Policies | | Indexed Universal Life (IUL) Policies |
|---|---|---|
| • Transfer Between Investment Options<br>• Initiate Dollar Cost Averaging<br>• Rebalance Variable Investment Options | • Change Future Premium Allocation Instructions<br>• Initiate Policy Loans | • Payment Transfers<br>• One-Time Transfers and Scheduled Indexed Transfers<br>• Segment Maturity<br>• Initiate Policy Loans |

PLIC will use reasonable procedures to confirm that these requests are authorized and genuine. As long as these procedures are followed, PLIC and its affiliates and their directors, trustees, officers, employees, representatives and/or agents, will be held harmless for any claim, liability, loss or cost.

I further understand and agree that telephone and/or electronic transfers and allocation changes will be subject to the policy's terms and conditions and PLIC's administrative requirements.

By checking NO, I withhold my authorization for such telephone and/or electronic requests. ☐ NO

## Producer/Other Party Transaction Authorization (Optional)

As the Policyowner, I authorize and appoint the party listed below to act on my behalf for the following limited requests, including any telephone and/or electronic requests:

| Appointee's Name: First | MI | Last | Relationship to Policyowner |
|---|---|---|---|
| Rodney | | Smith | ☑ Producer ☐ Other Party |

Check one:

☑ All Requests (listed in the Transaction Authorization section)

☐ All Requests (listed in the Transaction Authorization section) except initiating Policy Loans

## Non-Variable Life Products Illustration Acknowledgment

An illustration is defined as a presentation or depiction that includes non-guaranteed elements of a policy over a period of years. If an illustration was presented during the sale process and matches the policy applied for, a copy of that illustration must be signed and submitted to PLIC with the application. If the signed matching illustration is not submitted, I as Applicant, acknowledge that: (Check one):

A. ☐ An illustration was not presented to me.

B. ☐ An illustration was presented to me; however, the policy applied for is different than as illustrated.

If A or B is checked, I acknowledge, as Applicant, that I did not receive and sign an illustration that matches this application for the reason indicated above. I also understand that an illustration matching the policy as issued will be provided for my signature no later than at the time the policy is delivered.

**Remarks** (Use remarks sections for additional detail or clarifications. If more space is needed use the "Application for Individual Life Insurance - Additional Information" form.)

## Indexed Universal Life Insurance – Payment Transfers (Required)

Percentages must be whole numbers. The sum of the percentages may be equal to or less than 100%.
Indicate where payments should be transferred to from the Fixed Account on the next applicable Transfer Date.

A. 1 Year Indexed Account ________ %

B. 1 Year Indexed Account 2 (1-Year International Indexed Account) ________ %

C. 1 Year Indexed Account 3 (1-Year High Par Indexed Account) ________ %

D. 1 Year Indexed Account 4 (1-Year No Cap Indexed Account) ________ %

E. 1 Year Indexed Account 5 (1-Year High Cap Indexed Account) ________ %

F. 2 Year Indexed Account ________ %

G. 5 Year Indexed Account 2 (High Par 5-Year Indexed Account) ________ %

H. By checking NO, I elect No Automatic Transfers (funds will remain in Fixed Account). ☐ NO
Actual transfer amounts will be limited to the balance in the Fixed Account as of the transfer date.

## Indexed Universal Life Insurance - Segment Maturity (Optional)

1. ☐ 100% of the value of the matured segment will be used to purchase new segments of the same type and duration. (Default)
2. ☐ I elect 100% of the value of the matured segments for all Indexed Account(s) to be allocated to the Fixed Account.

If another segment maturity option is desired, complete the Indexed Products Transfer Request form.

**Remarks** (Use remarks sections for additional detail or clarifications. If more space is needed use the "Application for Individual Life Insurance - Additional Information" form.)

## Variable Life Products Premium Allocation Instructions (Required)

Indicate percentage amount that you want allocated into each of the investment options below. The total of the percentages must be 100%.

| % | Manager & Investment Option |
|---|---|
| ____ | AB-PSF Small-Cap Value |
| ____ | AJO-M Large Cap Value |
| ____ | American Century-VP Mid Cap Val II |
| ____ | Ashmore-PSF Emerging Mkts Debt |
| ____ | AQR-PSF Equity Long/Short |
| ____ | Barings-PSF Inflation Strategy |
| ____ | BlackRock-Basic Value V.I. Fund III |
| ____ | BlackRock-Global Alloc V.I. Fund III |
| ____ | BlackRock-iShares Alt Strat V.I. I |
| ____ | BlackRock-iShares Dyn Alloc V.I. I |
| ____ | BlackRock-iShares Dyn Fxd Inc V.I. I |
| ____ | BlackRock-iShares Eq Apprec V.I. I |
| ____ | BlackRock-PSF Equity Index |
| ____ | BlackRock-PSF Health Sciences |
| ____ | BlackRock-PSF Large-Cap Growth |
| ____ | BlackRock-PSF Small-Cap Index |
| ____ | Boston Partners-PSF Mid-Cap Value |
| ____ | Cap Research-AFIS Asset Alloc Cl 4 |
| ____ | Cap Research-AFIS Growth Cl 4 |
| ____ | Cap Research-AFIS Growth-Inc Cl 4 |
| ____ | ClearBridge-PSF Large-Cap Value |
| ____ | ClearBridge-Var Aggr Growth Cl II |
| ____ | ClearBridge-Var Mid Cap Cl II |
| ____ | Dreyfus-VIF Appreciation Svc Shares |
| ____ | DSM-M Large Cap Growth |
| ____ | Eaton Vance-PSF Floating Rate Loan |
| ____ | Eaton Vance-PSF Global Absolute Rtn |
| ____ | Fidelity-VIP Contrafund SC2 |
| ____ | Fidelity-VIP Freedom 2010 SC2 |
| ____ | Fidelity-VIP Freedom 2015 SC2 |
| ____ | Fidelity-VIP Freedom 2020 SC2 |
| ____ | Fidelity-VIP Freedom 2025 SC2 |
| ____ | Fidelity-VIP Freedom 2030 SC2 |
| ____ | Fidelity-VIP Freedom 2035 SC2 |
| ____ | Fidelity-VIP Freedom 2045 SC2 |
| ____ | Fidelity-VIP Freedom Inc SC2 |

| % | Manager & Investment Option |
|---|---|
| ____ | Fidelity-VIP Govt Money Market SC |
| ____ | Fidelity-VIP Growth SC2 |
| ____ | Fidelity-VIP Mid Cap SC2 |
| ____ | Fidelity-VIP Value Strategies SC2 |
| ____ | Franklin-Templeton Glbl Bond VIP 2 |
| ____ | Franklin/BlackRock-PSF SmCap Equity |
| ____ | Frontier-M Capital Appreciation |
| ____ | Invesco-PSF Comstock |
| ____ | Invesco-V.I. Intl Growth Fund II |
| ____ | Ivy-PSF Mid-Cap Growth |
| ____ | Janus-Janus HendersonVIT Enterprise SS |
| ____ | Janus-Janus HendersonVIT Overseas SS |
| ____ | Janus-PSF Focused Growth |
| ____ | JPMorgan-PSF Long/Short Large-Cap |
| ____ | JPMorgan-PSF Value Advantage |
| ____ | Lazard-LRS Glbl Dynamic Multi Asset |
| ____ | Lazard-LRS US Strategic Equity |
| ____ | Lord Abbett-Bond Debenture VC |
| ____ | Lord Abbett-Developing Growth VC |
| ____ | Lord Abbett-Fundamental Equity VC |
| ____ | Lord Abbett-Total Return VC |
| ____ | MFS-PSF Growth |
| ____ | MFS-PSF International Large-Cap |
| ____ | MFS-PSF Technology |
| ____ | MFS-VIT New Discovery Series SC |
| ____ | MFS-VIT Utilities SC |
| ____ | MFS-VIT Value SC |
| ____ | Morgan Stanley-PSF Real Estate |
| ____ | Neuberger Berman-Socially Resp CL I |
| ____ | Northern Cross LLC-M Internatl Equity |
| ____ | OFI Global-OppenheimerGlobal VA Svc |
| ____ | OppenheimerFunds-PSF Emerging Markets |
| ____ | OppenheimerFunds-PSF Main Street Core |
| ____ | Pacific Life-Fixed Account* |
| ____ | Pacific Life-Fixed LT Account* |
| ____ | Pacific Life-1 Year Indexed Account (Not available on all products) |

| % | Manager & Investment Option |
|---|---|
| ____ | Pacific Life-1 Year Indexed Account 3 (Not available on all products) |
| ____ | PAM-PSF Core Income |
| ____ | PAM-PSF Floating Rate Income |
| ____ | PAM-PSF High Yield Bond |
| ____ | PIMCO-PSF Inflation Managed |
| ____ | PIMCO-PSF Managed Bond |
| ____ | PIMCO-PIMCO VIT GMA Mgd Alloc Adv |
| ____ | PLFA-PSF Diversified Alternatives |
| ____ | PLFA-PSF PD Conservative Growth |
| ____ | PLFA-PSF PD Growth |
| ____ | PLFA-PSF PD-Moderate-Growth |
| ____ | PLFA-PSF DFA Balanced Alloc |
| ____ | PLFA-PSF PO Aggressive-Growth |
| ____ | PLFA-PSF PO Conservative |
| ____ | PLFA-PSF PO Growth |
| ____ | PLFA-PSF PO Moderate |
| ____ | PLFA-PSF PO Moderate-Conservative |
| ____ | QS Investors-PSF International SmCap |
| ____ | Royce-Micro-Cap Port SC |
| ____ | Scout-PSF Mid-Cap Equity |
| ____ | State Street-Tot Rtrn V.I.S. CL3 |
| ____ | T. Rowe Price-Blue Chip Growth-II |
| ____ | T. Rowe Price-Equity Income II |
| ____ | T. Rowe Price-PSF Dividend Growth |
| ____ | T. Rowe Price-PSF Short Duration Bond |
| ____ | Templeton-Foreign VIP Fund Cl 2 |
| ____ | UBS/MCG-PSF Currency Strategies |
| ____ | VanEck-VIP Global Hard Assets IC |
| ____ | WAMCO-PSF Diversified Bond |
| ____ | WAMCO-WA Var Glbl HY Bond II |
| ____ | Wellington-PSF Intl Value |
| ____ | ____ |
| ____ | ____ |
| ____ | ____ |
| ____ | ____ |
| ____ | ____ |

Must total 100% ____

* The Fixed LT Account has less transfer liquidity and may credit a higher current rate of interest than the Fixed Account. Both fixed account options credit a fixed minimum guaranteed interest rate. The Fixed Accounts are not available for portfolio rebalancing. See the prospectus for details.

## Variable Life Products Acknowledgment.

With respect to the purchase of this variable life insurance policy, by signing this application I, the Applicant, acknowledge that:

- I understand that the amount and duration of the death benefit may vary, depending on the investment performance of the variable investment options.
- I understand that the policy values may increase or decrease, depending on the investment experience of the variable investment options.
- I have considered the liquidity needs, risk tolerance and investment time horizon in selecting the variable investment options.
- My registered representative provided me with a copy of the current prospectus for the variable life insurance policy I applied for, as well as current prospectuses for all variable insurance options I've selected on the application or any supplementary forms.

POLICY VALUES MAY INCREASE OR DECREASE, AND MAY EVEN BE REDUCED TO ZERO AND CAUSE THE POLICY TO LAPSE WITHOUT VALUE, DEPENDING ON THE EXPERIENCE OF THE VARIABLE INVESTMENT OPTIONS. THE DEATH BENEFIT MAY BE VARIABLE OR FIXED UNDER SPECIFIED CONDITIONS. A CURRENT ILLUSTRATION OF BENEFITS, INCLUDING DEATH BENEFITS AND HYPOTHETICAL CASH SURRENDER VALUES, IS AVAILABLE UPON REQUEST.

## Variable Life Products Illustration Disclosure

I, the Applicant, understand that I have applied for and/or purchased a variable universal life insurance policy from PLIC. I understand the following about variable universal life insurance and variable universal life insurance illustrations:

- Policy illustrations demonstrate the workings of a policy over time. Policy illustrations are presentations of non-guaranteed policy values over a period of years, based on assumptions of future investment results and assumptions as to what policy charges and credits will then be in effect. The hypothetical investment rates used in illustrations are illustrative only and should not be deemed to represent past or future investment results.
- In addition to investment results, future policy values depend on policy charges and credits. These charges and credits are determined by and may be adjusted by PLIC subject to contractual guarantees.
- Future policy values are also dependent on the amount and timing of premium payments, withdrawals and loans. Policy cash values may be more or less than premiums paid.
- The actual performance of the policy is likely to vary from the illustration as actual investment results and future policy charges and credits are either more or less favorable than illustrated. Such changes are likely to change the amount or number of required premiums to meet the original goals.
- The illustration may be based on policy options that require future action. Consult with your representatives to determine which (if any) illustrated policy options require future action.
- PLIC does not offer legal advice regarding state and federal tax laws pertaining to life insurance.

**Remarks** *(Use remarks sections for additional detail or clarifications. If more space is needed use the "Application for Individual Life Insurance - Additional Information" form.)*

## Proposed Insured's Consent for Employer Owned Insurance (Applicable only if the employer or employer-controlled trust is to be the Policyowner)

As the Proposed Insured, I acknowledge and understand that (i) my employer (the "Employer"), or a trust established by my employer (the "Trust"), is involved in this Application for Individual Life Insurance insuring my life ("Life Insurance Coverage"), (ii) the Employer or the Trust will have an interest as policyowner and/or beneficiary of the Life Insurance Coverage as reflected in this Application, and (iii) both I and my heirs may have no right or interest in or to the Life Insurance Coverage and its proceeds.

I (i) consent to the issuance of the Life Insurance Coverage as requested in this Application; (ii) acknowledge that the Life Insurance Coverage may continue after the termination of my employment with the Employer; (iii) acknowledge that my Employer has notified me in writing of the maximum life insurance face amount for which my Employer may seek Life Insurance Coverage insuring my life; and (iv) acknowledge that PLIC will not necessarily issue a policy at this maximum life insurance face amount.

My consent to this insurance has not been obtained by coercion of my Employer or its representatives or agents, whether express or implied. By signing this application, I am consenting to the Employer's and/or Trust's future face amount increases with respect to the policy issued in connection with this consent. However, should such face amount increases result in a face amount that exceeds the maximum life insurance face amount described above, my Employer may need to obtain additional written consent from me in order to comply with IRC section 101(j).

## Employer Acknowledgment Regarding the Potential Taxation of Death Benefits

I acknowledge and understand: (i) the potential significance of IRC section 101(j); and (ii) that, if IRC section 101(j) applies, the policy(s) death benefit may be income taxable unless I, as Employer, have satisfied the conditions of IRC Section 101(j); and (iii) that PLIC and its Producers are not authorized to provide tax or legal advice and that I must look to my independent tax and legal advisors for current information regarding this and other laws that may impact me and my life insurance policies.

I understand that it remains the employer's responsibility to ensure both current and ongoing compliance with the requirements of IRC sections 101(j) and 6039I, including appropriate annual IRS filings.

By signing this Application, I acknowledge my understanding of this information, and that I have obtained or will obtain from my independent tax and legal advisors whatever advice I deem necessary or appropriate concerning the taxation of my life insurance policies.

## Declarations of All Signing Parties

The answers provided in this application are true and complete to the best of my knowledge and belief. I understand and agree that:

1. Acceptance of a life insurance policy will be ratification of any administrative change with respect to such policy made by Pacific Life Insurance Company (PLIC) as indicated under the title Endorsement, where permitted by state law. All other changes made to the application or policy by PLIC will be indicated on an Amendment to Application form that must be signed by all applicable parties, prior to or at the time of delivery of this policy.
2. (APPLICABLE ONLY IF THE EMPLOYER OR AN EMPLOYER-CONTROLLED TRUST IS TO BE THE POLICYOWNER OF THIS POLICY) If insurance is being applied for on the life of any non-exempt employee, then I represent such insurance is not prohibited by applicable state law.
3. If I am an active duty member of the United States Armed Forces (including active duty military reserve personnel), I confirm that this application was not solicited and/or signed on a military base or installation, and I have received from the Producer, whose name appears in the Producer Certification section, the disclosure required by Section 10 of the Military Personnel Financial Services Protection Act.
4. Except as provided in the terms or conditions of any Temporary Insurance Agreement (TIA) that I may have received in connection with this application, coverage will take effect when the policy is delivered and the entire first premium is paid only if at that time each Proposed Insured is alive, and all answers in this application that are material to the risk are still true and complete.
5. If I have given money with the application and received a TIA and if the coverage amount of the application exceeds the TIA coverage limits, I understand that if the Proposed Insured(s) die(s) before a policy is delivered, the death benefit will be limited to the TIA coverage limit.
6. I must inform the Producer or PLIC in writing of any changes in the health of any Proposed Insured(s). If any of the statements or answers previously provided on the ticket/request (if applicable), applications, and medical forms change prior to delivery of the policy, I am obligated to notify PLIC of the changes in writing no later than at the time the application is signed by the Proposed Insured(s).
7. No Producer is authorized to make or change contracts or insurance policies on the behalf of PLIC and no Producer may alter the terms of this application, the TIA, or the policy, nor does the Producer have the authority to waive any of PLIC's rights or requirements.
8. No representation is made that, based on information provided in the application, a particular premium rate, risk category or class will be offered to me. I will review my policy and ask the Producer or PLIC about the specific premium and risk class referenced in my policy.
9. The policy as applied for in this application will meet my insurance needs and financial objectives based in part upon my age, income, net worth, tax and family status, and any existing insurance policies I own.
10. If this application is for a product with an indexed feature, I ACKNOWLEDGE that: I am applying for a product with an indexed feature, for which the crediting for the indexed account tracks the gains and the losses of an outside financial index, subject to a floor and either a growth cap or a threshold, whichever applies. I further understand that, while the values of the policy may be determined in part, by reference to an external index, the indexed feature does not directly participate in any stock or equity investments and values shown to me, other than the minimum values, are not guarantees, promises, or warranties.
11. I understand that PLIC is not authorized to engage in any activity in non-US jurisdictions, and I will perform all parts of the application, underwriting and delivery associated with this policy in a U.S. jurisdiction.
12. The statements and answers in the application are the basis for any policy issued by PLIC, and no information about the applicant will be considered to have been given to PLIC unless it is stated in the application.

**Declarations** (Continued)

13. I represent that all parties have an insurable interest in the life of the Proposed Insured.
14. I understand that only the Producer signing this application is responsible for ensuring that the policy meets my insurance needs and financial objectives, regardless of whether a PLIC employee attended any meetings to discuss the policy.
15. This application will be attached to and made part of the policy.
16. I HAVE READ the completed Application and all related forms before signing below. All statements and answers on this application are correctly recorded, and are full, complete and true to the best of my knowledge and belief.

**Signatures**

Review the answers on this Application carefully. If any of your answers are incorrect or untrue, even if unintentional, the company may have the right to deny benefits or rescind your coverage if the misrepresentation is deemed to be material.

Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

If you are signing on behalf of an entity, you represent that you are authorized to execute this document and make the statements that may be shown. You further represent that all requirements of those entities, including the use of any seal (in the case of a Corporation) and any authorized signatures (in the case of a Corporation and/or Trust), have been met.

THE INTERNAL REVENUE SERVICE DOES NOT REQUIRE MY CONSENT TO ANY PROVISION OF THIS DOCUMENT OTHER THAN THE CERTIFICATIONS REQUIRED TO AVOID BACKUP WITHHOLDING.

If Proposed Insured or Policyowner is under age 18, a signature of parent/guardian is required in place of the minor's signature.

SIGNED BY APPLICANT IN: APPLICANT SIGNED AND DATED ON:

| City | State | Date (mm/dd/yyyy) |
|---|---|---|
| Mooresville | NC | 2/21/2018 |

SIGN HERE X [signature]
Proposed Insured's Signature

SIGN HERE X
Proposed Additional Insured's Signature, if applicable

SIGN HERE X Samantha Busch TRUSTEE
Policyowner's Signature, if other than Proposed Insured, and include Title, if Corporation, Trust, or Business Entity

SIGN HERE X
Additional Policyowner's Signature & Title, if applicable

SIGN HERE X
Applicant's Signature, if other than Proposed Insured and/or Policyowner, and include Title, if Corporation, Trust or Business Entity

THE APPLICANT IS THE PARTY THAT APPLIES FOR THE POLICY.

**Producer's Certification**

| | Yes | No |
|---|---|---|
| 1. Does the Proposed Insured have any existing life insurance or annuities? | ☑ | ☐ |
| 2. Do you know or have any reason to believe that a replacement of life insurance or annuity is involved? | ☐ | ☑ |

3. I have discussed the appropriateness of replacement, followed applicable state laws, PLIC's written guidelines and, if applicable, I have complied with the replacement requirements of my broker. If replacing a variable life or annuity contract, I also certify that I have the appropriate variable state licenses.
4. I have reviewed this request/application, and have determined that its proposed purchase is suitable as required under law, based in part upon information provided by the Applicant, Policyowner and Proposed Insured, as applicable, including age, income, net worth, tax and family status, and any existing insurance program. If the policy applied for is a variable life insurance policy, I further certify that I have also considered the Policyowner's liquidity needs, risk tolerance, and investment time horizon, and followed my broker-dealer's suitability guidelines in both the recommendation of this policy, and the choice of investment options.
5. I certify that I have truly and accurately recorded the information supplied in the application and any supplements, if required.

SIGN HERE X [signature]
Soliciting Producer's Signature

Soliciting Producer's Name: First MI Last (print)
Rodney Smith

**PACIFIC LIFE INSURANCE COMPANY**
Life Insurance Division
P.O. Box 2030 • Omaha, NE 68103-2030
(800) 347-7787 • Fax (866) 964-4860
www.PacificLife.com

PACIFIC LIFE

# APPLICATION FOR INDIVIDUAL LIFE INSURANCE – HEALTH HISTORY

For Proposed Insured age 16 and older

| Proposed Insured's Name: First | MI | Last | Date of Birth (mm/dd/yyyy) | Policy Number, if applicable |
|---|---|---|---|---|
| Kyle | T | Busch | [redacted] | VF53260490 |

**Physician Information** (Indicate the most recent physician/medical facility seen within the last 5 years.)

***Primary Care Physician Information***

1A. Physician/Medical Facility Name: [redacted]
B. Telephone # (include area code): [redacted]
C. Address: Street: [redacted]
City: Charlotte
State: NC
Zip Code: 28209
2A. Date of Last Visit: Jan 2017
B. Reason for Visit: [redacted]

***Specialist Information***

3A. Physician Name: [redacted]
B. Type of Specialty: [redacted]
C. Telephone # (include area code): ([redacted]
D. Address: Street: [redacted]
City: Charlotte
State: NC
Zip Code: 28203
4A. Date of Last Visit: 05/2017
B. Reason for Visit: [redacted]

**Physical Measurements**

5A. Height: [redacted]
B. Weight: [redacted]

| | Yes | No |
|---|---|---|
| C. Has there been a weight gain of 10 pounds or more in the past 12 months? (If yes, how many pounds?) ______ | [redacted] | |
| D. Has there been a weight loss of 10 pounds or more in the past 12 months? (If yes, how many pounds?) [redacted] | | |
| E. Was weight loss due to diet or exercise? | | |

**Family Health History**

| | Yes | No |
|---|---|---|
| 6. Have either of your parents, brothers or sisters ever been diagnosed by a member of the medical profession to have diabetes, cancer, high blood pressure, heart disease, stroke, or mental illness? (If yes, state condition, give relationship and age at onset.) | ☐ | ☐ |

7. Complete chart for any deceased family members listed below:

| | Age At Death | Cause of Death |
|---|---|---|
| A. Father | | |
| B. Mother | | |
| C. Sibling | | |
| D. Sibling | | |

**Remarks** (Use remarks sections for additional detail or clarifications. If more space is needed use the "Application for Individual Life Insurance - Additional Information" form.)

5D) 15 lb weight loss for better health

**Health History for Proposed Insured** (Have you been diagnosed by a medical professional for any of the following? For Yes answers provide diagnosis, treatment, test results, medications, dates of any hospitalization and/or recommendations for surgery (within the last 5 years) and the name/address of the physicians. If more space is needed, use the "Application for Individual Life Insurance – Additional Information" form.)

8. Except for HIV, have you taken medication, been diagnosed, treated, tested positive for, or been given medical advice by a member of the medical profession for any of the following:

Yes | No

[redacted]

   A. Chest pain, angina, congestive heart failure, heart attack, heart disease, heart murmur, irregular heart rhythm, coronary artery disease, atrial fibrillation, any other heart or blood vessel disorder or disease?
   B. Peripheral vascular disease, high blood pressure or high cholesterol?
   C. Jaundice, cirrhosis, hepatitis, ulcers, colitis, diverticulitis, or any other liver, stomach, gallbladder or intestinal disorder or disease?
   D. Kidney failure, kidney or bladder stones, or any other kidney or bladder disorder or disease?
   E. Pancreatitis or any other pancreas disorder or disease?
   F. Diabetes, glucose intolerance, high blood sugar, thyroid, other endocrine or glandular disorder or disease?
   G. Asthma, emphysema, chronic obstructive pulmonary disease (COPD), sleep apnea, tuberculosis, or any other respiratory system disorder or disease?
   H. Anemia, bleeding or clotting disorder or disease?
   I. Blood, blood cells or bone marrow disorder or disease, recurrent infections, or any other immune system disorder or disease?
   J. Cancer, leukemia, lymphoma, lymph node disorder or disease, malignant melanoma, any tumors, cyst or polyps?
   K. Stroke, transient ischemic attack (TIA), paralysis, epilepsy, seizures, convulsions, headaches or other neurological disorder or disease?
   L. Alzheimer's disease, dementia, cognitive impairment, or any other brain or nervous system disorder or disease?
   M. Multiple sclerosis, Parkinson's disease, Huntington's disease, Lou Gehrig's disease (ALS), muscular dystrophy or any other muscular or skeletal system disorder or disease?
   N. Lupus, scleroderma or any other connective tissue disorder or disease?
   O. Gout, osteoporosis, sciatica, cerebral palsy, myasthenia gravis, sjogren's, osteomyelitis, arthritis, rheumatoid arthritis, or any other muscle, bone, spine, back, neck, or joint disorder or disease?
   P. Chronic fatigue, fibromyalgia, chronic pain, polymyalgia rheumatica, neuropathy or nerve disorder or disease?
   Q. Breast, prostate or any reproductive organ disorder or disease?
   R. Any eye, ear, nose, throat or skin disorder or disease?
   S. Any amputations?
   T. Sexually transmitted diseases?
9. Within the last 5 years have you used or have you been given medical advice by a member of the medical profession to use dialysis machine, ostomy, pacemaker? (If yes, give dates, how long or often and reason.)
10. Have you ever been diagnosed by a member of the medical profession or tested positive for Human Immunodeficiency Virus (AIDS virus) or Acquired Immune Deficiency Syndrome (AIDS)?
11. Have you ever used or tested positive for: tranquilizers, sedatives, narcotics, barbiturates, amphetamines, heroin, cocaine, hallucinogens, marijuana, any other habit forming drug or any controlled substance? (If yes, what drugs have you used, what quantity and date last used.)
12. Have you been prescribed medical marijuana by a member of the medical profession? (If yes, provide the name of the prescribing physician and the reason marijuana is being prescribed.)
13. Within the last 5 years, have you been diagnosed, treated, or been given medical advice by a member of the medical profession and/or taken medication for: anxiety, schizophrenia, bi-polar disorder, depression, other psychiatric disorder and any other mental health or nervous disorder?
14. Do you drink alcoholic beverages? (If yes, provide type, frequency and amount.)
15. Within the last 5 years, have you had medical treatment or counseling for the use of alcohol or drugs, or participated in a support group because of alcohol or drug use?
16. Other than any you previously mentioned and except for HIV, within the last 5 years:
   A. have you been advised by a member of the medical profession that you have had an abnormal medical test, including a blood test, urine test, EKG, echocardiogram, or other test?
   B. have you had any X-Ray, diagnostic medical tests/procedures?
   C. have you had any check-up, consultation, illness, confinement to medical facility, or surgery?
   D. have you been advised by a member of the medical profession to have a consultation, diagnostic test, surgery, or confinement to medical facility that has not yet been completed?
17. Do you take any other medications regularly, including over-the-counter medications, not previously mentioned? (If yes give the name of the medication, dose and frequency.)
18. Within the last 5 years, have you received or applied for any disability benefits, Worker's Compensation, Social Security Disability Insurance, chronic illness, long-term care, or accidental medical benefits? (If yes, include dates and types of benefits.)

**Remarks** (Use remarks sections for additional detail or clarifications. If more space is needed use the "Application for Individual Life Insurance - Additional Information" form.)

[redacted]

**Additional Questions for Proposed Insured Age 61 or Older** (Have you been diagnosed by a medical professional for any of the following? For Yes answers provide diagnosis treatment, medications and the name/address of the physicians. If more space is needed, use the "Application for Individual Life Insurance – Additional Information" form.)

| | Yes | No |
|---|---|---|
| 19. Within the last 5 years, have you been diagnosed, treated, or been given medical advice by a member of the medical profession for: | | |
| A. Vertigo, dizziness, fainting/syncope, loss of balance or falls? | ☐ | ☐ |
| B. Amnesia, confusion, memory loss, hydrocephalus, post-polio syndrome? | ☐ | ☐ |
| 20. Within the last 5 years, have you been given medical advice by a member of the medical profession to have chiropractic care, occupational therapy, respiratory therapy, speech therapy, or physical therapy? (If yes, provide dates of care or therapy and outcome.) | ☐ | ☐ |
| 21. Within the last 5 years, have you had any impairment, whether mental or physical, for which you have needed or required assistance or supervision with performing the following activities: (If yes, who helps, how often, for what specific activities and why?) | | |
| A. housekeeping, meal preparation, laundry, telephone use, managing your finances, managing and/or taking your medications, shopping, or transportation? | ☐ | ☐ |
| B. bathing, dressing, eating, toileting, controlling your bowel or bladder, walking, moving from a seated or laying down position? | ☐ | ☐ |
| 22. Is someone acting for you in a legal capacity through a Power of Attorney? (If yes, provide date, reason and relationship.) | ☐ | ☐ |
| 23. Within the last 5 years, did you or do you use a brace, cane (of any kind), walker, wheelchair, motorized scooter, hospital bed, stair/chair lift, catheter or personal oxygen system? (If yes, specify device and provide the reason and dates.) | ☐ | ☐ |
| 24. Within the last 5 years, have you been given medical advice by a member of the medical profession to attend adult day care, receive home health care, be admitted to an assisted living facility, a custodial facility, nursing home/facility, psychiatric treatment center, hospital or any other medical facility? (If yes, provide reason, how often you attend, dates, name and address of facility and physician who recommended admissions.) | ☐ | ☐ |

**Remarks** (Use remarks sections for additional detail or clarifications. If more space is needed use the "Application for Individual Life Insurance - Additional Information" form.)

**Signatures**

Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

The answers provided in this application and any additional details provided are true and complete to the best of my knowledge and belief. I understand and agree that this application will be attached to and made part of the policy.

**If proposed insured is under age 18, a signature of the parent/guardian is required in place of the minor's signature.**

**SIGNED IN:** **DATED ON:**

| City | State | Date (mm/dd/yyyy) |
|---|---|---|
| | | |

SIGN HERE

X

Proposed Insured's Signature (or parent/guardian if a minor)

**Producer's Certification**

I certify that I have truly and accurately recorded the information supplied in this application.

SIGN HERE

X

Producer's Signature

AVOC

**PACIFIC LIFE INSURANCE COMPANY**
Life Insurance Division
P O Box 2030 • Omaha, NE 68103-2030
(800) 347-7787 • Fax (866) 964-4860
www.PacificLife.com

PACIFIC LIFE

# AVOCATION QUESTIONNAIRE

| Proposed Insured's Name First | MI | Last | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|
| Kyle | T | Busch | [redacted] |

## A AUTOMOBILE, MOTORCYCLE, AND/OR POWER BOAT RACING

1 Type of racing
☐ Midget ☐ Go-Kart ☐ Sports Car ☒ Modified Stock ☐ Drag Racing ☐ Motorcycle ☐ Powerboat
☐ Other (explain). ______
Please provide racing classification *late model* Sanctioning Organization *NASCAR*

2 Vehicle specifications
Make *Toyota* Model *Camry / Tundra* Displacement *358 cu in*
Class *late model* Engine Make & Model *Camry racing V8 / Tundra* HP *725 / 625*

3. Number of races
12-24 months ago *65* Past 12 months *57* Estimated next 12 months *60* Date of last race *11/19/17*

4 Type of race
☐ Midget ☐ Sports Car ☒ Stock Car ☒ Championship ☐ Drag ☐ Kart ☐ Hillclimb ☐ Cross Country
☐ Hound & Hare ☐ Moto-Cross ☐ Other (explain) ______

5. Type of course
☒ Paved ☐ Dirt ☐ Drag Strip ☒ Oval ☐ Other (explain). ______

6. Racing location. ☐ Local ☐ If not, where *various tracks throughout the USA*

7. Competition against ☒ Other Cars ☐ Clock ☐ Straightaway ☐ Other ______
Average Speed *166* Top Speed *202* Average miles per race *373*

8. Level of expertise. ☒ Professional ☐ Amateur ☐ Other (explain) ______

## B MOUNTAIN CLIMBING

1 Type(s) of climbing ☐ Trail ☐ Rock (class I-VI) ☐ Snow ☐ Ice ☐ Glacier
2. Frequency of each. ______
3 Date and location of last climb ______
How long have you been climbing ______
4 Do you ever climb alone ☐ Yes ☐ No If yes, explain ______
5. Name geographical location(s) where you climb, type of climbing, and highest level of difficulty ______

**REMARKS** (Identify section and question)

## AVOCATION QUESTIONNAIRE

### C UNDERWATER DIVING (SKIN OR SCUBA)

1. What type of equipment do you use: ______
2. Location of diving activities: ______ Diving for: ☐ Pleasure ☐ Pay
3. Do you belong to a club or association. ______
4. Do you ever dive alone ☐ Yes ☐ No If yes, explain: ______

5.

| | During Past 12 Months | | Expected Next 12 Months | |
|---|---|---|---|---|
| Depth of Dives | No. Dives | Average Time | No. Dives | Average Time |
| Less than 75 feet | | | | |
| 75 feet & over | | | | |
| Maximum depth obtained | | | | |

### D HANG GLIDING

1. How long have you been hang gliding: ______ How often ______
2. Club affiliation: ______
3. Level of expertise: ☐ Professional ☐ Amateur ☐ Other (explain) ______
4. Participation in: ☐ Competitive events ☐ Record attempts
5. Describe the terrain over which you fly (mountain, cliff, etc.): ______

### E PARACHUTE JUMPING AND SKY DIVING

1. Are you now a member of any parachute or sky diving club or association ______
2. Are all of your jumps made under auspices of your club or association: ______
3. Number of jumps: 12-24 months ago ______ Past 12 months ______ Next 12 months ______
4. Do you participate in delayed chute opening competition or other stunts: ☐ Yes ☐ No
5. Location of jump areas: ______ Date of last jump ______

**REMARKS** (Identify section and question)

### F SIGNATURES

Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

I represent that the foregoing answers and statements are correctly recorded, complete, and true to the best of my knowledge and belief.

**Signed and Dated on:**

Date (mm/dd/yyyy) 12/08/2017

SIGN HERE X [signature]
Proposed Insured's Signature

SIGN HERE X [signature]
Producer's Signature

Producer's Name: First MI Last (print) Rodney A Smith

**PRODUCER: PROVIDE A PHOTOCOPY OF THIS SIGNED FORM TO ALL SIGNING PARTIES.**

(This page intentionally left blank)

PACIFIC LIFE

Pacific Life Insurance Company • 45 Enterprise • Aliso Viejo, CA 92656

www.PacificLife.com (800) 347-7787

## FLEXIBLE PREMIUM INDEXED ADJUSTABLE LIFE INSURANCE

- **Death Benefit Payable On The Death Of The Insured**
- **Net Cash Surrender Value Payable Upon Surrender**
- **Index-Linked Interest Option**
- **Adjustable Face Amount**
- **Non-Participating**

**NOTICE CONCERNING COVERAGE LIMITATIONS AND EXCLUSIONS UNDER THE NORTH CAROLINA LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT**

Residents of this state who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the North Carolina Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the guaranty association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the guaranty association is not unlimited, however. And, as noted *in the box* below, this protection is not a substitute for consumers' care in selecting companies that are well managed and financially stable.

The North Carolina Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in North Carolina. You should not rely on coverage by the North Carolina Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.

Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.

Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy.

The North Carolina Life and Health Insurance
Guaranty Association
P.O. Box 10218
Raleigh, North Carolina 27605-0218

North Carolina Department of Insurance,
Consumer Services Division
1201 Mail Service Center
Raleigh, North Carolina 27699-1201

The state law that provides for this safety-net is called the North Carolina Life and Health Insurance Guaranty Association Act. *On the back of this page* is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the law or the rights or obligations of the guaranty association.

**COVERAGE**

Generally, individuals will be protected by the life and health insurance guaranty association if they live in this state and hold a life or health insurance contract, or an annuity, or if they are insured under a group insurance contract, issued by a member insurer. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

**EXCLUSIONS FROM COVERAGE**

However, persons holding such policies are NOT protected by this association if:

- They are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);
- The insurer was not authorized to do business in this state;
- Their policy was issued by an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policyholder is subject to future assessments, or by an insurance exchange.

The association also does not provide coverage for:

- Any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;
- Any policy of reinsurance, (unless an assumption certificate was issued);
- Interest rate yields that exceed an average rate specified in the law;
- Dividends;
- Experience or other credits given in connection with the administration of a policy by a group contractholder;
- Employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);
- Unallocated annuity contracts (which give rights to group contractholders, not individuals), unless they fund a government lottery or a benefit plan of an employer, association or union, except that unallocated annuities issued to employee benefit plans protected by the Federal Pension Benefit Guaranty Corporation are not covered.
- A policy or contract commonly known as Medicare Part C or Part D or any regulations issued pursuant thereto.

**LIMITS ON AMOUNT OF COVERAGE**

The act also limits the amount the association is obligated to pay out as follows:

(1) The guaranty association cannot pay out more than the insurance company would owe under the policy or contract.

(2) Except as provided in (3) (4) and (5) below, the guaranty association will pay a maximum of $300,000 per individual, per insolvency, no matter how many policies or types of policies issued by the insolvent company.

(3) The guaranty association will pay a maximum of $500,000 with respect to basic hospital, medical and surgical insurance and major medical insurance.

(4) The guaranty association will pay a maximum of $1,000,000 with respect to the payee of a structured settlement annuity.

(5) The guaranty association will pay a maximum of $5,000,000 to any one unallocated annuity contract holder.

NC1